IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| IN RE: MASTER LENDING GROUP, LLC, Debtor. | CASE NO. 23-40569-EJC Chapter 7 |

HEARING
BEFORE THE HONORABLE EDWARD J. COLEMAN, III
December 9, 2025; 11:13 a.m.
Savannah, Georgia

APPEARANCES:

| | |
|---|---|
| For the Chapter 7 Trustee: | TIFFANY E. CARON, Esq.<br>Chapter 7 Panel Trustee<br>215 Pilgrim Road<br>West Palm Beach, Florida 334051<br>(404) 647-4917<br>tiffany.caron@hotmail.com |
| For the Chapter 7 Trustee and the Estate of Master Lending Group, LLC: | NEIL C. GORDON, I, Esq.<br>Taylor Duma LLP<br>1600 Parkwood Circle SE<br>Suite 200<br>Atlanta, Georgia 30339<br>(404) 640-5917<br>ngordon@taylorduma.com |
| For Judson C. Hill: | JUDSON C. HILL, Esq.<br>Gastin & Hill<br>1020 Drayton Street<br>Suite 201<br>Savannah, Georgia 31401<br>(912) 232-0203<br>bankruptcy@gastinhill.com |
| For Gregory M. Hirsch: | JAMES F. BANTER, Esq.<br>James-Bates-Brannan-Groover, LLP<br>231 Riverside Drive<br>Macon, Georgia 31201<br>(478) 749-4280<br>jbanter@jamesbatesllp.com |



| | |
|---|---|
| For the U. S. Trustee: | JOEL PASCHKE, Esq.<br>Office of US Trustee<br>33 Bull Street, Suite 400<br>Savannah, Georgia 31401<br>(912) 652-4112<br>ustpregion21.sv.ecf@usdoj.gov |
| Transcribed by: | Debbie Gilbert, RPR, CCR<br>Official Court Reporter<br>801 Gloucester Street<br>Post Office Box 1894<br>Brunswick, GA 31521-1894<br>(912) 262-2608 or (912) 266-6006<br>debra_gilbert@gas.uscourts.gov |

\- - -



P R O C E E D I N G S

(Call to order at 11:13 a.m.)

THE COURT: Next matter on the calendar is Master Lending Group, LLC. This is Case Number 23-40569. Appearances.

MS. CARON: Good morning, Your Honor, Tiffany Caron for the Chapter 7 trustee.

MR. HILL: Judson Hill on my own behalf.

MR. BANTER: Good morning, Judge.

THE COURT: Good morning.

MR. BANTER: James Banter on behalf of the Gregory Hirsch Estate.

MR. GORDON: I'm not handling the first matter but the other two. I'm Neil Gordon on behalf of trustee and the Estate of Master Lending Group.

THE COURT: Thank you. All right, so first of all, I think Ms. Bonanni might have given you the good news that I have to leave the bench at about 11:25 so that gives us nine minutes. I think we can do this in nine minutes but we are about to find out.

Let's start with Mr. Hill's fee application.

Mr. Hill, this is a case where you got a sizeable retainer initially.

MR. HILL: And held in trust.

Your Honor, the fee application ultimately as far as the times and the expenses is fairly straightforward. We're asking



The Court to approve fees in the amount of $23,341.00. That includes I believe $19,000.00 and some change for attorneys' fees, and $402.00 in expenses that we advanced during the case.

As The Court will recall, there was a lot of smoke for lack of a better term here. Controversies and issues were raised regarding my communications with Ms. Hirsch and with Ms. Hirsch's counsel, whether those communications were a benefit to the estate and thus should be billed.

We have resolved that. I have deleted the vast majority of those, of the time that I initially sought compensation for related to those communications, and I believe that all other controversies regarding my services as an attorney for the debtor have been resolved.

Part of the order that has been uploaded and presented to The Court requires me to disgorge $6,000.00 of the fees that are outlined and sought for filing amended pleadings in this case without a wet ink signature.

I acknowledge doing that and recognize that it was a mistake, and I think I've asked The Court to approve the disgorgement. I think it represents fair punishment for lack of a better term for those errors.

THE COURT: So, Ms. -- does the trustee have any objection to the request for fees?

MS. CARON: No, Your Honor. As part of the consent order, the US trustee and the Chapter 7 trustee have consented

to the debtor's counsel turning over the amount of $22,758.00 to the bankruptcy estate once this order is entered.

THE COURT: So the initial retainer of $40,000.00 went into your trust account; right?

MR. HILL: Yes, sir.

THE COURT: And did you draw out any portion of that?

MR. HILL: No, sir.

THE COURT: And did you pay out of that the filing fee?

MR. HILL: We have not paid anything. Well, the filing fee was paid, yes, sir. I apologize for that.

THE COURT: A separate payment?

MR. HILL: Yeah, the filing fees and the two amendment fees, the $402.00, that was advanced out of the trust. My contract basically provided that the $40,000.00 would cover anything including any costs, so it's not a $40,000.00 retainer for fees plus costs.

THE COURT: Okay, all right, so but your request, your total request for compensation, I'm just having trouble with the math. When I look at Docket 189, which is filed in the court way back in December 1st, 2023, I don't think any of that math has changed, has it? Have you sought additional time since --

MR. HILL: Oh, no. No. No, sir, I've not sought any compensation for ...

THE COURT: So the allowed fees and expenses and requested were 23,341.00; right?



MR. HILL: I think we ended up at 23,342.00. I think we were off by a dollar and we just corrected that in the order.

THE COURT: And that leaves an unused retainer of $16,659.00, so did that go to the trustee?

MR. HILL: No, sir. I mean, all those funds are still in trust so ...

THE COURT: Did the plaintiffs just give the trustee that amount?

MR. HILL: Yes, sir.

THE COURT: Is that correct?

MS. CARON: Yes, Your Honor, plus the $6,000.00 of the sanctions.

THE COURT: So that would mean that your compensation would be reduced to the amount of 16,659.00 or maybe 658.

MR. HILL: 16,758.00. But you know what, I think you're right. It should be 16,658.00 --

THE COURT: Well, I'm just --

MR. HILL: No. That's -- that's right, Judge. I mean, the 16,658.00 is what I am going to keep, and the rest of it is going back to the trustee. I do -- I do think now that I look at it you're right, though. The turnover amount should be 16,658.00.

THE COURT: So I'm more than happy to approve the fees to counsel in the -- I would have approved the fees in the amount of 23,342.00 based on your hourly rate, time records,



your years of work can certainly support that hourly rate, and the time in this case is easily justified. It's one of the more complicated cases that's come before The Court.

Even though your participation in it was not as great as others, it certainly required a lot of time on your part. The Court will approve the -- I don't think this sanction is one that came before The Court, did it?

MS. CARON: No, Your Honor.

THE COURT: Pardon me?

MS. CARON: No, Your Honor.

THE COURT: It's just, everyone recognizes what happened in terms of the lack of wet signatures. I accept that sanction as a reasonable deduction from counsel's fees, and so I'm prepared to approve the fees in the reduced amount and the payment over to the trustee of not only the unused retainer but the $6,000.00 in sanctions. I just need an order that everybody has signed off on that gets the math right.

MR. HILL: We will have that to the court ASAP.

THE COURT: All right. Mr. Paschke, do you have any interest in this matter?

MR. PASCHKE: No, Your Honor. I believe this is a settlement that has been worked out for quite some time, and once there's an order that has the math as The Court directs us to put in the order, I'm sure we will sign off on it ASAP.

THE COURT: Great, and, Mr. Hill, I apologize for



delaying disposition of this. I didn't know how this case was going to play out and ...

MR. HILL: I appreciate, you know, frankly The Court's consideration in kind of letting the dust settle here before we got to this, and so certainly no complaints on my part.

THE COURT: Very good. So I'll approve those fees as described and hopefully counsel can get me an order that the trustee and debtors' counsel can sign off.

Now we're down to three minutes. The next matter is an objection to the claim, the Claim 99 of the Estate of Gregory Hirsch and a motion to approve settlement. Docket 591 is your objection, counsel. And 592, settlement relates to the same thing?

MR. GORDON: Yes, Your Honor. These are presented together. That'll save some time, and I know time is precious today.

Your Honor, the claim was filed by the probate estate of Gregory Hirsch, the principal of Master Lending Group.

THE COURT: Let me interrupt you. So while I need to leave for about an hour, I'm happy to come back for as long as needed. I'm not trying to rush this. I just, I need to leave and come back.

MR. GORDON: I don't think it will take very long anyhow, Your Honor.

THE COURT: Go ahead.

MR. GORDON: So and just for the record, Neil Gordon on behalf of the bankruptcy estate of Master Lending Group, LLC. Its principal, Greg Hirsch, had passed away a little over three weeks after the case was filed.

A probate was instituted and is still underway. Mr. Banter represents the executor of that probate estate. He's here.

The probate estate had filed a claim in this bankruptcy case of a million 56 dollars. That's that Claim 99 that we're dealing with this morning. We had objected to it.

Your Honor, they had filed the claim as monies purportedly loaned to the entity, Master Lending Group. There is no documentation of that, and our position was that at best they were capital contributions, if anything had been actually tendered to begin with.

We had, including that claim, almost 43 million dollars of claims at the start of this case. The objection that we filed was as I just stated and the resolution is that that claim is withdrawn, and -- completely withdrawn from the bankruptcy case.

That will reduce the allowed claims in the case -- and all of these are now allowed claims from our perspective -- to $10,234,001.81.

That would be the amount of the allowed claims. The trustee in return is going to reduce the claim that the trustee



filed in the probate case to that same figure of $10,234,001.81 because that effectively represents what we're addressing in this bankruptcy estate.

It's not to say we're going to get a distribution from the probate estate. The probate estate is nowhere near administered. It could be going another two or three years.

There's not all that much happening in the way of recoveries, and if there is going to be a recovery, it's going to be prorated, and so the estate is not really counting on that money.

We're doing our due diligence. We have our claim in but it doesn't mean that we expect to receive anything meaningful as a result.

And so the result of this settlement is a release between -- a cross release, mutual release between the parties. Their claim goes away in the bankruptcy estate. Our claim is reduced in the probate estate, and that is the resolution that is at Document 592 to settle in compromise.

THE COURT: So was the estate, the Chapter 7 estate's claim in the probate a much higher figure at one time?

MR. GORDON: It was filed originally for the amount of the total claims that were filed in this case, almost 43 million dollars.

THE COURT: Understood. Anyone else wish to be heard in support of or in opposition to the Docket 591 objection to Claim



99 and the settlement as reflected in the motion to approve settlement, Docket 592?

MR. BANTER: Good morning, Judge. James Banter on behalf of the probate estate for Gregory Hirsch. We agree to this settlement. We think it's a good settlement worked out between the parties. In mitigating risks, I think it meets all the justice factors why this is a good resolution in the best interest of both estates.

THE COURT: Very good. We have proposed orders uploaded on both matters.

MS. CARON: Yes.

MR. BANTER: Yes.

THE COURT: The Court will grant or sustain the objection to Claim 99 based on that settlement as well as the -- I guess it's just one order, though, right, probably?

MR. BANTER: Judge, we will be withdrawing our proof of claim further that we filed in your court.

MR. GORDON: Which will actually moot the objection except for the settlement order which is already uploaded.

THE COURT: Well, I look forward to entering that order approving that settlement.

MR. GORDON: And we believe that's the last claim we're dealing with in the case. Everyone, every other claim has been resolved.

THE COURT: Very good. All right.



So the last matter on the calendar today is a status conference on the motion to establish Ponzi scheme. My goal has been to avoid that.

MR. GORDON: And I think your instincts proved correct, Your Honor, because it looks like we've worked through all of the issues without having to have The Court undertake what could have been a two-week trial on that issue and, in fact, there were, at the time it was filed -- we were early in the case in terms of developments. So much has happened since then, including that we have already resolved, as I just mentioned, all of the claims that the trustee had objections to.

Everything that we had in the way of the estates concerned were either claims that ended up being withdrawn or amended to the figures that agreed with our methodology, so at this point, a hundred percent of the claimants that compromise this figure of $10,234,00.81 we believe to be valid allowed claims, and we're done with that process without having to establish through this adversary proceeding the Ponzi scheme determination, which in and of itself is not normally done because it's usually done on the parallel criminal side, and there wasn't a prosecution in this case honestly because Mr. Hirsch died so quickly after the case was filed, so there really wasn't anything happening on the criminal side, and that's the reason we didn't get the benefit of the US Attorney's Office work that would have otherwise taken place and led to a Ponzi

scheme determination on the criminal side, which then gets incorporated into the bankruptcy, and that was the reason that we had filed this, not knowing that we were going to resolve everything.

These cases don't usually run this smoothly, and they didn't run smoothly at all in the beginning if you remember, Your Honor, but eventually it did, and the issues we believe have mooted this whole complaint, and so The Court could enter an order based on our representation finding it moot and -- or we can withdraw it.

THE COURT: I'm happy to continue it if you think there's any reason why it might arise in the future or you can withdraw it?

MR. GORDON: I think we're going to withdraw it, Your Honor.

THE COURT: That will be without prejudice, of course.

MR. GORDON: Without prejudice.

THE COURT: Well, then that will be our disposition of the motion to establish Ponzi scheme.

MR. GORDON: Yes, Your Honor, and I do want to mention by way of -- because I know you're running out of time, we have another payment due in three weeks on this case of $750,000.00.

We have not heard whether it's going to be made or not or whether there's going to be any discussions about accelerating all of the payments. We don't know in the way of



reporting to The Court about that, but we will know later this month, and if we do receive that, we will be up to about 11 million dollars, a little over 11 million dollars. It's a -- that the estate will be holding and that's after paying Mr. Hayes' fees earlier in the case, so that's just by way of reporting to The Court.

THE COURT: All right, that's good to hear. Thank you. Anything else?

MR. GORDON: Not from the trustee's perspective.

THE COURT: Anyone else wish to be heard?

With that, I think our calendar is done. We'll be adjourned. Thank you.

(Proceeding concluded at 11:30 a.m.)

CERTIFICATION

I certify that the foregoing is a true and correct transcript of the stenographic record of the above-mentioned matter.



______________________________ 01/06/2026

Debra Gilbert, Court Reporter Date