**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CASE NO. 23-40569-EJC** |
| | ) | |
| **MASTER LENDING GROUP, LLC,** | ) | **CHAPTER 7** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |

**FIRST APPLICATION FOR INTERIM COMPENSATION BY SPECIAL COUNSEL FOR TRUSTEE AND REQUEST FOR AUTHORIZATION TO PAY COMPENSATION**

COMES NOW, Gordon and Pettie, LLC (“GP”) and Neil C. Gordon, as assignee of Taylor Duma LLP f/k/a Taylor English Duma, LLP (“TD”) (together the “Applicants" or “Special Counsel”), attorneys for Trustee and respectfully represents:

1.

GP is and TD was employed as Special Counsel for Trustee, having been appointed by appropriate Orders of this Court.

2.

Applicants have rendered professional services on Trustee's behalf since July 11, 2023, and make this Application for Interim Compensation of Fees and Expenses through July 21, 2026.

3.

All services for which compensation is requested by Applicants were performed for and on behalf of the Trustee and not on behalf of any creditor or other person.

4.

Applicants have prepared a detailed description of services rendered from July 11,

2023, to July 21, 2026, by date, time and nature of service performed, which is annexed hereto as Exhibit "A."

5.

Applicants have incurred actual and necessary costs and expenses in the amount of $19,385.07. Said costs and expenses are set forth in respective Exhibit "A" annexed hereto.

6.

The reasonable value of the services rendered by Applicants, as Special Counsel for Trustee in these proceedings under Chapter 7 for the period set forth above is $856,019.50. Applicants have devoted a total of 1,135.0 hours of attorney and paralegal time for a blended rate of $713.23.

7.

The number of hours spent and the hourly rates applicable to each person are set forth on page 74 of Exhibit "A1," page 3 of Exhibit "A2," and page 3 of Exhibit "A3."

8.

Exhibit "B" attached hereto consists of the résumé of Neil C. Gordon.

9.

This Application is filed pursuant to §330 and §331 of the Bankruptcy Code. Applicants show that the interim compensation requested by Applicants satisfies the standards and guidelines set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (U.S.C.A. 5th 1974), and_*In Re First Colonial Corporation*, 544 F.2d 1291 (U.S.C.A. 5th 1977), as amplified by *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).

10.

Master Lending Group, LLC ("Master Lending Group" or "MLG") filed a Voluntary Petition for relief under Chapter 7 of the United States Code on July 6, 2023 (Doc No. 1). Debtor scheduled $43 million of unsecured claims. Gregory Hirsch ("Mr. Hirsch") was the 100% owner of MLG. On August 3, 2023, Mr. Hirsch passed away.

11.

Applicants determined during the course of representation the following: over twenty years ago, a CPA named Gregory Hirsch formed MLG and was the sole member for the duration of the existence of the LLC. There were no books and records from those early years and very little thereafter, which was a hallmark of a Ponzi scheme. Throughout the history of MLG many investments in or by MLG were completely undocumented, which was another hallmark of a Ponzi scheme. It was not the proper procedure of any legitimate investment firm to have no documentation of its investments, particularly when the principal was a CPA. (As Applicants' lead counsel often stated in Court, the only reason for a CPA not to keep books and records was because he did not want there to be any books and records.) The investments made in MLG were hopelessly intertwined and commingled with other Gregory Hirsch companies and himself -- another hallmark of a Ponzi scheme. Very little money was kept in MLG.

12.

When it was time for a distribution, the money would be transferred into MLG's accounts from Mr. Hirsch or one of his entities for the purpose of making that distribution to perpetuate the fraud which, again, was the hallmark of a Ponzi scheme. There was no investment activity of any kind by MLG in the five years prior to this bankruptcy petition date – another hallmark of a Ponzi scheme. The money from investors during that time

period did not, therefore, go into any investment, a hallmark of a Ponzi scheme. Mr. Hirsch spent rather lavishly on his family for vacations, sporting events, shopping sprees and things of that nature which, again, would be the hallmark of a Ponzi scheme. He did have certain other sources of income. He was principal of an accounting firm, and he had some real estate investments. Mr. Hirsch died about three and a half weeks after the bankruptcy petition date.

13.

As the Trustee and Applicants had informed the Court since the inception of this case, the Debtor failed to maintain adequate books and records. This made the work of reconstructing the Debtor's financials difficult for more recent years and impossible going back in time. The Trustee was able to obtain full financial records (bank statements, copies of checks and deposit slips) from Truist Bank (the Debtor's only bank account) going back to July of 2016. Additional but incomplete bank statements (without copies of checks or deposit slips) were obtained by the Trustee going back to August 2011. Therefore, the Trustee was missing financial information between August 2011 and July 2016 (including a few bank statements and almost all deposit slips and checks) and all financial documentation prior to August 2011.

14.

A *Motion to Establish Ponzi Scheme Determination* (the "Motion") was filed. The Motion identified the hallmarks of the Ponzi Scheme based on the following indicators: (a) investors deposited funds expecting high returns; (b) little or no legitimate business operations occurred; (c) the business produced little or no profits; (d) payments to investors came primarily from newer investor deposits; (e) lack of business records; (f)

commingling of funds; (g) misuse of investor money; (h) unrealistically high guaranteed returns; (i) failure to provide promised collateral; and (j) insider transactions benefiting Hirsch personally. This motion was never tried before the Court and was later withdrawn because all of the issues in the case were resolved favorably to the Estate.

15.

New investor funds were used to pay prior investors thereby creating fraudulent transfers. MLG was never profitable. MLG promised returns to investors ranging from 10-12% while lending out money for substantially less (if at all), not only leaving no room for profit but also consistently ensuring that it operated at a loss. In addition, Mr. Hirsch personally misappropriated money from MLG and funneled it through and commingled it with the accounts of other businesses solely owned by him, leaving MLG at all relevant times insolvent. As Applicants' lead counsel outlined for the Court step by step at previous hearings, one such asset, 8 18th Place, Tybee Island, GA 31328 (the "Tybee Property"), was transferred to Mr. Hirsch through a series of fraudulent transactions and collusion including a "friendly foreclosure" on the Tybee Property and forgiveness of an MLG note and security interest in an unrelated investment for which MLG received no consideration whatsoever, costing MLG approximately $1.2 million. This enabled Mr. Hirsch to obtain personal ownership of the Tybee Property, which he transferred to his spouse, Judith Hirsch ("Mrs. Hirsch"), just a few months before the bankruptcy petition date. Therefore, MLG was not a legitimate profit-making business.

16.

At least as far back as 2018, until the Petition Date, aside from accepting and/or soliciting new investor funds to pay old investor interest payments and redemptions, MLG had no revenue at all. Although MLG was able to continue to pay old investors from new investor funds for many years, Mr. Hirsch became terminally ill, resulting in an inability to attract new investors, which led to the scheme's utter collapse. Unable to raise new funds, Mr. Hirsch had resorted between October 2022 and February 2023 to selling term life insurance policies with death benefits totaling $15 million to a life insurance settlement company for $7.975 million dollars (55 cents on the dollar). This was a desperate attempt to postpone the inevitable collapse of the scheme.

17.

Mr. Hirsch purchased from Pruco Life Insurance Company ("Pruco") a term life insurance policy in the amount of $5 million (the "Policy"). Named as beneficiary was Mrs. Hirsch. At some point prior to the time of filing Debtor's bankruptcy petition, Mr. Hirsch began repeatedly directing Mrs. Hirsch to be sure the Policy proceeds would go to MLG for the benefit of its investors instead of being paid to Mrs. Hirsch. Trustee traced certain MLG investor funds which were used in whole or in part to purchase the Policy and many other life insurance policies purchased on the life of Mr. Hirsch. At the time of Mr. Hirsch's death, Mrs. Hirsch became the beneficiary of about $18-$20 million in death benefits. Contrary to contractual obligations, none was ever assigned to secure any of the investor notes by collateral assignment. With the exception of the Pruco policy, all of those policies were paid out.

Applicants drafted Trustee's demand for the payment of the $5 million death benefit on the Pruco policy despite Mrs. Hirsch being listed as the named beneficiary. Applicants had uncovered documentation that Mr. Hirsch had repeatedly urged Mrs. Hirsch to ensure the death benefit was paid to MLG for the benefit of investors. Mrs. Hirsch held the power of attorney for Mr. Hirsch but declined to change the named beneficiary from herself to MLG. Because of the dispute over entitlement to the death benefits, the insurance company, Pruco, interplead the funds into the registry of the court. Litigation ensued. (It should be noted that this $5 million and another $975,000 of cash were originally scheduled as assets of the debtor but were removed through a series of amendments and disavowed as estate assets. They are hereafter referred to as the "Disavowed Assets".)

18.

There were numerous court hearings related to this litigation and the motion to dismiss filed by Mrs. Hirsch. On April 2, 2024, Applicants' lead counsel took the combined B. R. 2004 Examination and Rule 26 Deposition (together, the "Examination") of Mrs. Hirsch. Throughout the Examination, Mrs. Hirsch maintained that she had had no income or paid work since 1990 but volunteered her time to serve on the boards of various charitable organizations. But when later shown contradictory information in her tax returns, she "remembered" that she had been receiving a salary of $120,000 per year from her husband's accounting firm, Hirsch & Tucker, LLC, which was being directly deposited into her personal bank account on a bi-weekly basis for many years (until June/July 2023) as "compensation" for occasionally running errands, picking up office supplies and sometimes answering the phone. Mrs. Hirsch claimed to know nothing of

MLG or any of her late husband's business activities, although she had written and deposited checks from those entities into her personal account over many years. There was no evidence adduced that Mrs. Hirsch ever engaged in marketing MLG to investors or did any actual work for MLG. (No investors, all of whom had their own depositions later taken, could point to any activity of Mrs. Hirsch on behalf of MLG. Of course, neither was any investor able to actually point to a single genuine investment made by MLG.)

19.

Other than $92,300 which was turned over to the Trustee shortly after the bankruptcy filing, during the first year of the Case, there were no assets readily discernable from which the administrative fees and expense of the Applicants and the other professionals for the Trustee could be paid. The Disavowed Assets had been removed by Debtor as not being owned by the Debtor. So, the major focus of this case was litigation with Mrs. Hirsch over the Pruco policy initially. Eventually, the parties expanded that litigation into a global resolution and not just a resolution of the Pruco policy. Even dealing just with the Pruco policy the litigation was hard fought and creative, with issues of first impression being raised.

Ultimately, the parties determined to attempt a global resolution through a multi-day mediation with the Hon. Mary Grace Diehl serving as mediator. Applicants drafted a very lengthy mediation statement. The complexity of the case led to the length, but also because attorneys for the Trustee set forth a framework (ultimately agreed to by Mrs. Hirsch) to resolve all issues.

The framework was very creative. Mrs. Hirsch would pay a sum certain to the Estate to settle all claims and obtain a release from the Estate. Mrs. Hirsch would also

be provided a release from any investor she identified as necessary (pursuant to a list she was to provide). As an incentive to the investors to sign such a release, the Estate would itself give a release to each investor. Every investor had received 1-3 monthly installment payments during the 90-day preference period, and many were also net winners who could have been sued for the return of the net winnings. So, the Estate had substantial claims against most of the investors and was prepared to sue them if necessary. Even if the settlement was approved by the court, the investors could (and the Applicants and Trustee expected they would) seek further payment from Mrs. Hirsch as further consideration for those releases.

The negotiations were intense and were stuck for a long time at an unacceptably low level. However, the parties finally agreed on $7 million as the settlement figure. It was the maximum amount the Estate could prove against Mrs. Hirsch if the Estate prevailed 100% on all of its claims against her, which was highly unlikely to happen. Attorneys for the Trustee had tried for an even greater settlement amount on the basis that it would likely take $9 million to $12 million to get the investors to agree to the release of Mrs. Hirsch. For purposes of the settlement agreement itself, $7 million was the final agreed figure. Excluded from settlement or releases was the ability of the Trustee to still object to claims.

The finalization of a settlement agreement with Judith Hirsch and other claimants required numerous revisions, conferences, and follow-ups. The Trustee and Special Counsel scheduled and held in Savannah an in-person and virtual town hall meeting with the investors to explain the resolution and answer questions.

Ultimately, the motion was filed and came before the court for hearing. It was granted over the objection of one creditor whose counsel also represented seven or eight investors who were not objecting (a clear conflict). This was followed by the hard work in obtaining all of the releases, which took many months. In the end, as expected, the investors did require further consideration and reached agreement at $9 million. Eventually, all of the releases were signed and the $9 million paid to the Trustee. This is a material difference from how virtually every other Ponzi scheme is handled. Normally, counsel for the trustee or receiver would sue all of the preference recipients and net winners and cause those investors to be victimized again as they incur huge legal fees (and usually lose the litigation) while counsel for the estate or receivership generates many millions of dollars in legal fees. That was not done in this case. All investors who signed releases were spared the agony and cost of defending such lawsuits and incurring further liability once a judgment was obtained against them.

20.

But the claims resolution process and objections by the Trustee to claims of the investors, even with a release, were excepted from the settlement. Even before the settlement was funded, Applicants outlined a framework for assessing filed claims and determining what would be allowable and what would not be allowed (the “Framework”). Much of this had to do with net winnings. The original claims were filed by about 100 investors in the approximate amount of $43 million. Applicants worked with the Trustee and forensic accountants to explain this Framework to all claimants. Attorneys for the Trustee proceeded at Trustee's request to take the examination of nearly every investor. The only exception was for the few investors who had agreed in advance to the

Framework and Trustee's position on their respective claims. This process was fruitful as virtually all claims were amended or withdrawn in accordance with the Framework. Ultimately, the only objection was to the claim of the probate estate of Mr. Hirsch. A consent order was eventually entered that allowed no claim on behalf of the probate estate. Here again, this creative process obviated the need for filing up to 100 claim objections and instead filing only one.

21.

After concluding the claims resolution process, the Trustee identified the investors who were not on the "release list," and Applicants assessed from a legal standpoint which ones were subject to liability to the Estate. Three were identified who were not released and who were paid in full directly from MLG’s own bank account. These three were pursued, and each paid (or is paying) the demand amount.

Before doing so, one such investor after receiving the demand had made a settlement offer to the undersigned that the Trustee accepted. Thereafter, he hired counsel to rescind the offer and litigate over his liability. His counsel insisted that he would not appear for his Rule 2004 examination and document production unless properly served with a subpoena. Once that happened, his counsel filed an emergency motion to quash the subpoena of the Trustee and scheduled an emergency hearing for just a few days later. Applicants and the Trustee were convinced these were all delay tactics to run out the clock on the two-year avoidance deadline.

Applicants researched the issues, obtained the case law and appeared at the emergency hearing to oppose the emergency motion. The Court heard the arguments of counsel and denied the emergency motion and ordered the discovery to be completed on

an expedited basis. This is what led to payment of the previously agreed settlement amount.

22.

Early in the case, there was also a settlement with Read Brennan and his Synergy businesses over several million dollars of undocumented loans. Special Counsel helped design the settlement structure that was eventually accepted for $3.5 million in full settlement over time. Some payments were made (about $825,000) but the obligor defaulted on his December 31, 2025 installment of $750,000. Separate Special is now pursuing that defaulted obligation.

23.

Applicants show that the fees requested in this Application are reasonable under the factors to be considered in evaluating applications for compensation first enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), a civil rights case, and made applicable to fee determinations in bankruptcy in *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298-99 (5th Cir. 1977). The following summarizes the application of the *Johnson* factors to this Bankruptcy Case:

a. *Time and labor required*: Applicants have expended a total of 1,135.0 hours in the representation of the Trustee during the Compensation Period. The Applicants attempted to work efficiently in all matters and to use attorneys and paraprofessionals in the most economic fashion. The substance of the time expended is set forth fully in Exhibit "A" to this Application.

b. *Novelty and difficulty of the legal questions*: The Bankruptcy Case thus far has been time consuming to the extent reflected in Exhibit "A," and

involved a number of extremely complex issues and some were issues of first impression relative to turning this "no asset" case (as a result of the Disavowed Assets) into a case where creditors would benefit. It started as a case with $43 million in scheduled claims, no readily discernable assets that could be recovered, and virtually no books and records. It was very unclear that Applicants would ever be paid for their hard and creative work in the Case. It was also novel and difficult because there was no parallel criminal proceeding whereby the Ponzi scheme presumption could be established as well as other evidence generated.

c. *Skill required to perform the legal services properly:* Neil Gordonhas represented trustees in thousands of cases and is considered a top expert in his field with over 200 seminar presentations and over 90 published articles. Neil Gordon is an expert on Ponzi schemes and has successfully achieved outsized results for investors while serving as the Chapter 11 trustee (including confirming a Chapter 11 plan), Chapter 7 trustee, or SEC receiver in Ponzi scheme cases.

d. *Preclusion of other employment due to acceptance of the case*: The amount of time devoted to this Bankruptcy Case by the attorneys and paraprofessionals of Applicants precluded them from performing other work to the extent of the time devoted to this Bankruptcy Case during the Compensation Period. Applicants devoted the necessary time and commitment to properly assess the opportunity presented, and this included Neil Gordon travelling to Savannah on 15 separate occasions for court hearings, depositions, a town hall meeting, plus a two-day mediation in Atlanta. This required exclusion of other

matters to which Applicants' personnel could have instead devoted their time and energy.

e. *Customary fee for similar work in the community*: Applicants respectfully represent that the rates charged by Applicants as set forth in the Summary Sheet attached as Exhibit "A" are well below the rates charged by attorneys of comparable skill, experience and reputation, particularly in the narrow and challenging area of Ponzi schemes. And even more so, when as here there were no apparent assets and no investments made that the Trustee could readily liquidate, and virtually no books or records. Applicants submit that this average rate of $713.23 per hour is below the low end of the range of rates customarily charged even by attorneys of far less skill and experience. Ponzi scheme cases historically return a dividend to investors in the range of only 2-4% of the amount of their allowed claims, achieved by suing all of the net winners (victimizing them a second time). And yet, the Estate has already recovered approximately $11 million and made a 50% interim distribution to investors. It is expected that another 25% to 50% will be made in the final distribution. Typically, these cases are handled on a contingent fee basis of one-third. That would be $3.67 million to date. So, Applicants' representation has been a very significant cost-savings for the investors and also kept them from all being sued.

f. *Whether fee is fixed or contingent*: Although Applicants have handled this matter on a time billing basis, payment has been contingent on successfully making a recovery on behalf of the Estate sufficiently large to cover the time expended thereby leaving Applicants at grave risk for non-payment.

Indeed, Applicants have heretofore performed services for over three years without *any* compensation. As stated by the Eleventh Circuit in *Norman,* attorneys in such situations should be allowed to recover at their current and not historical rates. *See Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) (stating, "[i]n this circuit, where there is a delay, the court should take into account the time value of money and the effects of inflation *and generally award compensation at current rates rather than at historic rates*.") (emphasis added). Applicants are seeking compensation at their lowest current rates for a business bankruptcy case.

Additionally, under 11 U.S.C. § 328(a), the court may allow compensation different from the original employment if such original compensation "proves to have been improvident in light of developments not capable of being anticipated." The way this case looked at the outset with little or no recovery absent suing the investors and the recovery made already, it would not be inappropriate to allow a contingency fee of 25% of the recoveries made. That would be triple what the Applicants are seeking and is not being requested (although an enhancement in some amount is warranted). But the Applicants do seek under section 328(a) the one-half of travel time over the first three years of the Case in the total amount of $46,507.50 that was not previously billed as it was imposed at the request of an investor who was actually an insider but whose attorney failed to disclose such status to the Court or Applicants and should not be binding (nor is it binding anyway under section 328(a)). Further, all the attorneys from out of town whom the Applicants dealt with in Savannah for depositions or court hearings or the town hall

meeting were able to charge their clients for full travel even if there was more than one attorney travelling. Given the results, Applicants should not thusly be penalized.

g. *Time limitations imposed by the client or circumstances*: Applicants submit that its attorneys have been required to work under a number of time limitations imposed by the circumstances of this Bankruptcy Case as set forth above, including an emergency hearing on a motion to quash subpoena. Also, the Pruco policy litigation had to be initiated rapidly before the proceeds were remitted to Mrs. Hirsch. With about a hundred investors, a lot of work needed to be completed before the two-year avoidance limitations period expired. And almost 100 depositions of investors had to be taken which led to the entire investor body ultimately accepting the Framework and amending or withdrawing their claims in accordance therewith. But it was all very time consuming.

h. *Amount involved and results obtained*: The amount of claims involved started initially at $43 million. It was reduced to under $11 million (still a large amount) through the knowledge and expertise of Special Counsel for and the other professionals retained by the Trustee. There were no hard assets available to liquidate nor hardly any books or records. The Pruco litigation and larger settlement with Mrs. Hirsch were achieved through great creativity and expertise and prevented dozens of lawsuits from having to be filed with the concomitant increase in legal fees. Through Applicants' representation, these issues and others have been reached in an efficient and favorable manner for the Estate and preserved the savings for greater distributions to investors. But for the results

obtained here, no creditors would receive any distribution and likely would have been sued by the Trustee. And this was accomplished by the Applicants at about 7.5% of the amount recovered for the Estate.

i. *Experience, reputation, and ability of attorneys*: Applicants respectfully represent that its attorneys have significant experience and ability in handling bankruptcy cases like the subject case, and that Neil Gordon has practiced before the bankruptcy courts in Georgia for over forty-two (42) years. Exhibit "B" attached to this Application consists of the résumé of Special Counsel, Neil Gordon, and reflects that he is one of the leading national experts in the representation of Chapter 7 trustees, with over 200 seminar presentations and over 90 published articles. Moreover, he has represented trustees in several hundred cases and is a known expert in Ponzi scheme cases as Chapter 11 trustee, Chapter 7 trustee and SEC receiver.

j. *Undesirability of the case*: Applicants respectfully represent that this Bankruptcy Case was undesirable given the significant amount of resources and time and effort that had to be committed thereto with no certainty of (or at least a very delayed) payment or the outcome of this Bankruptcy Case in general. This case looked very bleak upon the amendments leading to the Disgorged Assets and there being virtually no books or records. Trustee herself was unsure any of us would get paid more than a mere pittance, but she and the Applicants pressed forward nonetheless and eventually spotted the opportunities that led to the present result (even without the assistance of a parallel criminal proceeding).

k. *Nature and length of the professional relationship with the client*: Applicants have not previously represented the current Trustee, but she identified this case as presenting numerous complex challenges that she felt Special Counsel was best equipped to handle.

l. *Awards in similar cases*: Applicants respectfully represent that the amount sought in the Application is unreasonably small compared to other Ponzi scheme cases with such an enormous percentage dividend despite having no identifiable assets, virtually no books and records and without suing the investors. Moreover, here Applicants are only seeking what amounts to about 7.5% of the recovered assets to date. This is so far below the range of awards in similar cases or what is reasonable that an enhancement is being sought.

24.

In 11 U.S.C. § 327(a), it states that "the trustee, with the court's approval, may employ one or more attorneys, . . . or other professional persons, to represent or assist the trustee in carrying out the trustee's duties under this title." (Emphasis added). That is exactly what the Trustee here has done in this Bankruptcy Case by employing Applicants and other professionals, and, as a result, the creditors have been greatly benefitted.

25.

Applicants respectfully request an overall enhancement of their fees by 1.15% of the gross recovery by the Estate to date from $856,019.50 to $982,519.50 based upon the bleak outlook of this case at the outset compared to the extremely successful results to date through a great deal of unique and creative efforts that accomplished this without

the need to sue the investors thereby victimizing them a second time. But that is exactly what usually happens in a Ponzi scheme case resulting in seemingly endless litigation and millions of dollars of legal fees. Pursuant to 11 U.S.C. § 328(a), it states that "the court may allow compensation different from the compensation provided under [the original employment] … if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."

In *Grant v. George Schuman Tire & Battery Co.*, 908 F. 2d 874, 880 (11th Cir. 1990), the Eleventh Circuit recognized the so-called lodestar amount, computed by multiplying rates by hours expended, may be enhanced for "excellent or exceptional results." In *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988), the court stated: "Exceptional results are results that are out of the ordinary, unusual or rare." The court focused more on achieving an outcome that was unexpected than simply the dollar amount of the recovery. (Of course, without a substantial dollar recovery, there would be no funds from which to pay the enhancement.) Further, the representation should be "superior to that which one would reasonably expect in light of the rates claimed."

Here, at the outset of the case, the situation for the Trustee and Applicants could not have looked any bleaker. The schedules were amended to remove the Disavowed Assets, there were virtually no books and records, no money sufficient to fund an investigation, and no hope unless the Trustee could sue the investors. For the entire first year of extensive legal work, the Trustee and Applicants were unsure if they would be paid more than a nominal amount of their due compensation. The outcome already is

astounding. Not only will investors receive between 78% to 100%, but Ponzi scheme cases typically pay only 2-4% and that is achieved by suing the investors or liquidating hard assets. This debtor had no hard assets, no books and records, and no ability to fund an investigation.

The recoveries in this case were a result of the extraordinary efforts of the Trustee, Special Counsel and forensic professionals' ability to develop and propose a creative global resolution to Mrs. Hirsch and her counsel. From the outset, Applicants explained that the Trustee had the leverage to get her releases from investors for a price by providing releases to the investors from the Trustee.

The mediation resulted in a $7 million settlement with an expectation of investors demanding more to sign releases that would bring the total to between $9 million and $12 million. Applicants know of no other case where this methodology was accomplished in this manner.

Even after the settlement and releases were completed, the claims resolution process had to be undertaken. Special Counsel developed the Framework in consultation with the Trustee and her other professionals. Effectively, nearly 100% of the claims of investors were amended or withdrawn in accordance with the Framework without a single objection having to be filed. The only claim objection was to the probate estate of Greg Hirsch that was resolved favorably to the bankruptcy estate.

In terms of the rates charged, they might seem high for Savannah, but this is a highly complex case for which Applicants are charging their very lowest rate for a corporate bankruptcy case, which is far less than they charge in other venues. The

representation in Ponzi scheme cases are usually on a contingency fee basis of one-third of the recovery. On that basis, the Judith Hirsch settlement alone would be $3 million. Therefore, the work here has been done at a discount, the results were not ordinary, and the amount and nature of the recovery has been spectacular and well beyond anything imagined at the outset. In *Grant*, the Eleventh Circuit did not award the enhancement because the work was routine. There was nothing routine about the issues in this case or the outcome or how that outcome was achieved. Nor has it been achieved anywhere else in this creative manner.

Special Counsel has rarely sought an enhancement but never been denied one when it was sought. *In re Michael A. Mandato*, Chapter 7 Case No. 02-80284-JEM (Bankr. N. D. Ga. Mar. 12, 2004) (Massey, J.) was the only instance where there was an actual objection resulting in a formal opinion, which is attached as Exhibit "C." The Court noted not just the excellent results achieved, but also the creativity and vision that went into achieving the result. The analysis and methodology employed by Judge Massey would support an even greater enhancement in this case. In *Mandato*, counsel sought a 20% enhancement of his billed time, which the court granted over the objection of the United States Trustee.

Special Counsel also requested and received an enhancement of $124,000.00, representing 2% of the overall recovery, in *Alpha Protective Services, Inc.*, Chapter 11 converted to chapter 7 Case No. 12-70482-JTL (Bankr. M.D. Ga. Nov. 9, 2020) (Laney, J.). Like this Case, there did not appear to be any assets to administer, the estate appeared to be administratively insolvent, but counsel persisted and developed a number

of successful theories of recovery that were matters of first impression and led to an outstanding result and $6.2 million recovered.

Also, see *In re Vista Foods USA, Inc.*, 234 B.R. 121 (Bankr. W.D. Okla. 1999) citing *In re Southern Merchandise Distributors, Inc.,* 117 B.R. 725 (Bankr. S.D.Fla. 1990); *In re Blue Coal Corporation,* 206 B.R. 721 (Bankr.M.D.Pa. 1997); *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 658 (5th Cir.2012) (citing *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088 (5th Cir.1980) (16% enhancement for excellent services from highly expert and competent professionals producing an outstanding result), *In re Lawler*, 807 F.2d 1207, 1213 (5th Cir.1987)(70% enhancement for substantial and unexpected recovery leading to plan that paid 100% of claims), *In re ASARCO, L.L.C.*, 751 F.3d 291, 295–99 (5th Cir.2014)(affirming 20% enhancement for efficient use of exceptional legal talent leading to rare and exceptional results), and *In re El Paso Refinery, L.P*. 257 B.R. 809 (Bankr. W.D. Tex. 2000)(awarding 8.6% to trustee's general counsel).

Accordingly, Applicants ask that the fees sought herein be awarded in full plus an additional 1.15% of the gross recovery to date by the Estate added thereto for the enhancement (being approximately $126,500 of the gross recovery of $11 million to date).

WHEREFORE, Applicants pray:

a) For an allowance to be made to it as interim compensation to Neil C. Gordon, as assignee of Taylor Duma f/k/a Taylor English Duma LLP, of $831,450.50 as compensation for professional services rendered and $19,385.07 as necessary costs and expenses;

b) For an allowance to be made to it as interim compensation to Gordon and Pettie, LLC in the amount of $24,569.00 as compensation for professional services rendered and $0.00 as necessary costs and expenses;

c) That the above awarded fees (not expenses) be enhanced by 1.15% of the gross recovery in the Case to date to $28,200.30 for Gordon and Pettie LLC and $954,319.20 for Neil C. Gordon as assignee of Taylor Duma f/k/a Taylor English Duma LLP.

d) That Applicants be allowed to receive payment from the Trustee's account for the allowed compensation and expenses to the extent of available funds at P.O. Box 671441, Marietta, Georgia 30006; and

e) That Applicants have such other and further relief as is just and proper.

Date: August 20, 2026

Respectfully submitted,

GORDON AND PETTIE, LLC

By: /s/ Neil C. Gordon
Neil C. Gordon
State Bar No. 302387

1600 Parkwood Circle, Suite 500
Atlanta, Georgia 30339
(404) 855-2973
ngordon@gordonpettie.com

and

By: */s/ Tiffany E. Caron*
Tiffany E. Caron
State Bar No. 745089

215 Pilgrim Rd.
West Palm Beach, FL 33405
Ph: (404) 647-4917
Email: tiffany.caron@hotmail.com

Attorneys for Chapter 7 Trustee

**EXHIBIT "B"**

**NEIL C. GORDON** — Admitted to Georgia Bar in 1979. Education: University of Florida (B.S.B.A. cum laude, 1976); University of Georgia (J.D. 1979). Law Clerk to Hon. Robert L. Vining, Jr., Judge, U.S. District Court, Northern District of Georgia, 1979-81; **Publications:** Co-Author, "*Law v. Siegel* Dicta Leads Lower Courts Astray," American Bankruptcy Institute Journal, Vol. XXXIV, No. 2 (February 2015); Co-Author, "When Can the Statute of Limitations for Avoidance Actions Be Extended?" American Bankruptcy Institute Journal, Vol. XXXII, No. 5 (June 2013); Co-Author, "*Schwab v. Reilly* Two Years Later: Appellate Opinions on Appreciation and 100 Percent of FMV," American Bankruptcy Institute Journal, Vol. XXXI, No. 9 (October 2012); Author, "Section 362(h) Does Not Deprive a Trustee of Standing to Void a Lien," American Bankruptcy Institute Journal, Vol. XXIX, No. 10 (December 2010/January 2011); Author, "An Overview of Mortgage and Finance Fraud for Trustees," in *Mortgage and Finance Fraud Litigation Strategies* (Thomson Reuters/Aspatore Books 2010); Author, "The Art of the Carve-Out," NABTalk, Vol. 25, No. 1 (Spring 2009); Co-Author, "New Tax Laws Affecting Home Sales Give Chapter 7 Trustees Long Overdue Relief" , Bankruptcy Court Decisions, Vol. 32, No. 20 (July 28, 1998); Co-Author, "Maximizing Returns for Estate Creditors by Minimizing Taxes: Exclusion of Gain from the Sale of the Debtor's Principal Residence", NABTalk, Vol. 16, No. 3 (Fall, 2000); Co-Author, "Recent Cases," Journal of the American Bankruptcy Trustee, Quarterly Publication of National Association of Bankruptcy Trustees (NABT 2003-2022). **Member:** Atlanta Bar Association, Bankruptcy Law Section (Chair 1992-1993, Board Member 1988-1994); State Bar of Georgia; American Bankruptcy Institute (Legislation Committee Co-Chair 2013-2015); National Association of Bankruptcy Trustees (Board Director 2000-2014; Executive Committee 2006-2014; Secretary 2006-2007; Treasurer 2007-2008; Vice-President 2008-2011; President 2011-2012; Immediate Past President 2012-2013; Past President Director 2013-2014); Panel, United States Trustees; Fellow, American College of Bankruptcy, 2008-present; Master of the Bench, W. Homer Drake Georgia Bankruptcy American Inn of Court; Full Member, National Association of Federal Equity Receivers; Chapter 7 Subcommittee of the ABI Commission on Reform of Consumer Bankruptcy Law, 2017-2018; Advisory Board

member (one of eleven) to Professor Lois R. Lupica on her study commission by NCBJ and ABI entitled Consumer Bankruptcy Fee Study addressing the "Costs of BAPCPA," (December 2011). Also: 2021-2025 Lawdragon 500 Leading Bankruptcy & Restructuring Lawyers; 2023 Georgia Trend's Legal Elite.

**Seminar Presentations:** "Tales from the Crypto: A Guide and Discussion," ABI SE Workshop, Amelia Island, Florida (July 20-23, 2023); "Recent Court Rulings of Interest," Chapter 7 Panel Trustee Training – Northern District of Georgia, Atlanta, Georgia (August 11, 2022); "Case Law Update," Region 16 Webinar (February 11, 2022); "Post-Filing Issue Spotting: Consumer Practice Extravaganza (CPEX), ABI Conference, Indianapolis, Indiana (November 12, 2021); "Abandonment," The W. Homer Drake, Jr. Georgia Bankruptcy Inn of Court, Atlanta, Georgia (February 11, 2021); "Case Law Update," NABT Virtual Annual Conference (August 27, 2020); "Hot Trustee Topics in Consumer Cases," NCBJ Annual Conference, Washington, D.C. (November 1, 2019); "Suing Universities to Recover Tuition Paid for Adult Children," 22nd Annual Bankruptcy Seminar, Macon, Georgia (September 20, 2019); "Unscheduled Product Liability (and Other) Claims in Reopened Cases," 22nd Annual Bankruptcy Seminar, Macon, Georgia (September 20, 2019); "Case Law Update," NABT Annual Conference, Denver, Colorado (August 23, 2019); "Annual Panel Trustee Seminar: A Training Day in LA," Region 16 Chapter 7 Panel Trustee Training, Los Angeles, California (June 27, 2019); "Current Development/Recent Case Law Panel," Region 21 Chapter 7 Panel Trustee Training, Orlando, Florida (June 6-7, 2019); "Key Takeaways from the American Bankruptcy Institute's Commission on Consumer Bankruptcy Report," The Bench and Bar Committee, Atlanta, Georgia (May 6, 2019); "Tuition Clawback by Bankruptcy Trustees: The Focus Points for this Growing Litigation," Emory Bankruptcy Developments Journal Symposium, Atlanta, Georgia (February 21, 2019); "Case Law Update," Law Education Institute, Snowmass, Colorado (January 2-6, 2019); "Oh, Let Me Count the Days: Calculating Deadlines and Reach-back Periods in Avoidance and Other Actions," Cobb County Bar Association, Marietta, Georgia (November 30, 2018); "Avoiding and Recovery Payments Made for Adult Children," Cobb County Bar Association, Marietta, Georgia (November 30, 2018); "Suing Universities (and Others) to Recover the Tuition Payments Made for Adult Children," The

W. Homer Drake, Jr. Georgia Bankruptcy Inn of Court, Atlanta, Georgia (October 25, 2018); "Treatment of Product Liability and Similar Claims in Bankruptcy in a Reopened Case: (a) Are the Claims Property of the Estate, (b) If So, What Exemption Can Be Claimed, and (c) the Role of Judicial Estoppel," The W. Homer Drake, Jr. Georgia Bankruptcy Inn of Court, Atlanta, Georgia (October 25, 2018); "Recent Developments/Case Law Updates," Chapter 7 Panel Trustee Training – Northern District of Georgia, Atlanta, Georgia (September 14, 2018); "Case Law Update," NABT Convention, Amelia Island, Florida (August 16, 2018); "Trustee Litigation – A Powerful Tool," Region 21 Trustee Training Webinar (March 28, 2018); "The Powerball Jackpot (Case Law Update)," NABT Spring Seminar, Las Vegas, Nevada (February 23, 2018); "Exemptions," "Consumer Case Law Update," and "Business Case Law Update," National CLE Conference in conjunction with the Colorado Bar Association and the Law Education Institute, Vail, Colorado (January 3-7, 2018); "Oh, Let Me Count the Days: Calculating Deadlines and Reachback Periods in Avoidance and Other Actions, Consumer and Business Bankruptcy Institute, Reynolds Plantation, Georgia (December 14, 2017);"Bankruptcy Avoidance Actions," National Association of Attorney Generals, Savannah, Georgia (November 15, 2017); "Case Law Update," NABT Convention, New Orleans, Louisiana (September 15. 2017); "Shark Tank: The Case for Increasing Chapter 7 Trustee Compensation," American Bankruptcy Institute 22nd Annual Southeast Bankruptcy Workshop, Hilton Head Island, South Carolina (July 30, 2017); "Case Law Update," NABT Spring Seminar, Rio Grande, Puerto Rico (March 3, 2017); "Case Law Update," Law Education Institute (LEI) Conference, Snowmass, Colorado (January 4-8, 2017); "Exemptions," American Bankruptcy Institute Winter Leadership Conference, Rancho Palos Verdes, California (December 1-3, 2016); "Obligations of Trustees in Fulfilling Their Fiduciary Duties," American Inns of Court (November 17, 2016); "Simply the Best: Case Law Update," NABT Annual Convention, San Diego, California (September 9, 2016); "Exemption Issues in Chapter 13," NACTT 51st Annual Conference, Philadelphia, Pennsylvania (July 23, 2016); "Dismissal and Conversion Issues," NACTT 51st Annual Conference, Philadelphia, Pennsylvania (July 22, 2016); "Recent Cases: Case Law Update," NABT Spring Seminar, Atlanta, Georgia (April 8, 2016); "Avoidance and Recovery Actions Across the Chapters: Roles & Perspectives of Trustees," American

Inns of Court Winter Program, Atlanta, Georgia (January 26, 2016); "Exemption Law – Immunity to Treat Creditors with Impunity or the Privilege of Fresh Start" and "Case Law Update: Commercial/Business," Law Education Institute (LEI) Conference, Vail, Colorado (January 6-10, 2016); "So You Thought You Understood Exemptions!" Cobb County Bar Association, Marietta, Georgia (October 10, 2015); "Does *Law v. Siegal* Really Stand for That?," National Conference of Bankruptcy Judges 89th Annual Meeting, Miami, Florida (September 27-30, 2015); "Exemptions" and "Case Law Update," NABT Annual Convention, Chicago, Illinois (August 27-29, 2015); "Case Law Update," United States Trustee Region 21-Northern District of Georgia Trustee Training (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Atlanta, Georgia (August 21, 2015); "Case Law Update," NABT Spring Seminar, Charleston, South Carolina (February 27, 2015); "How to Approach Banks about Short Sales and Carve-Outs," American Bankruptcy Institute Conference, Tulane University, New Orleans, Louisiana (January 19, 2015); "Case Law Update," Law Education Institute (LEI) Conference, Vail, Colorado (January 7-11, 2015); "Zip Lining through the Tough issues in Avoiding a Preference or Set-Off," Institute of Continuing Legal Education in Georgia, Greensboro, Georgia (October 23, 2014); "Current Consumer Trends & Practices," American College of Bankruptcy, National Conference of Bankruptcy Judges 88th Annual Meeting, Chicago, Illinois (October 8, 2014); "The Nuts & Bolts of Chapter 11," American Bankruptcy Institute Workshop, Salt Lake City, Utah (September 12, 2014); "Case Law Update," NABT Annual Convention, Salt Lake City, Utah (September 12, 2014); "Case Law Update," United States Trustee Region 3 Trustee Training (includes Delaware, New Jersey, and Pennsylvania Trustees), Harrisburg, Pennsylvania (June 6, 2014); "Case Law Update," United States Trustee Region 21-Northern District of Georgia Trustee Training (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Atlanta, Georgia (May 9, 2014); "The Nuts & Bolts of Chapter 11," American Bankruptcy Institute Southeast Seminar, Coral Gables, Florida (April 5, 2014); "Case Law Update," NABT Spring Seminar, Coral Gables, Florida (April 5, 2014); "Chapter 7 and 11 Case Law Update," Law Education Institute (LEI) Conference, Vail, Colorado (January 5-9, 2014); "Real Estate Short Sales and Carve-Outs," American Bankruptcy Institute 25th Annual Winter Leadership Conference, Rancho Palos Verdes, California (December 6, 2013); "Chapter

7 & Hot Topics," National Conference of Bankruptcy Judges 2013 Annual Conference, Atlanta, Georgia (November 1, 2013); "Case Law Update" NABT 2013 Annual Meeting, White Sulphur Springs, West Virginia (August 8, 2013); "Plenary Session: Consumer Update 2013," American Bankruptcy Institute Southeast Seminar, Amelia Island, Florida (July 18-21, 2013); "Mortgage Avoidance Issues in Bankruptcy (A Trustee's Perspective)," 35th Annual Real Property law Institute, Amelia Island, Florida (May 9, 2013); "The Good, the Bad, and the Ugly – Case Law Update," NABT 2013 Spring Seminar, Scottsdale, Arizona (February 22-23, 2013); "Case Law Developments," "What Is the Trustee Up to Now?" "Mortgage Issues: Pervasive Issues and Abuses," and Fraudulent Conveyances," Law Education Institute (LEI) Conference, Snowmass, Colorado (January 2-5, 2013); "Case Law Update I," NABT 2012 Annual Meeting, Colorado Springs, Colorado (September 8, 2012); Case Law Update II," NABT 2012 Annual Meeting, Colorado Springs, Colorado (September 6, 2012) "Bankruptcy Issues for Auctioneers," National Auctioneers Association's 63rd International Auctioneers Conference, Spokane, Washington (July 18, 2012); "The Presidents' Panel: Current Issues in Consumer Bankruptcy," NACTT 47th Annual Seminar, New Orleans, Louisiana (July 13, 2012); "Waiter! Check Please! Paying the Tab in Consumer Bankruptcy: The Real Costs of Accessing the System," NACTT 47th Annual Seminar, New Orleans, Louisiana (July 12, 2012); "An Empirical Study of the Costs of BAPCPA," NABT 2012 Spring Seminar, Las Vegas, Nevada (March 31, 2012); "Sold! Short Sales/724(b) Sales: The New Normal," NABT 2012 Spring Seminar, Las Vegas, Nevada (March 30, 2012); "Ethics and Professionalism Potpourri," 36th Annual Judge Alexander L. Paskay Seminar on Bankruptcy Law and Practice, Tampa, Florida (March 17, 2012); "Latest Developments – Case Law Update," "Ethic Standards Re-Examined," and "Who Gets the Money? Claims Objections Issues," Law Education Institute's 29th Annual national CLE Conference, Snowmass, Colorado (January 4 – 8, 2012); "Hot Topics in Chapter 7," ABI/NCBJ Roundtable, National Conference of Bankruptcy Judges, Tampa, Florida (October 12-15, 2011); "Case Conversion Issues," NABT 2011 Annual Meeting, Amelia Island, Florida (September 21-24, 2011); "Today's Chapter 7," Panel, Annual Southeast Bankruptcy Workshop, Kiawah Island, South Carolina (July 27-30, 2011); "Select Claim Objection Issues," NABT Spring Seminar, Santa Monica, California (March 26, 2011);

"Looking Ahead: What's in Store for Consumer Practitioners in 2011," 35th Annual Judge Alexander L. Paskay Seminar on Bankruptcy Law and Practice, Tampa, Florida (March 10-12, 2011); "Chapters 7 and 11 Case Law Update," State Bar of Georgia Bankruptcy Law Section, Greensboro, Georgia (October 28, 2010); "Recovering Unauthorized Post-Petition Transfers," NABT Convention, San Francisco, California (October 1, 2010); "Chapter 7 Law Update," Middle District of Georgia Bankruptcy Institute, Macon, Georgia (September 17, 2010); " Individual Business Bankruptcy Cases," Metro Atlanta Consumer Bankruptcy Attorneys Group, Atlanta, Georgia (May 21, 2010), "Professionalism Issues," Atlanta Bar Association, Bankruptcy Law Section Seminar, Atlanta, Georgia (May 6, 2010); "Recurring Issues among Consumer Lawyers and Trustees and How to Avoid Them," American Bankruptcy Institute, Washington, D.C. (May 1, 2010); "The Nouveau Pauvre, or Who Used to Be a Millionaire (Finding Assets in Those Mid and Large Size Cases in Which the Debtors Used to Be "High-End" Debtors)," NABT Spring Seminar, Savannah, Georgia (April 9, 2010); "Trends and Threads in Business Cases: Case Law Update from the Front," National CLE Conference, Vail, Colorado (January 6, 2010); "Prebankruptcy Asset Protection and Planning: How Far Can the Line Be Pushed before the Trustee Reacts," National CLE Conference, Vail, Colorado (January 7, 2010), and "Making Sense of the Tide in Consumer Case/Issue Development: Caselaw Review of Recent Consumer Bankruptcy Decisions," National CLE Conference, Vail, Colorado (January 8, 2010); "Hot Topics in Chapter 7," ICLE Bankruptcy Seminar, Braselton, Georgia (November 12, 2009); "The Art of the Carve-Out," NABT Annual Convention, Boston, Massachusetts (August 29, 2009); "Hot Consumer Topics in Chapter 7," American Bankruptcy Institute 14th Annual Southeast Bankruptcy Workshop, Hilton Head, South Carolina (July 30, 2009 – August 1, 2009); "Negotiation/Out-of-Courtroom Skills and Techniques," American Bankruptcy Institute's Skills Training Program, Atlanta, Georgia (June 4, 2009); "Select Trustee Issues," 11th Circuit Fellows Luncheon, American College of Bankruptcy, Washington, D.C. (March 27, 2009); "Case Law Update: The Good, The Bad, and The Ugly," National CLE Conference (LEI), Vail, Colorado, January 4-5, 2009; "Case Law Update," United States Trustee Region 21 Seminar (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Atlanta, Georgia (October 21, 2008); "The Art of the Carve-Out," NABT Spring Seminar, Santa

Fe, New Mexico (April 26, 2008); "Bankruptcy Claim Quandaries, Administrative Claims, Claims Evidentiary Issues, Superpriority Claims Upon Conversion to Chapter 7, Rejection Claims, and Estimation Claims," National CLE Conference (LEI), Vail, Colorado, January 4-6, 2008; "Select Exemption Issues," National Conference Bankruptcy Judges, Orlando, Florida (October 10, 2007); "Case Law Update," United States Trustee Region 21 Seminar (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees) Atlanta, Georgia (September 27, 2007), "Administering Exempted Assets," NABT Spring Seminar, Atlanta, Georgia (March 16, 2007); "Pro Se Debtor Cases and Issues," American Bankruptcy Institute's 11th Annual Southeast Bankruptcy Workshop (July 26-29, 2006); "Case Law Update," United States Trustee Region 21 Seminar (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Miami, Florida, Georgia (June 22-23, 2006); "Bankruptcy Reform Act - Hot Issues," NABT Spring Seminar, Phoenix, Arizona (March 4, 2006); "Tax Issues in the Era of the New Bankruptcy Reform Act," Georgia Society of CPAs, Atlanta, Georgia (June 21, 2005); "The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: How will it affect your business?" AGG Seminar, Atlanta, Georgia (June 3, 2005); "Bankruptcy Issues for the Commercial Realtor," Atlanta Board of Realtors, Atlanta, Georgia (June 2, 2005); "Proving Deepening Insolvency," Emory Bankruptcy Developments Journal Symposium, Atlanta, Georgia (March 24, 2005); "Case Conversion Issues," United States Trustee Region 21 Seminar (includes Florida and Georgia Trustees), Savannah, Georgia (January 20-21, 2005); "New Developments: A Trustee's Perspective," NABT Convention, San Diego, California (September 11, 2004); "Holding onto Assets," NABT Spring Seminar, Las Vegas, Nevada (March 12-13, 2004); "Case Law Update," United States Trustee Region 21 Seminar, Atlanta, Georgia (January 8, 2004); "Recovering Assets through Litigation in Bankruptcy," National Bankruptcy Training Institute, Columbia, South Carolina (November 18, 2003); Faculty Member, National Bankruptcy Training Institute, Columbia, South Carolina (2003); "Claims Review, Objections, and Resolutions," NABT Annual Convention, Washington, D.C. (September 9, 2003); "Perfection of Collateral" and "Guaranty Agreements," SouthTrust Bank Live Video Broadcast Seminar, Atlanta, Georgia (August 22, 2003); "Establishing Corporate Insider Liability: From Deepening Insolvency to Avoidance Issues," NABT Spring Seminar, Coral Gables, Florida (March 29, 2003);

Training Seminar for New Trustees, Office of the United States Trustee (September 12, 2002); “Case Law Update,” United States Trustee Region 21 Seminar (Florida and Georgia Trustees) (May 3, 2002); “Bankruptcy and Foreclosures,” Georgia ICLE (April 17, 2002); “Loan Documentation Issues,” (August 22, 2003); “How to Protect the Interest of Secured Creditors in Georgia,” National Business Institute (NBI); “How New Bankruptcy Legislation Will Impact Your Practice,” Consumer Bankruptcy Attorneys Association; “Advanced Real Estate Seminar: Bankruptcy Issues,” NBI; “Ethics in Bankruptcy,” State Bar of Georgia, Bankruptcy Law Section; “Chapter 11 Single Asset Real Estate Cases,” Atlanta Bar Association, Bankruptcy Law Section; “Bankruptcy: An Overview,” Georgia Department of Banking and Finance; “Bankruptcy: An Overview,” Mortgage Bankers Association of Georgia; “Liens and Credit Issues in Bankruptcy,” NBI.

taylor | duma

**Taylor Duma LLP**
1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 | Fax: 770.434.7376 | www.taylorduma.com

Tiffany E. Caron, Chapter 7 Trustee
P. O. Box 711
West Palm Beach, FL 33402

| | |
|---|---|
| Statement Date: | March 6, 2026 |
| Statement No. | 937563 |
| Account No. | 85279.0000 |
| Federal ID No. | 201310229 |

Attn: Tiffany E. Caron, Chapt

Re: Master Lending Group, LLC (Case No. 23-40

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 07/11/2023 | NG | Telephone conference with trustee regarding background application to employ special counsel, pro hac vice application for professionals , legal issues in the case and initial strategy | 795.00 | 1.10 | 874.50 |
| 07/12/2023 | NG | Memo to P. Bicknell on preparation of application for employment as special counsel | 795.00 | 0.30 | 238.50 |
| | PB | Prepare Application for appointment of Special Counsel, Verified Statement of N. Gordon, and proposed Order | 285.00 | 1.60 | 456.00 |
| | NG | Review, revise, and supplement draft of Application to Employ Special Counsel, Verified Statement and proposed order (.7); review pro hac vice application (.2); discussion with trustee regarding both applications and particularities of the Southern District of Georgia practice and how to revise further to address those while still being sufficiently comprehensive (.4) | 795.00 | 1.30 | 1,033.50 |
| | AF | Travel to and from U. S. District Court (1.1); request and obtain Certificate of Good Standing for N. Gordon, J. Pettie, and N. Rowland (.2) | 285.00 | 1.30 | 370.50 |
| 07/13/2023 | NG | Telephone conference with trustee to advise on certain issues such as recovering retainer from debtor counsel who clearly is representing the interests of debtors' principals and not the debtor | 795.00 | 0.40 | 318.00 |
| 07/14/2023 | NG | Review and consider dozens of emails from trustee and Greg Hays and consider how to bring the beach house and $975,000 of "cash on hand" into the Estate. | 795.00 | 0.70 | 556.50 |
| | PB | Prepare and obtain execution of Rule 2014 Verification of Natalie Rowland | 285.00 | 0.40 | 114.00 |
| | PB | Prepare and obtain execution of Rule 2014 Verification of Jason Pettie | 285.00 | 0.40 | 114.00 |

EXHIBIT
"A1"

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | PB | Prepare and obtain execution of Rule 2014 Verification of John Rezac | 285.00 | 0.40 | 114.00 |
| 07/16/2023 | NG | Review and consider litigation hold letter from trustee to CPAs and propose revisions, and also propose a letter to debtor counsel and any other past counsel for the LLC waiving the attorney-client privilege and demanding all records | 795.00 | 0.50 | 397.50 |
| 07/17/2023 | NG | Review numerous document preservation letters/memos and choose two and forward to the trustee to adapt. | 795.00 | 0.70 | 556.50 |
| | NRR | Conferred with Neil Gordon regarding language for litigation hold/preservation of evidence letter | 450.00 | 0.20 | 90.00 |
| 07/18/2023 | NG | Review and consider Lauren Glisson correspondence and accounting from Rabbi Slatus with an interesting historical perspective | 795.00 | 0.30 | 238.50 |
| | NG | Review an consider email and Fred Rabhan POC from Greg Hays | 795.00 | 0.20 | 159.00 |
| 07/19/2023 | NG | Review, consider and propose revisions and supplementation to draft of litigation hold letter (.7); review correspondence from Trustee and UST regarding plans for how 341 will be conducted (.1) | 795.00 | 0.80 | 636.00 |
| | NG | At trustee's request, continued work on litigation hold letter and correspond with trustee regarding same (.8); at trustee's request work on drafting letter to MLG's former counsel waiving attorney client privilege, including review and consideration of Supreme Court's Commodity Trading Act case from 1985 concerning trustee's ability to waive attorney client privilege and draft form of such letter for use by trustee | 795.00 | 1.30 | 1,033.50 |
| 07/20/2023 | NG | Continued correspondence with trustee to complete work on document retention letters and another set of letters for waiver of the attorney client privilege and for turnover of documents and records | 795.00 | 0.70 | 556.50 |
| 07/21/2023 | NG | Correspondence from trustee to advise her on handling and scope of 341 meeting in view of limitations being insisted upon by debtor's counsel, consider same and draft response to trustee with recommended response and review her response draft in accordance with such recommendations (.4); review various letters sent for document retention or waiver of attorney client privilege and advising attorney addressees to contact me with any questions or issues (.5); review and consider response letter of debtor counsel concerning the records he identifies as being in his possession (.2) | 795.00 | 1.10 | 874.50 |
| 07/24/2023 | PB | Create working files | 285.00 | 0.80 | 228.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Review and consider 2013 investor redemption documents and dozens of other emails from trustee, G. Hays and Hayley Glisson and comment thereon | 795.00 | 0.90 | 715.50 |
| 07/25/2023 | PB | Revise Rule 2014 Verifications of N. Gordon, J. Rezac, J. Pettie, and N. Rowland and obtain execution of same | 285.00 | 1.00 | 285.00 |
| | NG | Research involuntary and election issues for trustee (1.2); review emails from trustee and Greg Hays regarding new information and developments (.5); at trustee's request, work on establishing a web page for the trustee regarding this case (.2); work on amended verified statements (.2); at trustee's request participate in a telephone conference with trustee and Greg Hays regarding new developments and strategy, and answer her questions concerning viability of an involuntary filing against Mr. Hirsch, whether certain assets are property of the estate, whether certain documents are subject to turnover or may be withheld under any form of privilege, how to address any potential election that may be called and to contest it, status of orders, etc. (1.6); calls from and to Dwight Fleemster and discuss pending lawsuit against Flake and documents in his possession (.4); review at request of trustee, emails between Judy Hirsch and Jud and provide my assessment (.4) | 795.00 | 4.50 | 3,577.50 |
| 07/26/2023 | NG | Call from and correspondence with Greg Hirsch counsel James Banter (associate working with John Kennedy) and then with trustee (.2); telephone conference call with James Banter and Greg Hays (1.0); prepare report to trustee (.2) | 795.00 | 1.40 | 1,113.00 |
| 07/28/2023 | NG | Multiple correspondence with trustee regarding establishment of web page and proper content, upcoming hearing on objection to special counsel employment, locate and forward to trustee at her request enhancement order from another recent Valdosta case handled by Neil Gordon to use at hearing. | 795.00 | 0.70 | 556.50 |
| 07/31/2023 | NG | Review forms and background checks from G.Hays for Broker 2004 exams (.8); correspondence to trustee concerning the points she should stress and argue in support of her application to employ special counsel (.6) | 795.00 | 1.40 | 1,113.00 |
| | NG | Review notice to all creditors of the hearing on the objection to trustee's application to employ special counsel | 795.00 | 0.20 | 159.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Telephone conference with trustee and provide tutorial on what claims will belong to the estate and which to the investors, in pari delicto defenses, deepening insolvency and other theories, Rule 2004s that are needed right away, how to respond to certain questions anticipated at the 341, whether a lawsuit should be filed now against the accounting firm, why I recommend it being to early to do so from a Rule 11 perspective, E&O policies and whether "wasting" policies or not, issues unique to affinity fraud and how this case differs due to the lack of a witness or documents thus far, that as a CPA there should be detailed records for MLG, etc. | 795.00 | 2.30 | 1,828.50 |
| 08/01/2023 | NG | Review correspondence from trustee and draft response concerning timing of filing of Rule 2004 motions, production dates, etc. and comment on incorporating usage of Rule 45 (R. 9016) or by consent and how much time to allow initially | 795.00 | 0.40 | 318.00 |
| | NG | Review and consider correspondence, documents and spreadsheet from Haley Glisson and correspondence and operating agreement from G. Hays | 795.00 | 0.80 | 636.00 |
| | NG | Review developments set forth in correspondence from G. Hays and the Trustee regarding Truist subpoena, Synergy payments, etc. and respond thereto. | 795.00 | 0.30 | 238.50 |
| | NRR | Reviewed correspondence from Neil Gordon regarding revisions to Litigation Hold letter | 450.00 | 0.10 | 45.00 |
| 08/02/2023 | NG | At trustee's request, review emails and drafts of Broker 2004 motions and document production lists to comment thereon | 795.00 | 0.70 | 556.50 |
| 08/03/2023 | NG | Review updates from trustee and G. Hays on numerous developments (.5); review and consider motion to quash and exhibits from counsel for Greg Hirsch (.6) | 795.00 | 1.10 | 874.50 |
| | NG | Begin researching and reviewing cases on in pari delicto defense in order to properly advise the trustee | 795.00 | 2.30 | 1,828.50 |
| 08/04/2023 | NG | Address at trustee's request web page content and format, rescheduling of 341, etc. | 795.00 | 0.40 | 318.00 |
| | DW | Research regarding 11th Circuit caselaw in connection with In Pari Delicto defense against a receiver or bankruptcy trustee | 350.00 | 3.10 | 1,085.00 |
| 08/07/2023 | NG | Review numerous pleadings, orders, and emails from G. Hays and Trustee and respond where appropriate | 795.00 | 0.50 | 397.50 |
| 08/08/2023 | DW | Finalize 8/4 research with attention to analyzing/organizing same (.6); draft and send email conveying same to N. Gordon with attention to next steps (.3) | 350.00 | 0.90 | 315.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 08/09/2023 | NG | Review and consider Howard lawsuit against H&T, Truist and G. Hirsch (.6); telephone conference with G. Hays and Bob Brennan regarding same (.5); telephone conference with trustee regarding hearing tomorrow in Savannah (1.5); preparation for same (.8) | 795.00 | 3.40 | 2,703.00 |
| 08/10/2023 | NG | Meet trustee prior to hearing on Application for Employment of Special Counsel in preparation for same (.6); attend hearing and respond to questions from the Court (1.8); confer with trustee, Judd Hill, and investor F. Rabhan (.3); telephone conference with Greg Hays regarding hearing results and most immediate needs for the estate (.3); return to Atlanta (3.8--being one-half of round trip) | 795.00 | 6.80 | 5,406.00 |
| | PB | Review of insurance documents and correspondences between Trustee and debtor's attorney regarding turnover of $5MM in insurance proceeds and amended schedules | 285.00 | 3.20 | 912.00 |
| 08/11/2023 | NG | Review Rules 7001(1) and (2) and consider them the best course of action concerning lawsuit to be filed (.2); draft memo to N. Rowland regarding background and basis for emergency lawsuit against Prudential, Coventry, and Judy Hirsch regarding $5MM life insurance policy and $975k of cash as originally scheduled, causes of action, applicable rules and code sections, likelihood of interpleader by Prudential, etc. (1.1) and review and further respond to her (.3); review and respond to correspondence from trustee and G. Hays regarding demand letters and prioritization of tasks, and letter to Bob Brennan (.5); attend as requested by trustee telephone conference with three attorneys representing the late Mr. Hirsch seeking a stay and discussing the intention of family members to reject appointment as estate representative (.6); telephone conference call from trustee and G, Hays regarding developments, and formulate and discuss questions for trustee to ask at 341 during cross examination of Judy Hirsch for use in lawsuit, necessity of asking leading questions and how to phrase them, follow-up questions depending on her responses, questions to ask Judd Hill and how to phrase them and be of use in the lawsuit, etc. (.8) | 795.00 | 3.50 | 2,782.50 |
| | NRR | Exchanged memos with N. Gordon regarding lawsuit to be filed against Prudential Insurance, Coventry First, and Judy Hirsch (.9); conference call with trustee and G. Hayes regarding lawsuit to be filed, further background for lawsuit ans legal issues (.8) | 450.00 | 1.70 | 765.00 |
| 08/12/2023 | NG | Review and further respond to memo from N. Rowland seeking additional facts, documents and strategy regarding the combination of Complaint, preliminary injunctive relief, TRO, interpleader alternative, etc. and respond thereto | 795.00 | 0.60 | 477.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NRR | Reviewed Chatham County Superior Court Complaint by Gregory and Judith Hirsch against Coventry First, LLC for declaratory judgment and for damages (.6); phone call with trustee to discuss details of settlement agreement between Gregory and Judith Hirsch and Coventry First, LLC (.1); reviewed $5M Prudential life insurance policy for Gregory Hirsch (.2); reviewed bankruptcy court docket and documents from trustee, including voluntary petition, schedules, statements, amendments to schedules, and correspondence with attorney for debtor, etc. to gather facts supporting complaint to determine validity, priority, or extent of a lien or other interest in property (1.3); exchanged memos with Neil Gordon regarding facts needed to prepare complaint, motion for temporary restraining order/preliminary injunction, and petition for interpleader (.6) | 450.00 | 2.80 | 1,260.00 |
| 08/13/2023 | NRR | Research regarding Rule 65 of the Federal Rules of Civil Procedure, including distinctions between preliminary injunctions and temporary restraining orders and procedure for seeking same, as well as procedure for contesting life insurance beneficiary, delaying death benefit disbursement, and interpleader of life insurance proceeds (3.6); exchanged memos with N. Gordon regarding research results, strategy for preparing and filing motion, facts needed to meet burden of proof, and procedure for interpleader (1.1). | 450.00 | 4.70 | 2,115.00 |
| | NG | Review and consider memo from N. Rowland regarding need for further background and strategy, standard for injunctive relief and inquiring how to satisfy it (.4); draft lengthy analysis of additional counts of complaint that could be asserted, anticipated evidence, need for actual documents still not produced, timing, etc. (.7); review further response (.2) | 795.00 | 1.30 | 1,033.50 |
| 08/14/2023 | NG | Review and consider correspondence from James Banter and John Kennedy proposing that the trustee join them in a motion to stay the bankruptcy (.2); draft proposed reply for trustee approval and then transmit expanded version to them rejecting such an outlandish proposal (.3); correspondence with trustee regarding attending conference call with SEC (.1); | 795.00 | 0.60 | 477.00 |
| | NG | Virtual conference with SEC attorneys William Uptegrove and Elizabeth Skola at their request regarding background, and documents they want to obtain by subpoena on the trustee (.6); conference call from trustee thereafter regarding same and go over her questions for tomorrow's 341 meeting (.9); correspondence regarding additional documents needed for lawsuit (.2) | 795.00 | 1.70 | 1,351.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 08/15/2023 | NG | Review and consider follow-up correspondence from James Banter (.3); draft memo to N. Rowland regarding same (.2); at trustee's request, attend 341 meeting and answer questions and intercede concerning debtor counsel continuing objections to witness responding to basic questions, and monitor for information useful to the lawsuit and demand on Prudential (1.8); review order entered on employment of Taylor English Duma on behalf of trustee (.1); telephone conference with trustee and G. Hays following 341 to discuss testimony and next steps (.3) | 795.00 | 2.70 | 2,146.50 |
| | NRR | Attended portion of 341 meeting for use in lawsuit and drafting of letter to Pruco Life Insurance Company (.5); phone call with Trustee to discuss the testimony of Judy Hirsch and questions from creditors regarding $5M life insurance policy (.2); drafted letter to Pruco Life Insurance Company (1.4) drafted standard of review for grant of preliminary injunctive relief in furtherance of broader motion for preliminary injunctive relief/temporary restraining order (.7); reviewed memo from N. Gordon regarding correspondence from James Banter (.1) | 450.00 | 2.90 | 1,305.00 |
| | NG | Review and respond to memo from N. Rowland regarding concept of insurance demand letter | 795.00 | 0.40 | 318.00 |
| 08/16/2023 | NG | Correspondence from and discussion with trustee regarding investors wanting to attend all Rule 2004 exams | 795.00 | 0.30 | 238.50 |
| | NG | Correspondence and call from Elizabeth Skola of the SEC regarding accepting service of subpoena for the trustee, and correspond with trustee regarding same; draft reply | 795.00 | 0.30 | 238.50 |
| | NG | At trustee's request, address the investors requests/demands for documents recovered that pertain to them (.3); regarding insurance demand letter, legal research on implied trusts and equitable interests as well as applicable bankruptcy code provisions (1.6); review, revise and supplement insurance demand letter (.7) | 795.00 | 2.60 | 2,067.00 |
| | NRR | Conducted research regarding breach of fiduciary duty by power of attorney for failing to act in accordance with the instructions and directions of grantor (1.4); drafted revisions and supplemental facts to letter to Pruco Life Insurance Company contesting beneficiary designation (3.8) and exchanged correspondence with Trustee regarding same (.1) | 450.00 | 5.30 | 2,385.00 |
| 08/17/2023 | NRR | Finalized correspondence to Pruco Life Insurance Company contesting beneficiary designation and demanding turnover of death benefit payment to Trustee (.2); exchanged corresponence with Trustee and N. Gordon regarding same (.3) | 450.00 | 0.50 | 225.00 |
| | TW | Forward correspondence with documents to Pruco Life Insurance Company regarding "Contesting Life Insurance Beneficiary for Policy No. L7000224. | 225.00 | 0.20 | 45.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 08/18/2023 | NRR | Continued drafting motion for preliminary injunctive relief/temporary restraining order (3.4); exchanged memos with N. Gordon regarding same (.6) | 450.00 | 4.00 | 1,800.00 |
| | NG | While in DC, exchange numerous memos with N. Rowland regarding facts concerning the $975,000 of cash earlier scheduled and whether to include in the complaint and motion for injunctive relief | 795.00 | 0.60 | 477.00 |
| 08/19/2023 | NRR | Continued drafting motion for preliminary injunctive relief/temporary restraining order (4.1); exchanged memos with N. Gordon regarding same (.7) | 450.00 | 4.80 | 2,160.00 |
| | NG | Review and consider Jud Hill correspondence (.1); draft correspondence to trustee, G. Hays and Haley Glisson regarding neither the UST nor the trustee should be providing documents to Jud Hill or allowing him hours of in-office review, as his representation is essentially over as the the corporate debtor is closed and gets no discharge and the 341 was concluded effectively ending his role in the case (.2) | 795.00 | 0.30 | 238.50 |
| | NG | While in DC, exchange numerous memos with N. Rowland regarding legal issues involved in drafting complaint and motion for injunctive relief | 795.00 | 0.70 | 556.50 |
| 08/20/2023 | NRR | Continued drafting motion for preliminary injunctive relief/temporary restraining order (7.8); exchanged memos with N. Gordon regarding same (.7) | 450.00 | 8.50 | 3,825.00 |
| 08/21/2023 | NG | Review correspondence from trustee and G. Hays requesting that I draft a lengthy formal email correspondence to Matt Mills concerning inappropriate time and expenditures by debtor counsel against the retainer and thereby diminishing the amount available to turnover (.2); draft lengthy correspondence (1.1); discuss draft with trustee and additional points to add or subtract (.5); twice revise same and edit after further comments by trustee and G. Hays (.4); review response from Matt Mills and draft further reply (.2) | 795.00 | 2.40 | 1,908.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 08/22/2023 | NG | Telephone conference with trustee in preparation for conference call with Matt Mills and Hayley Glisson (.5); address legal effect of death of Greg Hirsch before the amendment was signed and filed (.5) review of recent emails with UST and correspondence with Jud Hill in preparation for same (.3); telephone conference call with Matt, Hayley, and trustee (1.1); follow-up with trustee and discuss language for demand letter to Jud to cease all further activity and remit the unused balance of the retainer along with an accounting, upcoming hearings on objections to Rule 2004 exams, etc, (.4); review and revise proposed letter to Jud Hill and make it much shorter (.3); review and forward SEC record subpoena to trustee (.5); review and consider reply of Jud Hill and draft the response of the trustee after consulting with the trustee (.9); exchange correspondence with Jud Hill thereafter (.2) | 795.00 | 4.70 | 3,736.50 |
| | NRR | Continued drafting motion for preliminary injunctive relief/temporary restraining order, including edits addressing legal effect of O.C.G.A. 10-6B-10 on filing of fourth version of Debtor's assets and schedules under expired power of attorney (6.1); exchanged memos with N. Gordon and P. Bicknell regarding same (1.7) | 450.00 | 7.80 | 3,510.00 |
| | NG | Work with Natalie Rowland on causes of action and whether breach of fiduciary duty can be established given that the power of attorney terminated before the final amendment, and possibility of constructive fraud | 795.00 | 0.70 | 556.50 |
| 08/23/2023 | NRR | Research regarding breach of confidential relationship and duty of good faith pursuant to O.C.G.A. 23-2-58, unjust enrichment and imposition of constructive trust as remedy (2.6); supplemented and revised motion for temporary restraining order to add same (2.9); exchanged memos with N. Gordon and P. Bicknell regarding edits to motion for temporary restraining order and preliminary injunction and information needed for preparation of complaint to determine validity, priority and extent of lien and ownership interest (.7). | 450.00 | 6.20 | 2,790.00 |
| 08/24/2023 | PB | Continue draft of complaint | 285.00 | 1.80 | 513.00 |
| | NG | Review emergency emails from Bob Brennon (H&T counsel) and Greg Hays that the E&O carrier for H&T is going to tender the policy limits tomorrow to the first investor who sued, a net winner, and consider how to address (1.2); correspondence and discussions with Trustee (.8) and Bob Brennan and Trustee (.3); begin drafting for trustee language for inclusion in letter to insurer, its counsel, and others (.6); | 795.00 | 2.90 | 2,305.50 |
| | NG | Work on issues and causes of action for Complaint and motion for TRO and preliminary injunctive relief | 795.00 | 1.20 | 954.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NRR | Research regarding constructive fraud and conversion (1.9); supplemented and revised motion for temporary restraining order to add same (2.3); begin drafting complaint against Judith Hirsch to determine ownership interest in life insurance proceeds (2.1) exchanged memos with N. Gordon and P. Bicknell regarding edits to complaint (.4) | 450.00 | 6.80 | 3,060.00 |
| 08/25/2023 | NG | Follow-up with trustee and Bob Brennan regarding change of position and insurer for H&T will now decline to tender the policy limits (.2); correspondence with trustee not to send the letter earlier drafted (.1); review declination letter from insurer (.1) | 795.00 | 0.40 | 318.00 |
| | NG | Continue to work on Complaint and motion and respond to questions from N. Rowland regarding same | 795.00 | 0.80 | 636.00 |
| | NRR | Continued drafting complaint against Judith Hirsch (2.0); exchanged correspondence with N. Gordon regarding same (.3) | 450.00 | 2.30 | 1,035.00 |
| 08/26/2023 | NRR | Completed draft of complaint against Judith Hirsch (3.1); exchanged correspondence with P. Bicknell and N. Gordon regarding same (.2) | 450.00 | 3.30 | 1,485.00 |
| 08/28/2023 | PB | Prepare Motion for Temporary Restraining Order and for Preliminary Injunction and for Order Imposing Constructive Trust and Certificate of Service | 285.00 | 0.50 | 142.50 |
| | NG | Work on and edit both complaint against Judith Hirsch and Pruco, and brief in support of motion for TRO and preliminary injunction against them | 795.00 | 1.90 | 1,510.50 |
| | NRR | Exchanged correspondence with Marisa Lenok of Prudential Life Insurance regarding letter demanding turnover of $5M life insurance proceeds (.3); forwarded and discussed same with client and N. Gordon (.2) | 450.00 | 0.50 | 225.00 |
| 08/29/2023 | NG | Review and consider PRUCO counsel correspondence requesting that trustee hold off on the lawsuit to give PRUCO time to determine if it will be interpleading the policy proceeds | 795.00 | 0.20 | 159.00 |
| | NG | Correspondence from trustee regarding SEC subpoena and call to Elizabeth Skola regarding same; further correspondence to client regarding the same | 795.00 | 0.20 | 159.00 |
| | NRR | Exchanged correspondence with Attorney Edgar Whiting on behalf of Pruco Life Insurance Company regarding instruction by Pruco that payment of policy benefits be restricted until consensual resolution between the parties can be reached or funds are interpleaded with the court (.3); forwarded and discussed same and implications thereof with client and N. Gordon (.3) | 450.00 | 0.60 | 270.00 |
| 08/30/2023 | NG | Calls to SEC and correspondence with trustee regarding same | 795.00 | 0.20 | 159.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Review, consider and respond to correspondence regarding amending complaint to remove PRUCO and proceeding only against Ms. Hirsch | 795.00 | 0.40 | 318.00 |
| | NRR | Exchanged correspondence with trustee with suggestions for filing motion for tro/injunction and complaint and further explained telephone conversation with counsel for Pruco regarding Pruco's intentions for policy proceeds | 450.00 | 0.60 | 270.00 |
| 09/01/2023 | NG | Exchange memos with Natalie Rowland regarding latest developments with PRUCO and how to revise lawsuit to be against Ms. Hirsch only (.7); discuss further with N. Rowland (.4); telephone conference call with trustee to explain developments and recommendations and explain possibility of filing the lawsuit leading to an objection to taking her Rule 2004 examination and need to make clear in such a motion that no documents or questions will relate to the lawsuit being filed against her (.6); further exchange of memos with N. Rowland and advise her to be the one to finalize the lawsuit and speak to counsel to Ms. Hirsch to see if there can be a consensual resolution (.3) | 795.00 | 2.00 | 1,590.00 |
| | NRR | Liaised with Pruco's counsel to further discuss options for placement of $5M life insurance proceeds and also confirmed Pruco's continued restriction on payment of death benefits under the policy (.2); updated trustee regarding same and discussed plans to file impending lawsuit against Mrs. Hirsch for a determination that the proceeds are property of the bankruptcy estate, for turnover and other state law causes of action (.3); exchanged memos with N. Gordon regarding plans to engage in settlement discussions with Mrs. Hirsch's counsel concerning turnover of $5M life insurance proceeds (.7) | 450.00 | 1.20 | 540.00 |
| 09/05/2023 | NG | Review and consider revised complaint relating to the $5 million LI policy and make further revisions (1.2); correspondence with trustee regarding timing of filing of lawsuit (.2); telephone conference with N. Rowland and T. Caron regarding same and proposed revisions (.4); make the revisions and prepare correspondence to trustee outlining and explaining the rationale for each revision (.5) | 795.00 | 2.30 | 1,828.50 |
| | NG | Correspondence from Greg Hirsch counsel stating their intent to "participate" in any Rule 2004 exam being taken by the trustee, and respond in disagreement | 795.00 | 0.20 | 159.00 |
| | PB | Prepare verified complaint for filing, prepare/revise Disclosure Statement and Notice of Deferment of Filing Fee and filing of same | 285.00 | 0.80 | 228.00 |
| | NG | Draft correspondence to trustee outlining macro and micro arguments against the fee application of debtor's counsel | 795.00 | 0.70 | 556.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NRR | Phone call with Trustee to discuss final edits to Verified Complaint and strategy for engaging in settlement negotiations with counsel for Mrs. Hirsch regarding $5M life insurance proceeds (.4); exchanged memos with N. Gordon and client regarding deficiencies in time entries for debtor's counsel as basis for objecting to fee application of debtor's counsel (.2) | 450.00 | 0.60 | 270.00 |
| 09/06/2023 | NRR | Liaised with T. Roberts to discuss allegations of complaint against Mrs. Hirsch and options for potential settlement (1.0); drafted memo to N. Gordon regarding results of phone call with T. Roberts and options for resolving dispute (.5); exchanged correspondence with Trustee regarding results of phone call with T. Roberts and request for conference call with N. Gordon (.1) | 450.00 | 1.60 | 720.00 |
| | NG | Telephone conference call with Matt Mills and Haley Glisson of UST, trustee Caron, and Greg Hays regarding upcoming hearing on objections to Rule 2004s | 795.00 | 0.30 | 238.50 |
| | NG | Review and consider and reply to lengthy memo from N. Rowland regarding results of her long phone call with Tim Roberts regarding lawsuit | 795.00 | 0.50 | 397.50 |
| | NG | Review and consider correspondence from James Banter regarding supposed agreement to allow his firm to participate at the Rule 2004s and interpose objections, and draft response explaining that there is no such agreement | 795.00 | 0.50 | 397.50 |
| 09/07/2023 | NG | Telephone conference call with Tiffany Caron and Natalie Rowland to discuss litigation strategy and settlement alternatives following Natalie's lengthy call with Tim Roberts (1.0); at trustee's request, prepare a draft letter to Tim Roberts from Natalie Rowland on behalf of the Bankruptcy Estate setting out background and a settlement proposal (.8) | 795.00 | 1.80 | 1,431.00 |
| | NRR | Liaised with Trustee to discuss results of telephone conversation with T. Roberts and to develop settlement offer in furtherance of resolving complaint against Mrs. Hirsch (1.0); reviewed and responded to memo from N. Gordon regarding proposed settlement offer to Mrs. Hirsch (.2) | 450.00 | 1.20 | 540.00 |
| | NG | Review memo from Natalie Rowland regarding her comments on demand/settlement letter and discuss with same | 795.00 | 0.40 | 318.00 |
| 09/08/2023 | PB | Prepare and electronically file Certificate of Service of Verified Complaint, Disclosure Statement and Summons and Notice | 285.00 | 0.60 | 171.00 |
| | NRR | Correspondence to T. Roberts with proposed offer for consent judgment in furtherance of attempt resolve lawsuit against Mrs. Hirsch | 450.00 | 0.20 | 90.00 |
| | NG | Review and consider comments by trustee to the letter I drafted to be sent to Tim Roberts and respond thereto | 795.00 | 0.20 | 159.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 09/11/2023 | NG | Address issues concerning hearing tomorrow and calls with Mr. Brennan representing H&T (.5); further substantive discussion with Mr. Brennan regarding unsupportable position of Greg Hirsch's counsel (.2); telephone conference with T. Caron regarding same in preparation for the hearing tomorrow on the Hirsch objection (.2); review and consider further correspondence from Bob Brennan along with articles of incorporation and operating agreement (.6); correspondence to trustee regarding same and my initial analysis (.2) | 795.00 | 1.70 | 1,351.50 |
| 09/13/2023 | NG | Review and consider summary correspondences and memos from T. Caron regarding hearing yesterday, developments, and court's rulings and comments, and draft replies in response thereto | 795.00 | 0.60 | 477.00 |
| | NG | Lengthy telephone conference call with trustee regarding more details from the hearing and recommended strategies, pointing out weaknesses and strengths | 795.00 | 1.10 | 874.50 |
| 09/18/2023 | NG | Exchange memos with N. rowland regarding developments and strategy | 795.00 | 0.70 | 556.50 |
| | NRR | Liaised with Trustee, N. Gordon and G. Hayes regarding correspondence to T. Roberts requesting Mrs. Hirsch's consent to interplead proceeds of $5M life insurance policy (.3); exchanged correspondence with T. Roberts regarding prior proposed settlement offer and T. Robert's request that all further correspondence concerning same be directed to recently retained bankruptcy counsel for Mrs. Hirsch (.2) | 450.00 | 0.50 | 225.00 |
| 09/19/2023 | NG | Review and consider memo from N. Rowland to me and the trustee regarding the new counsel employed to represent Ms. Hirsch | 795.00 | 0.20 | 159.00 |
| | NG | Research standard for overcoming good faith defense (knew or should have known) (.9); telephone conference call with T. Carron and G.Hays regarding establishing Ponzi scheme and the presumption that flows, impact on ordinary course preference defense, good faith defense, expert witness candidates for the foregoing, etc. (.5) | 795.00 | 1.40 | 1,113.00 |
| | NRR | Exchanged memos with N. Gordon regarding Debtor's ownership of Northwestern Mutual life insurance policy with cash value on life of J. Brennan and strategy regarding same | 450.00 | 0.20 | 90.00 |
| 09/20/2023 | NG | Review and redraft of follow-up demand letter to Jud Hill regarding waiver or attorney-client privilege and turnover | 795.00 | 0.40 | 318.00 |
| | NG | Review and propose revisions to demand letter to Greg Hirsch counsel | 795.00 | 0.40 | 318.00 |
| 09/21/2023 | NG | Review at trustee's request final letters to lawyers for Greg Hirsch and to Jud Hill and consider Jud's response | 795.00 | 0.60 | 477.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 09/25/2023 | NG | As requested by trustee, review and consider developments with Synergy, Low Country, and withdrawal by Jud Hill | 795.00 | 0.50 | 397.50 |
| | NRR | Exchanged correspondence with Trustee regarding Debtor's 7/1 and 8/4 amendments to schedules and failure of Debtor's bankruptcy counsel to obtain wet ink signatures | 450.00 | 0.20 | 90.00 |
| | NG | Suggest correspondence to Jud Hill in response to his email and review drafted and sent letter | 795.00 | 0.20 | 159.00 |
| 09/27/2023 | NG | Correspondence with trustee regarding developments under Rule 9011 and possible withdrawal of amendments and impact on pending lawsuit | 795.00 | 0.30 | 238.50 |
| | NRR | Liaised with N. Gordon and Trustee regarding consequences of failure of Debtor's counsel to obtain wet ink signatures for schedule amendments and potential impact of withdrawing same on prior lawsuit filed by Trustee against Judith Hirsch. | 450.00 | 1.00 | 450.00 |
| | NG | Telephone conference call with Tiffany Caron and Natalie Rowland regarding developments and next steps, whether to seek documents from J. Hill by Rule 2004 or turnover, his correspondence suggesting a turnover motion, what privileges, if any, might attach, objections that can be anticipated, letter from James Bates with proposed order that is entirely unacceptable, etc, | 795.00 | 0.90 | 715.50 |
| | NG | Further correspondence from trustee and at her request review Jud Hill's correspondence and documentation of his contacts with Hirsch counsel that led to his changing the schedules and review and comment on same | 795.00 | 0.40 | 318.00 |
| 09/28/2023 | NG | At trustee's request, review and comment on proposed correspondence responding to James Banter regarding proposed order | 795.00 | 0.20 | 159.00 |
| 09/29/2023 | NG | At the request of Tiffany Caron, review, consider and comment on draft of Motion for Turnover Pursuant to section 542 | 795.00 | 1.10 | 874.50 |
| 10/02/2023 | NG | Correspondence from T. Caron and review and comment on revised version of motion for turnover combined with memorandum of law in support thereof (.4); review correspondence from Ms. Caron with the filed motion (.1) | 795.00 | 0.50 | 397.50 |
| 10/03/2023 | NRR | Phone call with Attorney E. Whiting regarding interpleader action and Trustee's position as to interest of CoventryFirst/LST Holdings as irrevocable beneficiary of $5M policy (.2); exchanged correspondence with Trustee and N. Gordon regarding same (.2) | 450.00 | 0.40 | 180.00 |

| Date | Timekeeper | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|
| 10/04/2023 | NG | At trustee's request, reviewed and analyzed the Coventry settlement regarding the PRUCO policy and commented thereon any whether it gives rise to any cause of action by the MLG estate (1.0), and commented on developments regarding Synergy (.2) | 795.00 | 1.20 | 954.00 |
| | NG | Correpondence with T. Caron regarding handling upcoming hearinss | 795.00 | 0.40 | 318.00 |
| | NRR | Exchanged correspondence with trustee and N. Gordon regarding $150k CoventryFirst claim, phone call from attorney for CoventryFirst to trustee concerning same, and $200,000 cash payment by Greg and Judy Hirsch as part of settlement of lawsuit against CoventryFirst in April 2023 (.5); exchanged memos with N. Gordon regarding possibility of recovering $200,000 cash payment as avoidable preference (.4); phone call with Pruco attorney as follow up to previous day's phone call discussion regarding trustee's position as to CoventryFirst/LST Holding's $150k interest as irrevocable beneficiary of $5M policy (.3) | 450.00 | 1.20 | 540.00 |
| 10/05/2023 | NG | Draft correspondence to T. Caron and G. Hays regarding most efficient methodology for establishing the Ponzi scheme and analysis needed to support it | 795.00 | 0.60 | 477.00 |
| | NG | Continued focus on establishing the Ponzi scheme, including the data and expert witness and corresponding with trustee and G. Hays regarding same | 795.00 | 0.60 | 477.00 |
| | NG | Strategy conference with T. Caron regarding Synergy issues and upcoming hearing that she wants me to attend, anticipated preparation and presentation, etc. | 795.00 | 0.80 | 636.00 |
| | NG | Correspondence with G. Hays regarding approaching a Synergy settlement | 795.00 | 0.20 | 159.00 |
| 10/08/2023 | NRR | Exchanged corresponence with trustee and N. Gordon regarding evidentiary requirements necessary to establish ponzi scheme | 450.00 | 0.50 | 225.00 |
| 10/10/2023 | NRR | Exchanged correspondence with E. Whiting, attorney for Pruco, regarding Pruco's request for letter confirming trustee's knowledge of and disinterest in coventry first proceed (.3); drafted letter in accordance with same and updated N. Gordon and T. Caron (.8); exchanged memos with P. Bicknell regarding deadline to respond to motion to dismiss adversary case and plan to request extension of time from opposing counsel to respond to same (.2) | 450.00 | 1.30 | 585.00 |
| 10/11/2023 | NRR | Phone call with L. Jones, attorney for Judy Hirsch, regarding extension of time to respond to motion to dismiss adversary case (.2); drafted stipulation of extension of time to respond to motion to dismiss adversary case and forwarded same to L. Jones for his review and consideration (.5) | 450.00 | 0.70 | 315.00 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| Date | | Description | Rate | Hours | |
|---|---|---|---|---|---|
| 10/12/2023 | NRR | Exchanged correspondence with N. Gordon regarding multiple life insurance policies of Greg Hirsch amounting to over $35.5M dollars(.2); exchanged correspondence with E. Whiting, Pruco counsel, confirming that LST Holdings will get first $150k, with remainder of $5M life insurance policy to be interpleaded (.2) | 450.00 | 0.40 | 180.00 |
| 10/13/2023 | NG | Review and consider multiple correspondences from T. Caron regarding upcoming hearings in which she wants us to handle, issues and further Rule 2004 motions, etc (.5); correspondence with N. Rowland regarding same and to get her input and analysis (.4) | 795.00 | 0.90 | 715.50 |
| | NRR | Exchanged correspondence with L. Jones, bk attorney for Judy Hirsch, regarding proposed stipulation to extend and exchanged memos with P. Bicknell with direction to file same with the court (.3); exchanged correspondence with T. Caron and N. Gordon regarding motion to dismiss hearing and interpleader action (.2) | 450.00 | 0.50 | 225.00 |
| 10/16/2023 | NG | Review and analyze correspondence from T. Caron and Jud's Response to Motion for Turnover and attached letter from Leon Jones and consider how it also applies to the application for compensation (.6); telephone conference with T. Caron to discuss foregoing and need for a conference with Matt Mills, whether and to what extent we should agree to dismissal of some or all of the complaint, impact of a probable interpleader, status of forensic work on establishing the Ponzi scheme, how to present it to the court if not ready until just prior to the court hearing, strategy concerning all of these issues and needing me to attend on November 8th (1.5) | 795.00 | 2.10 | 1,669.50 |
| | NRR | Reviewed correspondence from G. Hayes and K. Bodnarek, associate at parker hudson, regarding additional life insurance policies owned by Greg Hirsch and advances thereon for purpose of making payments to debtor's investors (.1); reviewed response to motion for turnover and exhibit attached thereto (.2) | 450.00 | 0.30 | 135.00 |
| 10/17/2023 | NG | Review and consideration of memos from N. Rowland with her preliminary analysis regarding pending lawsuit as to Pruco policy, turnover and fee application (by J. Hill), issues with Rule 2004 document productions, proving the Ponzi scheme, upcoming hearings, etc. and draft responses thereto | 795.00 | 0.80 | 636.00 |
| | NRR | Exchanged correspondence with T. Caron regarding adversary case and availability for phone call to discuss (.2); exchanged correspondence with Pruco counsel regarding timing of interpleader filing and updated T. Caron and N. Gordon regarding same (.2); exchanged memos with N. Gordon regarding preparation for phone call with trustee and provided recommendations for resolving adversary case on interim basis (.8) | 450.00 | 1.20 | 540.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 10/18/2023 | NG | Correspondence with T. Caron regarding agenda items for teleconference with UST regarding upcoming hearings and position of the parties (.2); telephone conference with same (Joel, Matt, and Haley) (1.1) | 795.00 | 1.30 | 1,033.50 |
| 10/19/2023 | NG | Telephone conference call with Trustee to discuss the 2004 motions, motions for turnover, objections to compensation, interplay between them all, evidence that might be needed,witnesses that can be expected to testify, likely substance of their expected testimony, and strategy with respect to the foregoing, Synergy issues and follow-up, etc, | 795.00 | 1.10 | 874.50 |
| | NRR | Phone call with Trustee to discuss adversary case, response to defendant's motion to dismiss, and strategies for resolving same | 450.00 | 1.10 | 495.00 |
| 10/20/2023 | NRR | Liaised with L. Jones, attorney for Judith Hirsch, regarding interpleader, motion to dismiss, and potential for resolving same (.4); reviewed voicemail from E. Whiting, attorney for Pruco, regarding phone call from L. Jones and possible consent order to interplead funds (.1) | 450.00 | 0.50 | 225.00 |
| 10/21/2023 | NRR | Exchanged correspondence with Greg Hayes regarding expert testimony and exhibits for hearing scheduled 11/8/2023 | 450.00 | 0.30 | 135.00 |
| 10/23/2023 | NG | Begin review with G.-Hays of where he is concerning Ponzi scheme analysis and some of the evidence thus far (.3); review several memos and preliminary summaries from G. Hays (.7) | 795.00 | 1.00 | 795.00 |
| | NRR | Phone call with E. Whiting, attorney for Pruco, regarding Defendant's agreement to interplead funds, as communicated by L. Jones, Defendant's counsel (.1); phone call with G. Hayes regarding testimony at hearing scheduled 11/8/2023 and preparation of exhibits related thereto (.3); reviewed 35 page CV for G. Hayes, schedule c to 2019-201 tax returns for Greg Hirsch and numerous other pertinent documents and correspondence in furtherance of ponzi scheme analysis and preparation for hearing scheduled 11/8/2023 (.8) | 450.00 | 1.20 | 540.00 |
| 10/25/2023 | NG | Review articles on Ponzi scheme establishment and presumption in preparation for upcoming hearing | 795.00 | 1.70 | 1,351.50 |
| | NG | Review numerous documents, summaries and accountings from Ms. Glisson and Mr. Hays for use in establishing the Ponzi scheme at the November 8 hearing | 795.00 | 1.60 | 1,272.00 |
| | NRR | Phone call to L. Jones regarding status of adversary case, interpleader, and motion to stay pending motion to dismiss (.2); exchanged correspondence with trustee regarding updates concerning same (.2) | 450.00 | 0.40 | 180.00 |

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

Tiffany E. Caron, Chapter 7 Trustee

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 10/26/2023 | NG | Telephone conference call with UST (Matt, Joel and Haley), trustee, G. Hays, and N. Rowland | 795.00 | 1.00 | 795.00 |
| | NG | Research issues regarding privilege and discovery | 795.00 | 1.20 | 954.00 |
| | NRR | Exchanged correspondence with E. Whiting, Pruco counsel, regarding form of consent order to interplead funds and stipulation to add Pruco as party for purpose of interpleader (.3); phone call to L. Jones and update to trustee regarding same (.2); conference call with UST, T. Caron, N. Gordon and G. Hayes regarding amendments to schedules a/b as filed by estate representative for Greg Hirsch, advice provided to trustee for handling same (1.0) | 450.00 | 1.50 | 675.00 |
| 10/27/2023 | NRR | Researched legal standard, including factors considered by courts, for motion to stay proceedings (1.2); drafted motion to stay proceeds pending interpleader of life insurance proceeds (6.7) and exchanged memos with N. Gordon regarding same (.7) | 450.00 | 8.60 | 3,870.00 |
| | NG | Exchange memos with N. Rowland regarding content of motion for stay (.6); review and edit same (.4) | 795.00 | 1.00 | 795.00 |
| 10/28/2023 | NRR | Finalized edits to motion to stay proceedings (.2); exchanged correspondence with N. Gordon and T. Caron regarding same (.3) | 450.00 | 0.50 | 225.00 |
| 10/31/2023 | NRR | Phone call with L. Jones (x2), counsel for Judith Hirsch, regarding motion to stay proceedings and form of consent order to interplead Policy proceeds (.5); follow-up phone call with trustee regarding same (.4); exchanged correspondence with Elizabeth Bonanni regarding entry of order staying proceedings or, in the alternative, extension of time to respond to motion to dismiss (.2); exchanged correspondence with E. Whiting, counsel for Pruco, regarding interpleader (.2); exchanged memos with N. Gordon regarding adversary case and updates regarding same (.3) | 450.00 | 1.60 | 720.00 |
| 11/01/2023 | NG | Work with G. Hays regarding his evidence and testimony (.7); phone conference with trustee and N. Rowland regarding interim resolution of AP with Leon Jones and recommendations to trustee and why, how to handle and evidence and testimony at the November 8 hearing, importance of Jud's testimony at the hearing as to whether he must disgorge or turn over depending on the evidence and court findings, etc. (.9); follow-up with G. Hays (.6); review and consider objection by UST to application for compensation by debtor counsel (.6); follow-up phone conference with trustee and forensic accountant Hays and N. Rowland regarding presentation of evidence, summary charts, expected cross-examination, trustee and UST objections to compensation of J. Hill, the evidence for turnover motion, etc. (1.5) | 795.00 | 4.30 | 3,418.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NRR | Phone call with L. Jones regarding proposed motion to stay proceedings, defendant's motion to dismiss and options for resolving (.4); conference call with trustee and N. Gordon regarding same (1.5); drafted proposed amended complaint (.7) and forwarded same to trustee and N. Gordon for their consideration and review (.1); drafted revisions to proposed amended complaint (.1) and forwarded final proposed version to L. Jones and T. Robert for their review and consideration, with certain conditions (.1) | 450.00 | 2.90 | 1,305.00 |
| 11/02/2023 | NG | Correspondence with trustee and at her request outline Trustee's own objection to Jud's fee application (.6); correspondence with G. Hays regarding resolving some of the objections concerning Rule 2004 examinations and document productions (.5); review from the court exhibit designation procedures, naming of witnesses, etc. (.2) | 795.00 | 1.30 | 1,033.50 |
| | NRR | Researched standard for motion to dismiss complaint (.8) ; begin drafting response to motion to dismiss complaint (3.4); phone call with L. Jones regarding results of his discussions with T. Roberts and defendant regarding interpleader and proposed motion to stay proceedings (.4); exchanged memos with N. Gordon regarding same (1.0) | 450.00 | 5.60 | 2,520.00 |
| 11/03/2023 | NG | Review and offer edits at trustee's request to objection to compensation of Jud and Response to Motion to Dismiss | 795.00 | 0.90 | 715.50 |
| | NRR | Exchanged correspondence with L. Jones regarding adversary case and trustee's instruction to move forward with prosecution of complaint (.3); continued drafting response to defendant's motion to dismiss (6.1); exchanged memos with N. Gordon and T. Caron regarding same (.6) | 450.00 | 7.00 | 3,150.00 |
| 11/06/2023 | NG | Work with T. Caron on matters that can be withdrawn and others resolved prior to the hearing as well as the exhibits for the remaining items (1.3); memo to P. Bicknell regarding preparation of litigation binder, items, etc. (.2) | 795.00 | 1.50 | 1,192.50 |
| | PB | Prepare binder with table of contents and exhibits in preparation of multiple contested matters on for hearing on November 8, 2023 | 285.00 | 4.20 | 1,197.00 |
| | NG | Review evidence and likely presentations with N. Rowland and review binder for the hearing (.8); telephone conference with T. Caron and N. Rowland to review evidence and arguments for each pending matter, who will be responsible for each, likely counterarguments, etc. (2.2); continue to work on presentation and examinations and cross-examinations (.2.3) | 795.00 | 5.30 | 4,213.50 |
| | NRR | Exchanged correspondence with trustee, N. Gordon, and G. Hays regarding matters calendared for hearing scheduled 11/8 (.7); reviewed trustee's exhibits for submission into evidence at scheduled hearing (.6); conference call with N. Gordon and trustee to discuss evidence, arguments, and counterarguments for matters scheduled for 11/8 hearing (2.2) | 450.00 | 3.50 | 1,575.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 11/07/2023 | NG | Review exhibits from G. Hays and prepare for hearings on several matters tomorrow | 795.00 | 3.60 | 2,862.00 |
| | PB | Telephone call to Greg Hays office regarding status of providing exhibits to 11/8 hearings | 285.00 | 0.30 | 85.50 |
| | NG | Conference with T. Caron to discuss strategy for the hearings (.5); further meeting with T. Caron and G. Hays in preparation for hearings (.6); continued preparation for hearings, including review and study of exhibits and prepare outlines and scripts for witnesses and anticipated witnesses as well as legal arguments (3.7) | 795.00 | 4.80 | 3,816.00 |
| | NRR | Researched authority of personal estate representative to sign/file schedules on corporate debtor's behalf, as well as affect of personal estate representative's disclaimer/lack of personal knowledge on said authority (.9); phone call with trustee to discuss research results and application to trustee's motion to strike (.2); phone call with trustee regarding proposed exhibit log (.1) | 450.00 | 1.20 | 540.00 |
| 11/08/2023 | NG | Continued preparation for multiple matters being heard by the court (3.3); confer with opposing counsel (.5); attend and participate at hearings as lead counsel for the bankruptcy estate (5.9); follow-up meeting with T. Caron and G. Hays (.7) | 795.00 | 10.40 | 8,268.00 |
| 11/09/2023 | NG | Return travel to Atlanta (did not bill for the much longer trip to Savannah) (3.2); correspondence from and telephone conference with Chris Steinmetz (.4) | 795.00 | 3.60 | 2,862.00 |
| | NRR | Researched authorities to determine how equitable interest in life insurance proceeds is established under Georgia bankruptcy law, analyzed multiple cases (1.1); exchanged lengthy memos with N. Gordon regarding application and dissimilarities of various case laws to adversary case against Judith Hirsch (.8) | 450.00 | 1.90 | 855.00 |
| 11/10/2023 | NRR | Continued research regarding determination of equitable interest in life insurance proceeds under Georgia law, as well as elements to establish inter vivos gift (.4); exchanged additional memos with N. Gordon regarding same (.4) | 450.00 | 0.80 | 360.00 |
| 11/13/2023 | NG | Review response from Matt Mills regarding trustee can herself file a motion to designate or it being included already (.1); review all applicable rules governing same (.4); correspondence to trustee regarding same (.2) | 795.00 | 0.70 | 556.50 |
| | NRR | Reviewed defendant's response in opposition to plaintiff's motion to stay proceedings (.2); memo to N. Gordon regarding same (.3) | 450.00 | 0.50 | 225.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 11/14/2023 | NG | Review and consider correspondence (x2) from T. Caron regarding objection to compensation of debtor counsel and possible resolution, UST position etc, as well as responding to motion to strike and motion for turnover, and draft reply correspondence to both. | 795.00 | 0.50 | 397.50 |
| 11/15/2023 | NG | Correspondence (x4) with T. Caron regarding possible settlement of objection to fees of debtor counsel (.3); correspondence and proposed consent order on Rule 2004 exam objections received from T. Caron and review and provide initial comments (.5) | 795.00 | 0.80 | 636.00 |
| | NG | Review, consider and analyze authorities on equitable interests and correspond with T. Caron regarding my analysis and whether complaint should be amended (.9); review and consider correspondence from T. Caron regarding probate issues and respond thereto (.3) | 795.00 | 1.20 | 954.00 |
| | NRR | Exchanged correspondence with trustee and N. Gordon regarding requisite steps under Georgia state law to establish interest in life insurance policy, right of debtor to $5M policy under Georgia law/bankruptcy section 541, and additional allegations to be added to amended complaint (.7); liaised with E. Whiting, Pruco counsel, regarding filing of interpleader and defendant's lack of consent (.1); review and consider memo from N. Gordon regarding recent 11th circuit bankruptcy cases involving equitable interests (.3); conference call with trustee and N. Gordon regarding potential for settlement in adversary case, status of forensic analysis as to source of funds used to purchase multiple life insurance policies on life of Gregory Hirsch, and results of U.S. Trustee's analysis and valuation of Tybee Island residence and allegations for inclusion in amended complaint (1.7) | 450.00 | 2.80 | 1,260.00 |
| | NG | Consider further case law on equitable interests (.8); call from and discussion with Leon Jones regarding numerous and global issues (.9); draft memo to N. Rowland (.3); telephone conference with T. Caron and N. Rowland regarding global settlement discussions and subsidiary issues (1.1); confer with T.Caron regarding Tybee Island purchase and series of transfers (.3) | 795.00 | 3.40 | 2,703.00 |
| 11/16/2023 | NRR | Correspondence with trustee, N. Gordon, and G. Hays regarding outstanding list of 2004 examinations to be conducted | 450.00 | 0.20 | 90.00 |
| 11/17/2023 | NG | Call from and discussion with David Bury regarding various legal issues of concern to his client | 795.00 | 0.50 | 397.50 |
| | NG | Telephone conference with T. Caron, forensic experts, and N. Rowland regarding division of labor, how to handle interest in Greg Hirsch probate estate, strategy regarding tracing of funds and gaps needed to be filled, depositions and rule 2004 exams and document productions, order of seeking evidence, document production from Judy Hirsch, etc. | 795.00 | 1.40 | 1,113.00 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 11/20/2023 | NG | Work on opposition to motion to dismiss and communicate with T. Caron regarding post-hearing brief for the court and timing of same | 795.00 | 1.90 | 1,510.50 |
| | NG | Review and offer comments (x2) to trustee regarding Synergy settlement proposal | 795.00 | 0.20 | 159.00 |
| | NRR | Exchanged correspondence with Ed Whiting, Pruco counsel, regarding draft proposed consent order to get insurance proceeds deposited into court via pending adversary proceeding rather than separately commenced interpleader action and reviewed attachment to same (.4); reviewed and considered correspondence from T. Caron to L. Jones regarding proposed subpoena to Judith Hirsch for bank statements reflecting MLG money transfers (.2); research regarding fraudulent transfer and application of sections 548, 550 in preparation for drafting amended complaint (.8); begin drafting amended complaint (.7) | 450.00 | 2.80 | 1,260.00 |
| 11/21/2023 | NG | Review and consider settlement proposal from Synergy with back up documentation from G. Hays (.5); draft series of emails to T. Caron regarding clarification and specifications required for consideration of the proposal (.2); telephone conference with T. Caron regarding our analysis, concerns and possible counter offers, and outline terms of same (.9); review and respond to draft of written counter-proposal (.2) | 795.00 | 1.80 | 1,431.00 |
| | NG | Work on amending the complaint against Mrs. Hirsch (.6); telephone conference with T. Caron regarding same and whether fraudulent transfer counts should be included and Pruco added as a defendant and the upcoming hearing (1.1); correspondence regarding same to T. Caron and N. Rowland (.2); further discuss with T. Caron the Synergy counter-proposal (.2) | 795.00 | 2.10 | 1,669.50 |
| | NRR | Liaised with N. Gordon and T. Caron regarding amendments to complaint (.4); reviewed correspondence from E. Bonanni regarding deadline to provide list of exhibits and witnesses to be presented at hearing on motion to dismiss (.1) | 450.00 | 0.50 | 225.00 |
| 11/22/2023 | NG | Review correspondence and draft of counter-offer proposal from T. Caron regarding Synergy and respond with revisions thereto | 795.00 | 0.40 | 318.00 |
| | NG | Review motion to dismiss, response and reply and work with N. Rowland on drafting an amended complaint inclusive of necessary legal research | 795.00 | 3.20 | 2,544.00 |
| | NRR | Work with N. Gordon on drafting amended complaint (2.6); correspondence with trustee regarding same (.2) | 450.00 | 2.80 | 1,260.00 |
| 11/23/2023 | NRR | Finalized edits to amended complaint (.5); researched Rule 15 and standard for motion to amend (1.8); drafted motion for leave to amend complaint (3.1); forwarded same to N. Gordon and T. Caron (.1) | 450.00 | 5.50 | 2,475.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 11/24/2023 | NG | Review draft of motion for leave to amend complaint and comment thereon | 795.00 | 0.60 | 477.00 |
| 11/27/2023 | PB | Prepare proposed Order on Motion for Leave to File Plaintiff's First Amended Complaint | 285.00 | 0.70 | 199.50 |
| | PB | Prepare certificate of service of proposed order and file proposed order and certificate of service and upload e-order | 285.00 | 0.50 | 142.50 |
| 11/28/2023 | NG | At trustee's request, review documents and analysis related to prospective Synergy settlement and advise on which entities to seek a guaranty from and which should not be sought | 795.00 | 0.70 | 556.50 |
| | NG | Review all motions and briefs, case law and consider arguments and counter-arguments for hearings on motion to dismiss, motion to stay, and possibly motion to amend | 795.00 | 5.90 | 4,690.50 |
| | NRR | Exchanged correspondence with Ed Whiting, Pruco counsel, regarding timeline for filing interpleader action and availability of local counsel to file (.2); updated N. Gordon regarding same (.2); exchanged memos with N. Gordon regarding legal standard for motion to dismiss adversary complaint and presentation of arguments opposing same at hearing on 11/30 (.8); further exchanged memos with N. Gordon regarding case law and arguments supporting motion to stay proceedings (.4) | 450.00 | 1.60 | 720.00 |
| 11/29/2023 | NG | Prepare for hearings in Savannah including Motion to Dismiss, Response and Reply and cases cited therein, Motion to Stay and Response | 795.00 | 4.60 | 3,657.00 |
| 11/30/2023 | NG | Further preparation for hearings (1.1); to Court and attend hearings (2.4); confer with opposing counsel (.2); return to Atlanta (did not bill incoming trip)(3.1); preliminary report to trustee (.3) | 795.00 | 7.10 | 5,644.50 |
| | NG | Review and consider very lengthy report and analysis from Haley Glisson | 795.00 | 0.40 | 318.00 |
| 12/04/2023 | NG | Correspondence with T. Caron and G. Hays regarding Synergy response to trustee's counteroffer | 795.00 | 0.20 | 159.00 |
| 12/05/2023 | NG | Conference call with Tiffany Caron regarding hearing on November 30, next items to pursue, discovery outstanding, settlement discussions with Synergy, whether a Rule 1007 motion is necessary, and likely court rulings | 795.00 | 1.10 | 874.50 |
| 12/07/2023 | NRR | Exchanged correspondence with E. Whiting, Pruco attorney, regarding identity of successor member to MLG following death of Greg Hirsch | 450.00 | 0.20 | 90.00 |
| 12/11/2023 | NRR | Reviewed Defendant's response in opposition to Trustee's motion to amend | 450.00 | 0.20 | 90.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 12/12/2023 | NG | Review and consider response in opposition ot motion for leave to amend | 795.00 | 0.90 | 715.50 |
| 12/14/2023 | NG | Correspondence from T. Caron on how to respond to certain creditor/investor inquiries | 795.00 | 0.20 | 159.00 |
| 12/15/2023 | NG | Review more thoroughly defendant's response and consider and begin to research Butner v. US and georgia's civil rico statutes for money laundering, etc.(1.90); correspondence to T. Carron regarding foregoing (.4) | 795.00 | 2.30 | 1,828.50 |
| | NRR | Exchanged memos with N. Gordon regarding applicability of Georgia civil and criminal RICO statute to life insurance policies purchased by Debtor/Greg Hirsch | 450.00 | 0.20 | 90.00 |
| 12/16/2023 | NG | Research law to support a response to the objection to the motion for leave to amend and draft memo to T. Carron setting forth applicable law, applicable facts and legal arguments that could be made | 795.00 | 5.20 | 4,134.00 |
| | NRR | Exchanged correspondence with N. Gordon and trustee, T. Caron, regarding timing and substance of reply to Defendant's response in opposition to motion to amend | 450.00 | 0.20 | 90.00 |
| 12/17/2023 | NG | Correspondence with N. Rowland and T. Carron regarding response to objection | 795.00 | 0.30 | 238.50 |
| | NRR | Reviewed correspondence from N. Gordon regarding arguments to be considered on reply to Defendant's response in opposition to motion to amend | 450.00 | 0.20 | 90.00 |
| 12/18/2023 | NG | In preparation for conference call with T. Carron, review motion for leave to amend and amended complaint and objection by Judy Hirsch (1.1); draft memo to J. Rezac regarding legal issues and his assistance (.4); conference call with T.Carron, N. Rowland and J. Rezac regarding foregoing issues and timing of trustee's reply (1.3); review and consider counteroffer from Synergy, etc, (.5); further discuss same and any counter thereto with T. Carron (.2); draft lengthy memo to D. Weigel regarding detailed background and legal issues to be further researched in connection with proposed amended complaint and objection thereto (.7) | 795.00 | 4.20 | 3,339.00 |
| | JKR | Confer with Neil Gordon regarding status of litigation and motion to file amended complaint (.30); conference call regarding same; brief legal research regarding same (.70). | 575.00 | 1.00 | 575.00 |
| | NRR | Conference call with N. Gordon, J. Rezac and trustee, T. Caron, regarding timing and substance of proposed reply to Defendant's response in opposition to motion to amend (.3); exchanged memos with N. Gordon regarding settlement communications from attorney John Christy for Synergy Homes/Synergy Designer Homes (.1) | 450.00 | 0.40 | 180.00 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | DW | Research federal and state law issues in connection with beneficiary funds as an "equitable" interest of the estate (3.6); correspondence with N. Gordon regarding same (.2); review/analyze correspondence in connection with same (.3) | 350.00 | 4.10 | 1,435.00 |
| 12/19/2023 | NG | Review, consider and comment on proposed Synergy settlement and counteroffer | 795.00 | 0.20 | 159.00 |
| 12/20/2023 | NG | Review, consider, and analyze the draft of a proposed Rule 9019 motion with Synergy and comment thereon, including the need for more detail in satisfaction of the Justice Oaks factors and to first have a settlement agreement signed by the settling parties, plus the spouse in order to commit her to pledging the home titled in just her name, the pledge documents, etc. (.9); exchange correspondence with T. Carron regarding additional documents needed (.2); memo to P. Bicknell regarding same (.2) | 795.00 | 1.30 | 1,033.50 |
| | NG | Review and consider case law regarding equitable interests in a life insurance policy prevailing over legal interests | 795.00 | 0.80 | 636.00 |
| | NRR | Reviewed correspondence from Greg Hays regarding fulton county state court lawsuit filed by Michael Dobbs and multiple other investors against Truist Bank and Dean Flake alleging defendants' knowledge of ponzi scheme created by Greg Hirsch (.1); reviewed docket related to same (.1) | 450.00 | 0.20 | 90.00 |
| 12/21/2023 | NG | Review revised Synergy settlement motion draft and prepare correspondence to T. Carron regarding additional language needed | 795.00 | 0.40 | 318.00 |
| | NG | Review and consider legal research from Dan Weigel and forward to Tiffany Caron with my comments (.8); telephone conference with Tiffany Caron regarding to discuss my proposed modifications to Synergy settlement motion and Reply to Response in opposition to motion for leave to amend and further discuss status of Rule 2004 motions and actual exams, upcoming hearing to approve settlement of Jud's fees, etc. (1.2) | 795.00 | 2.00 | 1,590.00 |
| | NRR | Exchanged correspondence with trustee, T. Caron, regarding substance of reply to Defendant's response in opposition to motion to amend (.2) exchanged memos with N. Gordon regarding results of research compiled by Dan Weigel and issue of whether designation as third-party beneficiary is sufficient to create equitable interest in life insurance policy (.5) | 450.00 | 0.70 | 315.00 |
| | DW | Research federal and state law issues in connection with beneficiary funds as an "equitable" interest of the estate, including related issues implicated, with attention to breach of contract claim by estate (2.6); draft and send e-mail summarizing review/analysis/conclusions regarding same, with attention to next steps (.5) | 350.00 | 3.10 | 1,085.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 12/22/2023 | NG | Continued work on Reply to Response in opposition to motion for leave to amend the complaint and make further proposed revisions and correspond with T. Caron regarding same | 795.00 | 0.80 | 636.00 |
| | NRR | Reviewed revised reply to Defendant's response in opposition to motion to amend (.3); exchanged memos with N. Gordon regarding proposed edits to same (.2) | 450.00 | 0.50 | 225.00 |
| 12/26/2023 | PB | Make final revisions to reply to response in opposition to Trustee's motion for leave to file amended complaint and electronically file same | 285.00 | 0.50 | 142.50 |
| | NG | Memo to P. Bicknell to file Reply after making final revisions | 795.00 | 0.20 | 159.00 |
| 12/27/2023 | NRR | Phone call with Ellen Nash, lawyer for Pruco, regarding service of interpleader (.2); exchanged correspondence with trustee regarding same (.2) | 450.00 | 0.40 | 180.00 |
| 12/28/2023 | NG | Initial review of Pruco interpleader lawsuit and exhibits attached thereto | 795.00 | 0.70 | 556.50 |
| | NRR | Reviewed interpleader suit and exhibits attached thereto filed by Pruco Life Insurance Company against Judith Hirsch, et al | 450.00 | 0.40 | 180.00 |
| 01/02/2024 | NG | Review and consider bank statement audit results showing millions of funds shifted away from MLG to personal Hirsch interests (.8); review and consider John Christy response to settlement proposal (.3) | 795.00 | 1.10 | 874.50 |
| 01/03/2024 | NG | Prepare for and participate in conference call requested by T. Caron to review all pending matters and discuss strategy with respect to those and future actions to pursue | 795.00 | 2.10 | 1,669.50 |
| | JKR | Conference call with T. Caron, Neil Gordon, and Greg Hayes, regarding status and strategy for trustee's claims. | 575.00 | 2.10 | 1,207.50 |
| 01/05/2024 | NG | Review and consider proposed Rule 9019 motion and settlement agreement (.6) draft correspondence to Tiffany Caron with suggested additional provisions that are needed (.5); review issues with Low Country and consider exposure from a trustee's it files bankruptcy and what defenses MLG estate would have (.7); draft correspondence to T. Carron and G. Hays regarding foregoing (.5) | 795.00 | 2.30 | 1,828.50 |
| | NG | Follow up correspondence with T. Caron regarding Synergy settlement and additional language for the settlement agreement | 795.00 | 0.40 | 318.00 |
| | NG | Call from and discussion with T. Caron regarding issues raised by accounting of the proceeds from liquidation of life insurance policies and advise on the law that would pertain to trying to recover such proceeds from the transferees of G. Hirsch | 795.00 | 0.60 | 477.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Review and consider additional transaction history between Synergy and LCD received from Greg and Scott (forensic team) | 795.00 | 0.60 | 477.00 |
| 01/08/2024 | NG | Review similar case that was settled in US District Court (Northern District of Georgia) where insurance policy proceeds were subject to an interpleader action, and correspond with Greg Hays regarding same | 795.00 | 0.90 | 715.50 |
| 01/09/2024 | NG | Review further draft of proposed Synergy settlement agreement/9019 motion and draft further revisions and comments and correspond with T. Caron regarding same (.6); review and comment on further drafts of the agreement (.2); further correspondence with T. Caron and J. Rezac (.2) | 795.00 | 1.00 | 795.00 |
| 01/10/2024 | NG | Correspondence with G, Hays regarding issues with Synergy settlement and LCD | 795.00 | 0.30 | 238.50 |
| 01/11/2024 | NG | Zoom meeting with T. Caron and G. Hays and co-counsel regarding pending matters, best way to proceed with each matter, assignment of tasks, strategies for pursuing avoidance litigation, potential defenses, strategies, etc. | 795.00 | 2.70 | 2,146.50 |
| | NG | Review and comment on revisions proposed by John Christy to the Synergy settlement | 795.00 | 0.40 | 318.00 |
| | NG | Review pleadings and orders in Siskey Ponzi case very similar to subject case with numerous insurance policies purchased with funds stolen from the investors but owned by Siskey individually with family members as beneficiaries, etc. | 795.00 | 1.20 | 954.00 |
| | JKR | Conference call with T. Caron and legal team regarding pending litigation, interpleader action, and trustee claims. | 575.00 | 2.70 | 1,552.50 |
| 01/15/2024 | NG | Review drafts of discovery motions, motion for protective order and proposed order from James Banter, and correspondence from T. Caron (.8); telephone conference call from T. Caron to discuss the foregoing, discovery issues, document productions, deposition of Judy Hirsch, forensic documentation still needed, probate court issues and problems, etc. (1.3) | 795.00 | 2.10 | 1,669.50 |
| 01/16/2024 | NG | Work on response to threatened objection to Synergy settlement by the Jacobowitz Family and draft correspondence to T. Caron with same | 795.00 | 0.70 | 556.50 |
| | NRR | Drafted correspondence to Ellen Ash, Pruco attorney, with request for extension of time to file answer to interpleader | 450.00 | 0.10 | 45.00 |
| 01/17/2024 | NRR | Exchanged correspondence with Ellen Ash, Pruco attorney, regarding extension of time to file answer to interpleader(.3); exchanged memos with J. Rezac and N. Gordon regarding same (.1) | 450.00 | 0.40 | 180.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 01/22/2024 | NG | Review, consider and respond to issues concerning claw-backs and how to report to the IRS | 795.00 | 0.60 | 477.00 |
| 01/23/2024 | NG | Correspondence and phone conference with T. Caron regarding mediation and dismissal of lawsuit, expected objection to motion for Rule 2004 exam of Judy Hirsch, etc. (.6); research dismissal of lawsuit (.3); memo to J. Rezac regarding language in Rule 41 and to verify that a motion to dismiss will not prevent a notice of dismissal without prejudice (.2); review case law from J. Rezac (.5); further phone conference with T. Caron regarding notice of dismissal, and same negating the anticipated objection to Rule 2004 exam of Judy Hirsch, extension to file answer in Pruco interpleader lawsuit, dismissal mediation considerations and limitations on Judge Diehl to mediate out of district without further authority (.8) | 795.00 | 2.40 | 1,908.00 |
| | JKR | Supplement N. Gordon research on procedures under federal rules and local rules for dismissal of adversary proceedings (.60); correspondence with plaintiff's counsel in interpleader case regarding extension of time to file answer (.20); confer with T. Caron and Neil Gordon regarding status and next steps (.20). | 575.00 | 1.00 | 575.00 |
| 01/24/2024 | NG | Exchange correspondence with T. Caron regarding AP dismissal and what to include in 1099s to lessen problems with later anticipated APs against certain investors | 795.00 | 0.30 | 238.50 |
| | JKR | Legal research regarding interpleader actions (1.0); confer with T. Caron regarding litigation strategy in both pending adversary proceedings (.20); prepare motion for extension of time to file answer in interpleader action (1.0); prepare dismissal without prejudice to file in trustee's adversary proceeding against Ms. Hirsch (.30). | 575.00 | 2.50 | 1,437.50 |
| 01/25/2024 | NRR | Exchanged memos with J. Rezac, T. Caron and N. Gordon regarding dismissal of adversary proceeding | 450.00 | 0.30 | 135.00 |
| | NG | Review the motion for protective order and correspond with T. Caron regarding same and impact on the dismissal notice | 795.00 | 0.50 | 397.50 |
| | JKR | Attention to dismissal without prejudice of adversary proceeding and filing/service of same (.30); telephone calls and correspondence to Pruco counsel regarding extension of time to file answer (.30); review Ms. Hirsch's objection to Rule 2004 motion (.20). | 575.00 | 0.80 | 460.00 |
| 01/26/2024 | JKR | Correspondence with Pruco's attorney regarding adversary proceeding and extension of answer deadline (.20); revise motion for extension and attention to filing and service of same (.40); legal research regarding Rule 2004 examinations and objections to same (.30). | 575.00 | 0.90 | 517.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 01/29/2024 | NG | Review Flake answer to lawsuit | 795.00 | 0.40 | 318.00 |
| | JKR | **(NO CHARGE)** Prepare amended motion and order extending time to file answer to Pruco complaint and confer with clerk of court regarding same (.50). | | 0.50 | [no charge] |
| 01/30/2024 | JKR | Review proposed Consent Stipulated Protective Order and revisions to same (.80); follow-up with T. Caron Trustee regarding same (.20). | 575.00 | 1.00 | 575.00 |
| 01/31/2024 | NG | Correspondence with T. Caron regarding mediation with J. Hirsch by Judge Diehl; review additional correspondence regarding protective order efforts | 795.00 | 0.20 | 159.00 |
| 02/05/2024 | NG | Correspondence with T. Caron regarding upcoming hearings and staffing of same | 795.00 | 0.40 | 318.00 |
| | NG | Review and consider revised and amended moton for protective order (.3); exchange correspondence with T. Caron regarding same (.2); review case summaries pulled from research by T. Caron and comment thereon (.2) | 795.00 | 0.70 | 556.50 |
| 02/07/2024 | JKR | Review Hirsch amended motion to vacate Rule 2004 order (.2); review Hirsch answer in Pruco adversary proceeding (.2); review Pruco complaint (.1); legal research regarding issues in interpleader actions (.3). | 575.00 | 0.80 | 460.00 |
| 02/08/2024 | JKR | Prepare answer/crossclaim in Pruco adversary proceeding (1.10); legal research regarding causes of action (1.40). | 575.00 | 2.50 | 1,437.50 |
| 02/09/2024 | NG | Review previous pleadings related to counts being asserted by the estate (1.1); review, consider, and comment on proposed Answer to interpleader complaint and Cross-claim (1.2); correspondence with T. Caron regarding status of mediation (.1); continued work to finalize Answer/Cross-Claim (.7) | 795.00 | 3.10 | 2,464.50 |
| | JKR | Further preparation of answer/crossclaim in Pemco adversary proceeding (1.6 ); multiple communications/confer with Ms.Caron and Mr. Gordon regarding same (.90); attention to filing and service of same (.30). | 575.00 | 2.80 | 1,610.00 |
| 02/12/2024 | NG | Review, consider, and comment to T. Caron on proposed motion and consent order on protective order with Greg Hirsch Estate(1.3); correspondence with opposing counsel regarding same (.2); correspondence with T. Caron regarding same and review her correspondence regarding same to opposing counsel (.2) | 795.00 | 1.70 | 1,351.50 |
| 02/13/2024 | JKR | Attention to scheduling of hearings on Rule 2004 motion/objection (.50). | 575.00 | 0.50 | 287.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 02/14/2024 | NG | Review request for continuance and correspond with T. Caron regarding same and rescheduling of other hearing matters for March 6 and which matters I will be responsible to handle (.4); telephone conference with T. Caron regarding hearings on March 6th and suggested strategy, advise on testimony that should be provided for the Synergy settlement motion, need to file a response to the objection to Rule 2004 exam of Judy Hirsch notwithstanding dismissal of the AP and involve John Rezac in that part of the discussion and supporting case law, how to structure a myriad of Rule 2004 exams of others and what documents to seek and questions that need to be answered, whether investors will need to be deposed, etc. (2.1) | 795.00 | 2.50 | 1,987.50 |
| | NG | Review and consider follow-up correspondence from T. Caron regarding developments concerning mediation, the objection and protective order and hearing as the Judy Hirsch 2004, and when it would be taken (suddenly with little or no preparation time and numerous scheduling conflicts), and draft lengthy response (.5); draft further correspondence to T.Caron (.2) | 795.00 | 0.70 | 556.50 |
| | JKR | Conference call with Tiffany Caron and Neil Gordon regarding Pruco a.p., Rule 2004 motions, and related discovery and litigation matters (1.0); review motion to reschedule 9019 motion hearing and hearing notices for pending matters in main and A.P. cases (.30). | 575.00 | 1.30 | 747.50 |
| 02/15/2024 | NG | Follow-up correspondence with T. Caron regarding further developments this morning, and review correspondence from Leon Jones in connection therewith (.3); draft reply correspondence regarding whether Response brief still needed or consent continuance, Rule 2004 dates for Judy Hirsch, etc. (.2) | 795.00 | 0.50 | 397.50 |
| | JKR | Attention to Rule 2004 examinations/objections (.20); legal research regarding same (.20). | 575.00 | 0.40 | 230.00 |
| | JKR | Attention to correspondence from Hirsch attorney regarding depositions and confer with Tiffany Caron regarding same (.30). | 575.00 | 0.30 | 172.50 |
| 02/16/2024 | NG | Correspondence from T. Caron regarding proposed deposition and mediation dates and respond thereto (.2); telephone conference with T. Caron regarding upcoming 2004 exams and sub-issues related thereto and matters on for hearing on March 6th and strategy for addressing same (1.2) | 795.00 | 1.40 | 1,113.00 |
| 02/19/2024 | NG | Correspondence with Tiffany Caron regarding issues with probate and Rule 2004 of Judy Hirsch and unacceptable restrictions and unilateral production of document position that opposing counsel is taking | 795.00 | 0.70 | 556.50 |

| Date | Initials | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|
| | NG | At trustees' request discuss case with Soneet Kapila regarding forensic work needed that is not getting done (.7); memo to trustee regarding same (.1) | 795.00 | 0.80 | 636.00 |
| | NG | Continuing correspondence with T. Caron regarding problem issues regarding J. Hirsch's counsel having marked all documents "confidential" and how to address | 795.00 | 0.40 | 318.00 |
| 02/20/2024 | NG | Review and consider correspondence from T. Caron regarding numerous matters including mediation and the need to file a motion requesting it, the parties to attend the deposition of Judy Hirsch, the necessity of an official court reporter, the dispute over where the deposition should be held, etc. | 795.00 | 0.70 | 556.50 |
| 02/23/2024 | JKR | Confirm deadlines in Pruco adversary proceeding (.20); attention to scheduling of Rule 26(f) conference (.20). | 575.00 | 0.40 | 230.00 |
| 02/26/2024 | JKR | Correspondence with opposing counsel to schedule/reschedule Rule 26(f) conference (.30); correspondence with Tiffany Carron regarding Pruco adversary proceeding (.20). | 575.00 | 0.50 | 287.50 |
| 02/27/2024 | NRR | Exchanged correspondence with Ellen Ash, Pruco attorney, regarding Rule 26(f) status conference | 450.00 | 0.20 | 90.00 |
| | JKR | Prepare for and participate in Rule 26(f) conference (.80). | 575.00 | 0.80 | 460.00 |
| 02/29/2024 | NG | Telephone conference call with T. Caron regarding upcoming hearings on various matters and how to prepare for and approach each, including motion for turnover, motion to strike, motion to settle, status conference on AP, and objection to Rule 2004 exam of J. Hirsch, as well as upcoming mediation, deposition of J. Hirsch, status of application for compensation of debtor counsel, etc. (1.5); locate motion and order used by N. Gordon in other cases for mediation by Judge Diehl and forward to T. Caron with correspondence regarding them (.4) | 795.00 | 1.90 | 1,510.50 |
| 03/01/2024 | NG | Correspondence with T. Caron and consideration of numerous other depositions that need to be taken | 795.00 | 0.50 | 397.50 |
| | NG | Review and comment on proposed consent order to resolve objection to Rule 2004 examination of Judith Hirsch | 795.00 | 0.40 | 318.00 |
| | NG | Preparation for hearings on turnover motion, motion to strike, Rule 9019 motion, etc. including research on crime-fraud exception and any other exception to privilege | 795.00 | 4.70 | 3,736.50 |
| 03/02/2024 | JKR | Review Hirsch motion to dismiss crossclaim in Pruco A.P. (.30); attention to response/deadline/issues (.20). | 575.00 | 0.50 | 287.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 03/04/2024 | NG | Review and analyze motion and brief by Judy Hirsch to dismiss cross-claim (1.1); draft correspondence to T. Caron regarding areas of documentation in which further review and analysis is required in order to buttress the position of the Estate (.8) | 795.00 | 1.90 | 1,510.50 |
| | NG | Review and consider responses from T. Caron regarding motion to strike, upcoming depositions, mediation, etc. | 795.00 | 0.40 | 318.00 |
| | NG | Re-review Pruco policy and lawsuit between Coventry and the Hirsch's (.6); review case law supporting breach of fiduciary duty as equivalent to fraud under crime/fraud exception and consider application to motion for turnover which is opposed based on privilege arguments (1.3) | 795.00 | 1.90 | 1,510.50 |
| | NG | Review transfers targeted by trustee as being from funds created by early liquidation of life insurance policies that were then deposited in the Greg Hirsch personal bank account, and problems with asserting same (.4); review other transfers that were directly from the MLG account to reduce principal and different analysis to be applied (.4); correspondence with trustee regarding same (.2) | 795.00 | 1.00 | 795.00 |
| 03/05/2024 | NG | Preparation for numerous hearings in-person in Savannah and prepare cross-examination of Judy Hirsch | 795.00 | 3.70 | 2,941.50 |
| | NG | Consider what exhibits are needed for the hearings and correspond with T. Caron regarding same | 795.00 | 0.50 | 397.50 |
| | NG | Telephone conference with T. Caron starting at 7:04 PM advising that Judy Hirsch refuses to appear and testify and they will consent to turnover but not that no attorney client relationship existed, advise on unacceptability of such a position, the strategy that was to be employed that can't be implemented without her presence, whether to withdraw consent to the protective order motion, etc. | 795.00 | 0.90 | 715.50 |
| 03/06/2024 | NG | Travel to Savannah and courthouse (3.6--no charge for return travel); confer with T. Caron, John Christy, and opposing counsel regarding various pending matters (.8); attend hearings (3.7); confer with T. Caron thereafter (1.1) | 795.00 | 9.20 | 7,314.00 |
| 03/07/2024 | NG | Correspondence with T. Caron, G. Hays, and J. Rezac (.4); memo to J. Rezac regarding breach of fiduciary duty claim and how it impacts the fiduciary duty under the power of attorney, as well as the fiduciary duty to MLG and its creditors (.6); correspondence to T. Caron regarding need to depose Jud Hill (.2); correspondence to T. Caron regarding breach of fiduciary duty issues and timing of raising same (.3) | 795.00 | 1.50 | 1,192.50 |
| | NG | Draft lengthy correspondence to G. Hays regarding documentation and evidence needed for the Judy Hirsch deposition, what we will be trying to establish, and other reasons why it would be needed, the need to prove a Ponzi scheme was being operated, etc. | 795.00 | 0.80 | 636.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | JKR | Correspondence with Pruco attorney regarding consent order (.20); review multiple versions of same and follow up with Pruco attorney and Hirsch attorney (.50); confer with Tiffany Caron and Neil Gordan regarding status and strategy (.40). | 575.00 | 1.10 | 632.50 |
| 03/08/2024 | NG | Review comments from J. Rezac and T. Caron regarding suggested strategy | 795.00 | 0.20 | 159.00 |
| | NG | Review and consider correspondence from T. Caron with draft of a Rule 2004 for Jud Hill and a proposed order and discuss same and scope of examination (.8); draft correspondence to J. Hill regarding same and scope of inquiry and to see if the date, time, and place are acceptable (.3); review his response and further reply (.2) | 795.00 | 1.30 | 1,033.50 |
| 03/11/2024 | NG | Review correspondence between trustee and Soneet Kapila (.1); telephone conference call with T. Caron regarding the evidence needed to establish the actual fraud/Ponzi scheme, her review of the text messages of Greg Hirsch and reading many of them to me, getting the forensic support to properly utilize such evidence for the Judy Hirsch deposition and later mediation, etc. (1.1) | 795.00 | 1.20 | 954.00 |
| 03/12/2024 | JKR | Correspondence with Tiffany Caron regarding motion to dismiss (.20). | 575.00 | 0.20 | 115.00 |
| 03/13/2024 | NG | Review correspondence from Kapila and from T. Caron and G. Hays regarding transition and evidence needed for use at deposition (.4); telephone conference call with S. Kapila regarding foregoing (.3) | 795.00 | 0.70 | 556.50 |
| 03/14/2024 | NG | Zoom meeting with T. Caron and J. Rezac to assess thousands of text messages and emails that have been turned over and how to review them and other documents in time to file the response to the Motion to Dismiss prior to the deadline, what some initial such data has indicated, the support for making a case of actual fraud, breach of fiduciary duty, civil (and criminal) RICO violations, how to factor all the foregoing into questions at the deposition of Judy Hirsch and Jud Hill, the impact on the Estate's position at mediation, etc | 795.00 | 2.20 | 1,749.00 |
| | JKR | Conference call with Tiffany Caron regarding status of A.P., motion to dismiss and legal issues, discovery issues, mediation prep (2.20). | 575.00 | 2.20 | 1,265.00 |
| 03/16/2024 | NG | In preparation for taking deposition of J. Hirsch, review hundreds of emails produced by Jud Hill, data analysis from G. Hays, and sample flow charts for tracing | 795.00 | 4.30 | 3,418.50 |
| | NG | Review investor lawsuits against Truist (alleging it was a Ponzi scheme) and the Truist motion to dismiss | 795.00 | 0.70 | 556.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 03/18/2024 | NG | Telephone conference with T. Caron regarding documentation and evidence regarding MLG effectively funding the purchase of the Tybee Island property through a complicated real estate swap | 795.00 | 0.80 | 636.00 |
| 03/19/2024 | NG | Continue to review emails and documents stored in Relativity including many very critical to the trustee's position (1.2); correspondence and discussion with T. Caron regarding same (.4); correspondence to and from G. Hays regarding such documents (.2); correspondence to and from S. Kapila regarding same (.2); correspondence and discussion with T. Caron regarding drafting motion and proposed order for payment of the ongoing storage expenses and content thereof (.2) | 795.00 | 2.20 | 1,749.00 |
| 03/21/2024 | NG | Telephone conference with Soneet Kapila regarding actual fraud evidence and whether it amounts to a Ponzi scheme or investor fraud but not a Ponzi scheme (,4); telephone conference with T. Caron regarding evidence and documentation and how to address in deposition of J. Hirsch as well as the mediation (.7); discussion with Judge Diehl on progress of 11th circuit approval and likelihood of being able to retain the presently scheduled date (.2) | 795.00 | 1.30 | 1,033.50 |
| 03/25/2024 | NG | Correspondence with T. Caron (.1) regarding and telephone conference call with T. Caron and California counsel to the Slatus family of investors (1.0) | 795.00 | 1.10 | 874.50 |
| | JKR | Legal research regarding Hirsch motion to dismiss (1.0). | 575.00 | 1.00 | 575.00 |
| 03/26/2024 | NG | Work on Response to motion to dismiss (1.4); review data from T. Caron and Soneet for use in examination of J. Hirsch (1.3) | 795.00 | 2.70 | 2,146.50 |
| | JKR | Legal research and prepare response to motion to dismiss (3.70); multiple discussions with Caron and Gordon regarding same (6.40). | 575.00 | 10.10 | 5,807.50 |
| 03/27/2024 | NG | Continued work on Response brief (.9) and preparation for examination of J. Hirsch (1.1) | 795.00 | 2.00 | 1,590.00 |
| | JKR | Revise response to motion to dismiss (2.30); confer with Tiffany Caron and Neil Gordon regarding legal arguments and clarification of fact issues (.60); additional legal research (.30). | 575.00 | 3.20 | 1,840.00 |
| 03/28/2024 | NG | Begin outlining general areas of concentration and questioning at the deposition | 795.00 | 1.10 | 874.50 |
| 03/29/2024 | NG | Review documents for preparation of J. HIrsch and J. Hill depositions (1.6); telephone conference with T. Caron regarding same and areas and specifics of issues to cover, continuing lack of documentation creating challenges, etc. (2.1) | 795.00 | 3.70 | 2,941.50 |
| 03/30/2024 | NG | Work on outline of questions for both depositions | 795.00 | 1.80 | 1,431.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 03/31/2024 | NG | Telephone conference with T. Caron in preparation for Rule 2004 exams (.5); preparation for examinations, including review of text and email data, credit card records, etc. (2.4); begin preparation of script of questions to ask (4.9) | 795.00 | 7.80 | 6,201.00 |
| 04/01/2024 | NG | Travel to Savannah (3.9: note return travel not charged); meet with T. Caron and continue preparations for deposition of J. Hill and J. Hirsch, including conference calls with forensic accountant and later Ms. Glisson (7.3), | 795.00 | 11.20 | 8,904.00 |
| 04/02/2024 | NG | Examinations of Jud Hill and then J. Hirsch (10.5); review testimony thereafter with T. Caron (.4) | 795.00 | 10.90 | 8,665.50 |
| 04/03/2024 | NG | Review and consider correspondence from T. Caron regarding interest expressed by a third party in purchasing and taking an assignment of the Synergy settlement (.3); telephone conference with T. Caron regarding same and likely negative consequences in trying to do that, how the mediation is likely to shape up, etc. (.4), | 795.00 | 0.70 | 556.50 |
| | NG | Prepare a working draft outline for T. Caron to use in drafting the mediation statement | 795.00 | 1.10 | 874.50 |
| 04/04/2024 | NG | Review and comment on criminal referral | 795.00 | 0.20 | 159.00 |
| | NG | Prepare lengthy correspondence to Paul Battista at Venable regarding background and explaining anticipated need for associating additional counsel to help with the extensive litigation envisioned. | 795.00 | 1.20 | 954.00 |
| 04/05/2024 | NG | Telephone conference call with P. Battista of Venable and T. Caron (1.4); | 795.00 | 1.40 | 1,113.00 |
| 04/08/2024 | NG | Call from and discussion with trustee regarding deposition testimony by J. Hirsch and in particular her testimony that she was going to honor Greg's "repeated" direction to her while she held power of attorney that the Pruco LI policy proceeds of $5 MM be used to benefit the MLG investors by instead using the funds to defend against any claims they might make against her, what to include in mediation statement, etc | 795.00 | 0.80 | 636.00 |
| | LMW | Prepare Judith Hirsch's First Interrogatories, Requests for Production of Documents and Requests for Admissions for attorneys' review | 200.00 | 0.50 | 100.00 |
| 04/09/2024 | PB | Assist N. Gordon and T. Caron with Mediation Statement | 285.00 | 1.40 | 399.00 |
| 04/12/2024 | NG | Conference with T. Caron and forensic accountant to review tracing spread sheets and data and how to utilize in the case and the mediation (1.6); follow up call with T. Caron to discuss analysis (.3) | 795.00 | 1.90 | 1,510.50 |

| Date | Timekeeper | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|
| 04/16/2024 | NG | Telephone conference with T. Caron to discuss various tracing methods and new developments with settlement discussions (.6); review and consider article on the various tracing methods and case law in support of each (.70); review forensic accountants preliminary analysis of tracing results and differentials (.5) | 795.00 | 1.80 | 1,431.00 |
| 04/18/2024 | NG | Review order on mediation (.1); correspondence with forensic accountant in preparation of conference call (.2); correspondence with accountants and T. Caron (.2); phone discussion with T. Caron (.1); telephone conference call with L. Jones and T. Caron regarding mediation (.6); discuss with mediator regarding potentially moving the mediation date (.2); discussion with H. Ehrenberg regarding status and legal theories (.4) | 795.00 | 1.80 | 1,431.00 |
| 04/19/2024 | NG | Correspondence with T. Caron and from Judge Diehl (.2); set up mediation logistics (.2); consider substantive consolidation of Hirsch and Hirsch entities and impact on transfers and begin legal research regarding same (1.4); correspondence with T. Caron and forensic accountant (Kevin) regarding mediation (.1) | 795.00 | 1.90 | 1,510.50 |
| | LMW | First draft of Responses to Defendant's First Interrogatories, First Requests for Admission and First Requests for Production of Documents | 200.00 | 1.20 | 240.00 |
| 04/22/2024 | NG | Prepare for conference call with T. Caron and forensic accountants in preparation for mediation statement and mediation process (.6); participate in such conference call (1.3); memo to J. Rezac regarding his participation in the mediation (.2); review and consider motion for Rule 2004 exam of forensic accountants filed by J. Hirsch (.5); draft correspondence to T. Caron and forensic accountants regarding same and motion for protective order in response, privilege issues, etc. (.5); review and consider privilege issues as addressed by KM (.3); review and consider first few pages of mediation statement prepared by T. Caron (.7); draft detailed correspondence to T. Caron regarding revisions to first few pages of mediation statement (.6) | 795.00 | 4.70 | 3,736.50 |
| 04/25/2024 | NG | Correspondence wtih T. Caron and J. Rezac regarding initial review of responses to discovery and advise on necessary revisions | 795.00 | 0.80 | 636.00 |
| | NG | Work on responses to discovery requests including virtual conferences with T. Caron and J. Rezac (2.2); telephone conference with T. Caron to review evidence and tracing to date and preparation for her conference call with Leon Jones (.5); continued work on discovery responses (.8); correspondence to T. Caron and J. Rezac regarding further items requiring more discussion before finalizing (.3); review, revise and supplement mediation statement--ongoing, several days project (1.1) | 795.00 | 4.90 | 3,895.50 |
| | JKR | Prepare responses to written discovery (7.80). | 575.00 | 7.80 | 4,485.00 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 04/26/2024 | NG | Assist in drafting response by T. Caron to Leon Jones demands and desire to depose (inappropriately) the newly appointed accountants | 795.00 | 0.20 | 159.00 |
| | NG | Work on responses to interrogatories | 795.00 | 1.10 | 874.50 |
| | NG | Continued work on mediation statement (3.6) correspondence with T. Caron regarding same (.2) | 795.00 | 3.80 | 3,021.00 |
| | JKR | Further preparation of responses to interrogatories (1.10); multiple discussions with Tiffany Caron and Neil Gordon regarding facts of case (.40). | 575.00 | 1.50 | 862.50 |
| 04/27/2024 | NG | Review and consider correspondence from L. Jones associate regarding timing of information swap for mediation, and consider how we are to produce right away , but they will not produce until two days after the mediation statement is due is not fair (.2); correspondence to T. Caron regarding same (.2) | 795.00 | 0.40 | 318.00 |
| 04/29/2024 | NG | At trustee's request, review correspondence received from investors with background and claiming intent to pursue Judy and all of the entities directly if the mediated settlement is insufficient on a global basis and advise trustee on how to address it | 795.00 | 0.40 | 318.00 |
| | NG | Review at request of T. Caron proposed time line for mediation and unreasonable demands being made by L. Jones and draft response to her concerning same | 795.00 | 0.60 | 477.00 |
| | NG | Continued work on mediation statement (now up to 25 pages single spaced) | 795.00 | 2.70 | 2,146.50 |
| 04/30/2024 | NG | Continued work on and redraft of mediation statement | 795.00 | 1.30 | 1,033.50 |
| 05/01/2024 | NG | Review revised mediation statement and discuss with T. Caron same and mediation strategy | 795.00 | 1.00 | 795.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 05/02/2024 | NG | Phone conference with T. Caron and forensic accountants (Soneet and Kevin) regarding mediation statement and upcoming mediation itself (.5) memo to J. Rezac regarding same and further information on Georgia RICO action and support for such claim (.3); discussion with T. Caron regarding foregoing and supplementing mediation statement with more details based on RICO statute and review and discuss details of statute with her (.9); review and consider correspondence from Mark Horoupian and Adam Jacobowitz and reply thereto regarding legal claims trustee intends to pursue (.3); further correspondence from same and draft response (.2); review and consider proposed revisions to mediation statement by forensic accountants (.5); review and make further edits to mediation statement and correspond to T. Caron regarding same (.7); further memo to J. Rezac to provide specifics for application of RICO to provide more context in his legal research, including Judy Hirsch's numerous overt acts (.8) | 795.00 | 4.20 | 3,339.00 |
| | JKR | Further legal research regarding predicate acts under Georgia RICO law (.90). | 575.00 | 0.90 | 517.50 |
| 05/03/2024 | NG | Review and consider preliminary report and stats from forensic team (1.1); review and consider RICO cases provided by J. Rezac from his legal research and life insurance Ponzi scheme cases provided by T. Caron in her research (1.7); conference call with T. Caron and J. Rezac to discuss RICO case law and supplementing and finalizing mediation statement and deleting certain other exhibits and content of the working draft and follow-up discussion with T. Caron (1.3); review her correspondence to mediator and to opposing counsel (.1) | 795.00 | 4.20 | 3,339.00 |
| | JKR | Further legal research regarding Georgia RICO/predicate acts (1.40); conference call with Gordon and Caron regarding Judith Hirsch liability (1.30). | 575.00 | 2.70 | 1,552.50 |
| 05/05/2024 | NG | Correspondence (x7) with mediator and trustee | 795.00 | 0.40 | 318.00 |
| 05/06/2024 | NG | Review, consider, and correspond with T. Caron regarding mediation and advance call (.4); telephone conference with same to review mediation logistics and strategy (.9); prepare memo to J. Rezac regarding conference call with Judge Diehl and his participation (.2) | 795.00 | 1.50 | 1,192.50 |
| 05/08/2024 | NG | Review and consider correspondence from attorney Mark Horoupian and draft response | 795.00 | 0.30 | 238.50 |
| 05/11/2024 | JKR | Review mediation statement and prepare for conference call with mediator (1.10). | 575.00 | 1.10 | 632.50 |
| 05/12/2024 | JKR | Preparation for pre-mediation conference call with mediator (.80). | 575.00 | 0.80 | 460.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 05/13/2024 | NG | Prepare for pre-mediation conference with Judge Diehl (1.6); conference with same and J. Rezac (1.0); review with J. Rezac regarding foregoing and further strategy (.4); correspondence with Tiffany, Soneet and Kevin with analysis of call with Judge Diehl (.5) | 795.00 | 3.50 | 2,782.50 |
| | JKR | Pre-mediation conference call with mediator (.90); confer with Neil Gordon regarding legal claims against Ms. Hirsch and factual support (.60). | 575.00 | 1.50 | 862.50 |
| 05/14/2024 | PB | Setting up pre-mediation zoom meeting | 285.00 | 0.50 | 142.50 |
| | PB | Setting up zoom meeting for Mediation | 285.00 | 0.50 | 142.50 |
| | NG | Correspondence with T. Caron regarding mediation issues (.4); draft correspondence to Judge Diehl (.6); confer with T. Caron and meet with her at law offices of Taylor English Duma to prepare for mediation (5.2) | 795.00 | 6.20 | 4,929.00 |
| | JKR | Mediation prep (2.0). | 575.00 | 2.00 | 1,150.00 |
| 05/15/2024 | NG | Confer with T. Caron prior to start of the mediation (.3) attend mediation with Judge Diehl regarding claims against Judith Hirsch (6.5); confer with T. caron thereafter (.3) | 795.00 | 7.10 | 5,644.50 |
| | JKR | Mediation (6.50). | 575.00 | 6.50 | 3,737.50 |
| 05/17/2024 | NG | Discussion with T. Caron regarding on-going mediation strategy (.3) and prepare draft of correspondence to the mediator and circulate to J. Rezac, S. Kapila, and T. Caron (.5); review and consider responses from each of them (.2); finalize and forward to Judge Diehl (.2) | 795.00 | 1.20 | 954.00 |
| 05/20/2024 | NG | Multiple correspondences with mediator, Judge Diehl, and research issues raised (.8); telephone conference with T. Caron regarding foregoing and whether to proceed with the litigation (.9) | 795.00 | 1.70 | 1,351.50 |
| 05/21/2024 | NG | Correspondence with Judge Diehl and T. Caron (.2); Telephone conference with T. Caron regarding developments with mediation and strategy for tomorrow (.4); work on mediation resumption preparation (.1.1) | 795.00 | 1.70 | 1,351.50 |
| | JKR | Prepare for continued mediation. | 575.00 | 0.50 | 287.50 |
| 05/22/2024 | NG | Mediation of claims with T. caron, J. Rezac, J. Hirsch, Leon Jones, Tim Roberts, and Judge Diehl (4.5); confer with T. Caron thereafter (.3); confer with T. Caron and S. Kapila (.4); add several additional bullet points in memos to J. Rezac and T. Caron before circulating to opposing counsel (.4); review and consider draft of bullet points and revise and supplement same (.5); further work on bullet points (.6) | 795.00 | 6.70 | 5,326.50 |

| Date | Init. | Description | Rate | Hours | Amount |
|---|---|---|---|---|---|
| | JKR | Further research regarding RICO actions and prepare for mediation (1.60); continued mediation and attention to settlement terms (3.90). | 575.00 | 5.50 | 3,162.50 |
| 05/23/2024 | JKR | Follow-up with mediator and Hirsch's counsel regarding settlement terms (.30). | 575.00 | 0.30 | 172.50 |
| 05/24/2024 | NG | Further review and consideration of term sheet provisions revised by opposing counsel (.7); multiple correspondences with T. Caron regarding same and hearing dates and times (.3) | 795.00 | 1.00 | 795.00 |
| 05/27/2024 | NG | Further consideration of term sheet (.5); draft correspondence to opposing counsel regarding revisions to bullet points (.2); telephone conference with T. Caron regarding same and other revisions (.3); further correspondence to opposing counsel regarding same (.2); review response from L. Jones to same (.1) | 795.00 | 1.30 | 1,033.50 |
| 05/29/2024 | NG | Correspondence (x6) with T. Caron regarding hearing on July 30th | 795.00 | 0.30 | 238.50 |
| 05/30/2024 | NG | Review and consider correspondence between Trustee and Leon Jones, and begin to draft correspondence countermanding what was suggested as agreeable to the trustee (.9); interim correspondence with Leon Jones (.1); discussion with trustee regarding foregoing (x3) (.4); edit further before sending (.2); call from Leon at which he simply yelled at me and draft further correspondence to same (.2) | 795.00 | 1.80 | 1,431.00 |
| 05/31/2024 | NG | Review and consider correspondence from Judy Hirsch counsel, and draft lengthy response about the meeting to be scheduled with the creditors/investors (1.1); correspondence with T. Caron regarding same (.1) | 795.00 | 1.20 | 954.00 |
| 06/01/2024 | NG | Correspondence and discussion with T. Caron regarding failure of opposing counsel to have provided a draft of the settlement agreement by the promised date (several days ago) and how to handle during her leave of absence, meeting with the investors/creditors to review the settlement once completed, sending out a "save the date," having investors call me directly, what is anticipated to occur at the meeting, etc., | 795.00 | 0.50 | 397.50 |
| | NG | Review and consider draft of correspondence from Trustee to the investors concerning a meeting of creditors being called to review and discuss the proposed settlement with Judy Hirsch (.3); prepare correspondence to T. Caron outlining proposed revisions (.4); | 795.00 | 0.70 | 556.50 |
| 06/02/2024 | NG | Further discussions with T. Caron regarding lack of a settlement agreement that opposing counsel was to have drafted and provided no later than six days ago (.2); continued editing of the proposed "save the date" notice (.4); further correspondence to T. Caron with suggested additional edits and explanations (.4) | 795.00 | 1.00 | 795.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 06/03/2024 | NG | Correspondence with trustee and from L. Jones regarding settlement agreement | 795.00 | 0.20 | 159.00 |
| | NG | Review email from T. Caron (.1) and begin review and revisions to the proposed settlement agreement received late afternoon-(and six days after the promised date) (1.1); draft initial analysis of my proposed revisions (.4); correspondences with T. Caron and J. Rezac regarding the initial draft of the settlement agreement (.5) | 795.00 | 2.10 | 1,669.50 |
| 06/04/2024 | NG | Continued work on revising proposed settlement agreement | 795.00 | 0.50 | 397.50 |
| | JKR | Review and revise Settlement Agreement (.40). | 575.00 | 0.40 | 230.00 |
| 06/05/2024 | JKR | Review and revise settlement agreement (.40). | 575.00 | 0.40 | 230.00 |
| 06/06/2024 | NG | Continued work on proposed settlement agreement making further revisions to redline of same (.7); draft correspondence to L. Jones with redline version and provide explanation of the revisions (..6) | 795.00 | 1.30 | 1,033.50 |
| | JKR | Further revisions to proposed Settlement Agreement (.50). | 575.00 | 0.50 | 287.50 |
| 06/07/2024 | NG | Discussion with Barbara Aronson counsel, D. Bury, regarding framework of settlement and whether he believed his client would support it | 795.00 | 0.40 | 318.00 |
| 06/17/2024 | NG | Correspondence with trustee regarding my revisions to the settlement agreement and altered timeline due to non-responsiveness of Judy Hirsch counsel | 795.00 | 0.50 | 397.50 |
| 06/18/2024 | NG | Correspondence from and to Leon Jones | 795.00 | 0.20 | 159.00 |
| 06/19/2024 | NG | Correspondence with D. Bury regarding status of settlement with Judy Hirsch | 795.00 | 0.20 | 159.00 |
| 06/20/2024 | NG | Draft correspondence to Judge Diehl as mediator regarding timeline and neglect by the Judy Hirsch team to make the settlement a priority and provide a time line | 795.00 | 0.70 | 556.50 |
| | NG | Review and further revise save the date announcement for meeting with creditors based on unexpected delays by the other side making it likely there will be no signed agreement by the meeting date and prepare correspondence to T. Caron regarding foregoing (.5); and respond to her reply (.2) | 795.00 | 0.70 | 556.50 |
| 06/21/2024 | NG | Multiple correspondence with T. Caron regarding status of settlement, save the date announcement and logistics for that meeting (.4); correspondence from office of L. Jones (.1) | 795.00 | 0.50 | 397.50 |
| 06/22/2024 | NG | Correspondence with Judge Diehl and T. Caron regarding sticking points and explanations of same | 795.00 | 1.10 | 874.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 06/24/2024 | NG | Correspondence from Leon Jones | 795.00 | 0.10 | 79.50 |
| 06/25/2024 | NG | Review and consider correspondence and counteroffer from Leon and Bethany on behalf of Judy Hirsch (.4); try to reach T. Caron (.1); draft response and further counter (.4) | 795.00 | 0.90 | 715.50 |
| 06/26/2024 | NG | Consider correspondence from T. Caron regarding disputed issues in settlement agreement | 795.00 | 0.30 | 238.50 |
| 06/27/2024 | NG | Review and consider correspondence from J. Hirsch counsel and new version of the proposed settlement agreement and make proposed further revisions thereto (1.3); Correspondence to L. Jones and from same (.2); correspondence to and discussion with T. Caron regarding necessary revisions (.4); telephone settlement conference with Leon Jones, T. Caron, and Bethany Strain (1.1); follow up with T. Caron (.1) | 795.00 | 3.10 | 2,464.50 |
| 06/28/2024 | NG | Review and consider proposed Release form drafted by counsel to Judy Hirsch (1.0); outline proposed revisions thereto and draft correspondence to opposing counsel setting forth said suggested revisions (.4); review T. Caron correspondence (.1); telephone conference with same (.4); correspondence from and to D. Bury regarding proposed settlement (.2); further review and draft correspondence to J. Hirsch counsel with additional revisions to the proposed settlement agreement (.6); begin review and revisions to proposed Rule 9019 motion (1.2); correspondence to T. Caron regarding initial comments of problems (.2) | 795.00 | 4.10 | 3,259.50 |
| 06/29/2024 | NG | Review the redline versions of the release and settlement agreement from Leon Jones and note further revision needed (.7); correspondence with T. Caron regarding same (.2); correspondence to Leon Jones regarding same (.2); further correspondence with D. Bury regarding imminent settlement agreement and to hold off with issues until it is filed and read (.2); further correspondences from and to L. Jones regarding final revisions to the Release, execution by his client, and timing of filing the Rule 9019 motion (.5); continued work on editing of Rule 9019 motion and forward proposed edits to T. Caron (.8) | 795.00 | 2.60 | 2,067.00 |
| 06/30/2024 | NG | Correspondence with D. Bury regarding settlement and pre-creditor conference to discuss their issues and correspondence from T. Caron regarding same (.2); discussion with T. Caron regarding revisions to draft of Rule 9019 motion, and suggestions for further revisions (.3); correspondence with L. Jones regarding execution of the settlment agreement (.2) | 795.00 | 0.70 | 556.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 07/01/2024 | NG | Review and consider latest redline version of the Rule 9019 motion and proposed order and prepare further revisions to discuss with T. Caron (.7); discussion with T. Caron regarding foregoing and finalizing motion and order, and anticipated issues at the creditor meeting and how to address (.6); correspondence with Bethany, Leon and Tiffany regarding logistics and site for creditor meeting (.2); correspondence from D. Bury regarding conference call with his client (.1) | 795.00 | 1.60 | 1,272.00 |
| 07/02/2024 | NG | Correspondence with T. Caron regarding filing of Rule 9019 motion in AP as well | 795.00 | 0.10 | 79.50 |
| | NG | Correspondences with attorney Chris Steinmetz for pre creditor meeting teleconference | 795.00 | 0.20 | 159.00 |
| 07/03/2024 | NG | Correspondence with Chris Steinmetz and T. Caron regarding settlement conferences | 795.00 | 0.10 | 79.50 |
| | NG | Review and consider correpondence from J. Hirsch counsel with proposed motion and consent order to stay interpleader, and comment thereon | 795.00 | 0.40 | 318.00 |
| 07/05/2024 | NG | Correspond with trustee regarding preparation for creditor meeting | 795.00 | 0.10 | 79.50 |
| | NG | Correspondence with Leon Jones regarding upcoming meeting of creditors | 795.00 | 0.10 | 79.50 |
| | NG | Telephone conference with Chris Steinmetz and T. Caron regarding R. 9019 motion (1.6); telephone conference with David Bury, Barbara Aronson, Josh Marks, etc. regarding Rule 9019 motion (1.6); confer with T. Caron thereafter (.2) | 795.00 | 3.40 | 2,703.00 |
| 07/08/2024 | NG | Telephone conference call with Leon Jones, Bethany Strain, and Tiffany Caron ion preparation for the creditor meeting | 795.00 | 0.60 | 477.00 |
| 07/09/2024 | NG | Work on presentation to creditors concerning the settlement motion including several discussions with T. Caron (4.2); to social hall of BBJ for presentation and set up presentation and meet with various investors and their attorneys (.9); make presentation and answer questions (2.4); confer with T. Caron regarding same (.3); correspondence with attorney Mark Horoupian and T. Caron (.1); return trip to Atlanta (4.9) | 795.00 | 12.80 | 10,176.00 |
| 07/11/2024 | NG | Correspondence with creditors and review T. Caron responses (.2); telephone conference call with Mark Horoupian and his client Ms. Jacobowitz, T. Caron and others (.8); correspondence with Dana Braun regarding many questions he still has (.2); telephone conference call from and with Dan Braun regarding the proposed settlement motion (.6) | 795.00 | 1.80 | 1,431.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 07/12/2024 | NG | Review and consider lengthy correspondence from D. Bury with 15 detailed questions set out to which he wants a response (.9); begin outlining responses (1.1); memo to T. Caron regarding same and assigning the questions between us for the response (.2) | 795.00 | 2.20 | 1,749.00 |
| 07/15/2024 | NG | Telephone conference with T. Caron regarding 15 questions from D. Bury regarding pending motion and go over responses (1.1); telephone conference with D. Bury, Tom Norton, and T. Caron regarding foregoing (1.1); further discussion with T. Caron regarding foregoing (.2) | 795.00 | 2.40 | 1,908.00 |
| 07/17/2024 | NG | Review and consider correspondence from T. Caron concerning formulating a response to creditors (and their attorneys) who are asking issues about the settlement and wanting legal interpretations that go beyond it (.5); draft proposed response language and forward in correspondence to T. Caron (.3) | 795.00 | 0.80 | 636.00 |
| | NG | Review and consider correspondence from T. Caron regarding preparations for Rule 9019 motion and review 25 page (single spaced) mediation statement and exhibits in preparation along with other documentation | 795.00 | 1.70 | 1,351.50 |
| 07/18/2024 | NG | Telephone conference call with T. Caron to outline presentation bullet points for Rule 9019 hearing | 795.00 | 1.40 | 1,113.00 |
| 07/22/2024 | NG | Preparation for call with Tiffany Caron, James Banter and John Kennedy regarding probate estate claim against MLG and MLG's claim against probate estate (.6); discussion with T. Caron regarding upcoming telephone conference (.2); telephone conference with T . Caron, James Banter and John Kennedy (1.0); follow up discussion with T. Caron (.3) | 795.00 | 2.10 | 1,669.50 |
| 07/23/2024 | NG | Research Perdue Pharma and third party release cases post-Perdue Pharma in preparation for the hearing on the settlement motion which contains third-party releases | 795.00 | 2.60 | 2,067.00 |
| 07/24/2024 | NG | Telephone conference with T. Caron regarding upcoming hearing | 795.00 | 0.30 | 238.50 |
| 07/25/2024 | NG | Focus on releases in preparation for upcoming hearing and parties that are not being released | 795.00 | 1.20 | 954.00 |
| 07/26/2024 | NG | Review and consider correspondence from D. Bury regarding settlement and dissatisfaction of manor investors, and draft initial response (.5); continued preparation for what now appears to be a contested hearing (.1.1) | 795.00 | 1.60 | 1,272.00 |
| 07/29/2024 | NG | Continued research on third party releases, including Red Lobster decision on July 26th (1.6); review and consider correspondence and probate estate inventory list from James Banter (.4); preparation for court hearing on Rule 9019 motion that is expected to be contested (2.4) | 795.00 | 4.40 | 3,498.00 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Telephone conference call with D. Bury and T. Caron regarding the motion and hearing (.9); confer with T. Caron in preparation for hearing (1.4); one-half travel time to Savannah (2.8); review and consider objection by Chris Steinmetz and how to respond thereto (.8); prepare script of remarks for the presentation at the hearing in support of the Rule 9019 motion and likely questions from the Court (3.2) | 795.00 | 9.10 | 7,234.50 |
| 07/30/2024 | NG | Continued preparation for the hearing, including going over the presentation (1.3); confer with T. Caron (.6); confer with counsel at the courthouse before the hearing, attend the hearing to advocate in favor of granting the motion, and confer with counsel thereafter (3.9); confer with T. Caron regarding next steps (.3); one-half travel time back to Savannah airport and for flight to Atlanta (1.7) | 795.00 | 7.80 | 6,201.00 |
| 07/31/2024 | NG | Review and consider corresondence from T. Caron concerning impact on releases where creditors sell their claims (4); review correspondence an countersigned agreement from L. Jones (.2); draft detailed memo to J. Rezac and S. Kapila regarding treatment of distributions as principal repayment rather than interest and impact on claims, or such other approach as may be proper (.7); research these issues including reviewing Kathy Phelps' law review article thereon (1.5); correspondence to T. Caron, S. Kapila, and J. Rezac regarding foregoing (.2); followup correspondence from and to Soneet regarding same (.5) | 795.00 | 3.50 | 2,782.50 |
| 08/01/2024 | NG | Continued correspondence and follow-up regarding following the dominant theory for treatment of proofs of claim in Ponzi scheme cases | 795.00 | 0.60 | 477.00 |
| | NG | Correspondence from and to Mike Robl as counsel to investor Fred Halperin and draft response | 795.00 | 0.20 | 159.00 |
| | JKR | Legal research regarding calculation of investor claims in Ponzi scheme bankruptcy case (.50). | 575.00 | 0.50 | 287.50 |
| 08/02/2024 | NG | Further consideration of claims allowance methodology and specific applications in this case (.8); telephone conference with T. Caron regarding treatment of claims and how to describe the treatment in terms of obtaining releases and and non-creditors who have contacted her wanting releases from the Estate (.4) | 795.00 | 1.20 | 954.00 |
| 08/09/2024 | NG | Consideration to issue of claims assigned to third party purchasers (.7); discuss with Judge Diehl (.1); correspondence to T. Caron (.1) | 795.00 | 0.90 | 715.50 |
| 08/12/2024 | NG | Review entered order on settlement; memo to staff regarding same | 795.00 | 0.20 | 159.00 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 08/13/2024 | NG | Review request from T. Caron to review and edit proposed Notice of Settlement to be issued to creditors, and make the edits (.5); correspondence to T. Caron regarding same (.1); telephone conference with T. Caron regarding foregoing and possible Dean Flake settlement and implications for the release obligations where a claim is transferred (.4) | 795.00 | 1.00 | 795.00 |
| 08/14/2024 | NG | Review correspondence from T. Caron with documentation on transfer of a $700,000 claim , including assignment document, and consider implications for the release requirements of the settlement | 795.00 | 0.70 | 556.50 |
| 08/23/2024 | NG | Review and consider new opinion from Fifth Circuit on fraudulent transfer defenses | 795.00 | 0.80 | 636.00 |
| 08/28/2024 | NG | Telephone conference with T. Caron regarding status of settlement negotiations with Flake and the last redemption recipient in May 2023, progress on obtaining releases, etc. | 795.00 | 0.60 | 477.00 |
| | NG | Review and consider Robertshaw Holdings case on consensual releases just decided by the bankruptcy court for the S. D. Texas. | 795.00 | 0.60 | 477.00 |
| 09/03/2024 | NG | Review and consider correspondence from T. Caron and L. Jones and reply thereto (.2); review just released opinion from the 9th Circuit on the Ponzi scheme presumption (.8) | 795.00 | 1.00 | 795.00 |
| 09/05/2024 | NG | Review, consider and discuss with T. Caron the Motti settlement offer and how to respond (.3); review and consider draft of letter from Leon Jones to investors that is factually incorrect, is misleading, has several typos, and is three times too long and advise T. Caron accordingly (.8); fur ther correspondence to T. Caron regarding foregoing (.2); further correspondences with T. Caron regarding revisions needed to the letter (.3) | 795.00 | 1.60 | 1,272.00 |
| 09/06/2024 | NG | Review and consider correspondence from T. Caron and revised version of letter to investors and respond with further comments | 795.00 | 0.50 | 397.50 |
| 09/11/2024 | NG | Correspondence with T. Caron regarding objectionable claim filed by Barbara Aronson as secured | 795.00 | 0.20 | 159.00 |
| | NG | Review and consider from T. Caron the settlement demands and correspondence with Motti counsel and counteroffer and confidentiality requests | 795.00 | 0.50 | 397.50 |
| 09/23/2024 | NG | Review and consider Petters decision from the 8th Circuit on in pari delicto defense against a trustee | 795.00 | 0.80 | 636.00 |
| 09/25/2024 | NG | Review correspondence from Bethany Strain and discuss with T. Caron (x2) along with Dean Flake and Motti settlements | 795.00 | 0.60 | 477.00 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 09/26/2024 | NG | Telephone conference call with Leon Jones, Bethany Strain and Tiffany Caron regarding litigation threats by certain investor groups who are unwilling to sign the releases and offer advice and strategy (1.1); follow-up call with T. Caron regarding additional strategy (.4) | 795.00 | 1.50 | 1,192.50 |
| 09/30/2024 | NG | Correspondence to Leon Jones and Bethany Strain | 795.00 | 0.20 | 159.00 |
| 10/01/2024 | NG | Correspondence to T. Caron regarding follow up with Dave Bury | 795.00 | 0.10 | 79.50 |
| 10/02/2024 | NG | Correspondence from T. Caron and with Leon Jones and Bethany Strain (.2); telephone conference with same (.4); call and email D. Bury to try and make contact (.1); further discussion with L. Jones (.1); telephone conference with D. Bury regarding settlement, releases, etc. (1.2); correspondence (x4) with T. Caron (.2) | 795.00 | 2.20 | 1,749.00 |
| | NG | Correspondence with Leon Jones firm regarding follow-up on discussions with Aronson counsel | 795.00 | 0.20 | 159.00 |
| 10/03/2024 | NG | Telephone conference call with T. Caron regarding discussions with D. Bury for investor group with $24 million of claims, and strategy and next steps | 795.00 | 0.70 | 556.50 |
| 10/04/2024 | NG | Telephone conference call with J. Hirsch's attorney Bethany Strain regarding developments and strategy (.8); correspondence with T. Caron regarding same (.1) | 795.00 | 0.90 | 715.50 |
| 10/05/2024 | NG | Conference call with T. Caron to review the developments and strategy | 795.00 | 0.40 | 318.00 |
| 10/07/2024 | NG | Review at trustee's request the draft of the Rule 9019 motion with Motti Locker and comment thereon | 795.00 | 0.60 | 477.00 |
| 10/08/2024 | NG | Review and consider T. Caron correspondence regarding further analysis with respect to the Motti Locker resolution | 795.00 | 0.20 | 159.00 |
| 10/14/2024 | NG | Telephone conference with T. Caron regarding status and transition of responsibility for obtaining releases (.2); call, text, and email D. Bury regarding same (.2) | 795.00 | 0.40 | 318.00 |
| 10/15/2024 | NG | Correspondence with L. Jones, B. Strain, and T. Caron (.2); telephone conference call with the foregoing to review status and strategy concerning implentation of terms of settlement and obtaining the releases (.6) | 795.00 | 0.80 | 636.00 |
| 10/17/2024 | NG | Correspondence from and to D. Bury | 795.00 | 0.20 | 159.00 |
| | NG | Review and consider correpondence and non-party document production request from Truist Bank in connection with Barbara Aronson litigation with very lengthy requests (.8); correspondence to trustee regarding same (.2); draft response correspondence to Truist counsel (.2) | 795.00 | 1.20 | 954.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 10/18/2024 | NG | Lengthy phone conference with T. Caron regarding massive non-party discovery Truist Bank is seeking from her and ongoing issues in the case and with the releases (1.0); calls to D. Bury (.1); correspondence with same and T. Caron (.2); discuss with T. Caron (.2); correspondence to D. Bury (.1) | 795.00 | 1.60 | 1,272.00 |
| 10/22/2024 | NG | Correspondence to D. Bury regarding counteroffer from Judy Hirsch | 795.00 | 0.20 | 159.00 |
| 10/23/2024 | NG | Correspondence with T. Caron regarding negotiating progress | 795.00 | 0.20 | 159.00 |
| 10/25/2024 | NG | Correrspondence from and discussion with T. Caron (.1); telephone conference call with T. Caron, Leon Jones and Bethany Strain (.6) | 795.00 | 0.70 | 556.50 |
| | NG | Review and consider just released opinion of 77 pages and 48 footnotes from Judge Sacca on *in pari delicto*, Georgia Rico laws, aiding and abetting a breach of fiduciary duties,etc. and any application it might have in MLG if the settlement fails due to a lack of releases or if action is pursued in probate court or elsewhere | 795.00 | 2.30 | 1,828.50 |
| 10/26/2024 | NG | Telephone conference with T. Caron to discuss requests/demands by Leon Jones | 795.00 | 0.20 | 159.00 |
| 10/29/2024 | NG | Calls to D. Bury (.1); telephonic conference with T. Caron regarding developments and strategy (.3); review and consider further correspondence from D. Bury and draft a response. (.2) | 795.00 | 0.60 | 477.00 |
| 11/04/2024 | NG | Review status of negotiations and correspondence with D. Bury regarding same (.2); correspondence with T. Caron regarding same (.2) | 795.00 | 0.40 | 318.00 |
| 11/06/2024 | NG | Correspondence with B. Strain and T. Caron (.1); telephone conference call with L. Jones, Bethany Strain, and T. Caron regarding settlement negotiations statuts, counter offer to be presented, and strategy going forward (.4); telephone conference call with T. Caron regarding foregoing and efforts to serve her with a subpoena in state court litigation (.5) | 795.00 | 1.00 | 795.00 |
| 11/07/2024 | NG | Review case on service of subpoena requirements to a non-party (as T. Caron is in the state-court litigation in which parties are trying to serve her by fed ex or email) (.6); correspondence to T. Caron regarding same (.1) | 795.00 | 0.70 | 556.50 |
| 11/11/2024 | NG | Multiple correspondences with D. Bury | 795.00 | 0.20 | 159.00 |
| 11/12/2024 | NG | Telephone conference with T. Caron regarding Motti proposed settlement and J. Hirsch settlement and negotiations | 795.00 | 0.60 | 477.00 |

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

Tiffany E. Caron, Chapter 7 Trustee

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 11/14/2024 | NG | Correspondence with D. Bury and T. Caron (.2); telephone conference with T. Caron (.2); telephone conference with T. Caron (.2); telephone conference with D. Bury (.2); and then with T. Caron (.2); further telephone discussion with T. Caron regarding certain investors who have not signed a release, and calculate their potential liability to the estate, etc. (.2) | 795.00 | 1.20 | 954.00 |
| 11/18/2024 | NG | Correspondence with D. Bury regarding settlement reached at $9 million subject to releases being obtained; correspondence to T. Caron regarding same | 795.00 | 0.20 | 159.00 |
| 11/19/2024 | NG | Correspondence with T. Caron (.1) and telephone conference with same regarding developments and strategy concerning finalizing the releases and settlement (.3) | 795.00 | 0.40 | 318.00 |
| 11/22/2024 | NG | Discuss case with Jim Drake (.2); discussion and correspondence with T. Caron (.2); Zoom conference with Soneet Kapila, Kevin McCoy, and T. Caron (part of the time) to review case developments and status, strategy hereafter and with respect to being able to object to claims, likely need for Rule 2004 exams and document productions, etc.. (1.1) | 795.00 | 1.50 | 1,192.50 |
| 11/25/2024 | NG | Correspondence and discussions with T. Caron regarding lone holdout creditor, Morris Geffen, represented by Daniel Jenkins, and demands he is making and best way to address it in the few days left to do so (.6); call and correspondence to D. Bury regarding approaching Jenkins together (.1) | 795.00 | 0.70 | 556.50 |
| 11/26/2024 | NG | Correspondence with D. Bury and then conference call with same and Daniel Jenkins (.2); review executed release form (.1); correspondence with T. Caron (x4) regarding same (.2) | 795.00 | 0.50 | 397.50 |
| | NG | Review correspondence and discovery requests for Truist Bank and respond to let them know the trustee is out of the country | 795.00 | 0.50 | 397.50 |
| 12/02/2024 | NG | Correspondence from T. Caron and Truist counsel regarding discovery (.2); discuss correspondence from Judy Hirsch counsel with T. Caron (.1); review proposed amendment to settlement agreement (.2); draft correspondence to Bethany Strain and Leon Jones (.2); further correspondence to T. Caron (.1); further discussion with T. Caron regarding same (.2) | 795.00 | 1.00 | 795.00 |
| 12/03/2024 | NG | Correspondence with T. Caron, and from T. Caron to L. Jones regarding amendment to settlement agreement, and then directly with T. Caron again (.2); telephone conference with Leon Jones, Bethany Strain and T. Caron regarding foregoing(.5); follow-up with T. Caron regarding foregoing (.2); follow-up correspondence with T. Caron regarding amended consent order (.1) | 795.00 | 1.00 | 795.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 12/04/2024 | NG | Review correspondence from T. Caron and Amendments to Settlement filed with the court in the main case and adversary proceeding | 795.00 | 0.30 | 238.50 |
| 12/05/2024 | NG | Review entered order on amendment to settlement; correspond with T. Caron regarding same | 795.00 | 0.20 | 159.00 |
| | NG | Review correspondence and documents between Bethany Strain and Mark Horoupian | 795.00 | 0.20 | 159.00 |
| | JKR | Attention to terms of mediation agreement (.10). | 575.00 | 0.10 | 57.50 |
| 12/06/2024 | NG | Review correspondence from T. Caron regarding probate status and development of Greg Hirsch Estate (.2); discussion with T. Caron regarding developments with releases and settlement agreement (.1); telephone conference call with Leon Jones, Bethany Strain, and T. Caron (.4); correspondence to D. Bury (.1); review and consider his response (.2); further telephone conference with T. Caron regarding foregoing, developments, options and strategy (.3); further correspondence from D. Bury and discuss with T. Caron (.2); review Notice of Consummation and correspondence from T. Caron and reply thereto (.2); review correspondence that Notice of Consummation has been filed and respond thereto (.1) | 795.00 | 1.80 | 1,431.00 |
| 12/10/2024 | NG | Call from and discussion with Fred Rabhan and explain various methodologies of claim objections and tax consequences of having a Ponzi scheme finding or not (.9); further call from and discussion with Fred Rabhan (.1) | 795.00 | 1.00 | 795.00 |
| 12/11/2024 | NG | Correspondence with T. Caron regarding claim objections and tax treatment of a Ponzi scheme (.2); phone conference with T. Caron regarding same (.5); further corrersponderice with same regarding foregoing (.2) | 795.00 | 0.90 | 715.50 |
| 12/12/2024 | NG | Confer with Soneet Kapila regarding claim objections | 795.00 | 0.20 | 159.00 |
| 12/13/2024 | NG | Correspondence with T. Caron and Soneet Kapila regarding analysis and objections to claims (.3); confer with Ponzi expert Kathy Phelps regarding foregoing (.5); correspondence with T. Caron regarding same (.1); phone conference with T. Caron (.3) | 795.00 | 1.20 | 954.00 |
| 12/18/2024 | NG | Telephone conference call with T. Caron regarding legal arguments for each approach and methodology that could be employed in objecting to claims | 795.00 | 1.10 | 874.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 12/19/2024 | NG | Review notes in preparation for (.3); and participate in telephone conference call with T. Caron, Soneet Kapila and Kevin Mccoy regarding establishing the Ponzi scheme and having the court make that determination, whether and how to address any possible surplus, possible additional tier of claims for tax losses or other categories of loss, etc . (.9); review and consider from T. Caron draft of correspondence to counsel for Motti Locker regarding proposed settlement and respond with my proposed revisions (.5) | 795.00 | 1.70 | 1,351.50 |
| 12/23/2024 | NG | Review and consider data and analysis from forensic team (.8); correpondence to T. Caron regarding the same (.1) | 795.00 | 0.90 | 715.50 |
| | NG | Correspondence from (x2) and to (x2) Howard Ehrenberg regarding settlement and remaining matters to pursue in the case | 795.00 | 0.30 | 238.50 |
| 12/24/2024 | NG | Continue to review and assess forensic printouts (.6); teleconference with T. Caron regarding foregoing and upcoming hearing on several matters (.6); memo to T. Caron regarding same (.1) | 795.00 | 1.30 | 1,033.50 |
| 12/26/2024 | NG | Correspondence with T. Caron regarding upcoming hearing | 795.00 | 0.10 | 79.50 |
| 12/31/2024 | NG | Correspondence with T. Caron regarding upcoming hearing (.1); review motion, court notice and belatedly submitted pro hac approval order for Truist Counsel in connection with upcoming hearing (.2); review court notice from ND Georgia that federal court will be closed for Jimmy Carter on our hearing date (.1); draft correspondence to T. Caron regarding court closure in ND Georgia and to verify if our hearing date is still valid in SD Georgia (.1); discuss with T. Caron that the hearing must be continued and available dates and who all might have been expected to attend on the pending matters (.2); further communications with T. Caron (.1); review notice of rehearing (.1) | 795.00 | 0.90 | 715.50 |
| 01/08/2025 | NG | Review and consider correspondence with T. Caron regarding pending issues and seeking my input and advice and review what might be pertinent law on the issues such as Barton doctrine, privileges, etc | 795.00 | 1.40 | 1,113.00 |
| 01/09/2025 | NG | Telephone conference call with T. Caron regarding pending issues, strategies, defenses such as privacy and privilege, inordinate expense to the Estate, Truist not being a party in interest, Barton Doctrine issues, etc. and issues related to anticipated claim objections (1.3); review and consider transcript of settlement motion hearing (1.1) | 795.00 | 2.40 | 1,908.00 |
| 01/10/2025 | NG | Review correspondence from T. Caron and consider same and also review her interim report (.2); discussion with T. Caron regarding upcoming conference call with Truist counsel that they have demanded (.2) | 795.00 | 0.40 | 318.00 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 01/13/2025 | NG | Prepare for (.6) and participate in conference call regarding upcoming hearing with Truist counsel and T. Caron and set forth trustee's objections to relief requested and discuss same (1.0); discussion with T. Caron regarding letter to Truist concerning willful stay violations, citations, etc. and legal arguments for the upcoming hearing (.6) | 795.00 | 2.20 | 1,749.00 |
| 01/14/2025 | NG | Research issue of standing of Truist Bank (1.7); telephone conference with Truist Bank counsel and T. Caron (.4); review and consider correspondence from T. Caron regarding document production for Rule 2004s of investors for claim objection purposes and draft response with additional document request (.8) | 795.00 | 2.90 | 2,305.50 |
| 01/15/2025 | NG | To airport for meeting with T. Caron (followed by flight to Savannah) regarding hearings tomorrow and eventual motion to establish Ponzi scheme, necessary testimony and evidence, etc. (4.5)(no charge for return trip); continued meeting with T. Ccaron thereafter(1.8); continued preparation for hearing (.8) | 795.00 | 7.10 | 5,644.50 |
| 01/16/2025 | NG | Review proposed order received from Truist counsel (.4); meeting with T. Caron to discuss same and presentations (.9); to court and discuss issues and proposed order with Truist counsel and J. Hirsch counsel (.6); attend court hearing (1.5); post-hearing follow-up with T. Caron concerning motion to establish a Ponzi scheme (.4) | 795.00 | 3.80 | 3,021.00 |
| 01/17/2025 | NG | Correspondence with T. Caron to consider how to bring the determination of Ponzi motion before the court from a ripeness standpoint as it also appears to be a request for a declaratory judgment when these are usually determined by federal prosecutions and plea agreements binding in the bankruptcy case | 795.00 | 0.50 | 397.50 |
| 01/21/2025 | NG | Review and consider lengthy phone message from Bob Brennan regarding claims against Hirsch & Tucker and discuss with T. Caron regarding same (.6); review lengthy motion and confirmation order in various cases where parties sought an adverse inference of a Ponzi scheme without law enforcement prior determinations (1.5) and discuss with T. Caron basis for doing the same and implications (.4); review tax implications and how the loss is realized from a Ponzi scheme (.4) and discuss with T. Caron (.1); call to Bob Brennan (.1) | 795.00 | 3.10 | 2,464.50 |
| 01/22/2025 | NG | Review and consider correspondence and comment from Soneet about the Ponzi scheme presumption | 795.00 | 0.40 | 318.00 |
| | NG | Correspondence with T. Caron regarding Hirsch & Tucker (.1); telephone conference call with Bob Brennan as counsel for Hirsch & Tucker and T. Caron (.8) | 795.00 | 0.90 | 715.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 01/25/2025 | NG | Review and consider draft motion to establish Ponzi scheme and make numerous comments and outline revisions (1.8); correspondence to T. Caron regarding same (.4); again review transcript of July 30 hearing in connection with this motion (.9) | 795.00 | 3.10 | 2,464.50 |
| 01/27/2025 | NG | Correspondence with T. Caron regarding working draft of motion for Ponzi scheme determination (.2); further review and revise the draft (1.3); correspondence to T. Caron regarding same (.6) | 795.00 | 2.10 | 1,669.50 |
| 01/28/2025 | NG | Correspondence with T. Caron regarding revisions to working draft of motion for determination of a Ponzi scheme (.2); read over and make further revisions (.7); correspondence with forensic accountants regarding same (.1); further correspondence with T. Caron regarding same (.2); telephone conference with T. Caron regarding working draft, Broker 2004s, and claim objections (1.1); correspondence to T. Caron with law review article on some of our topics (.1); correspondence (x2) to T. Caron regarding tax issues and comments thereon (.4) | 795.00 | 2.80 | 2,226.00 |
| 01/29/2025 | NG | Discussion with T. Caron regarding preliminary claims analysis before Rule 2004 exams are taken and pursuing non-claimant investors (.5); continued work on draft on motion for Ponzi scheme determination (.6) | 795.00 | 1.10 | 874.50 |
| 01/31/2025 | NG | Review and consider settlement correspondence regarding Motti (.2); prepare for zoom conference with T. Caron and forensic accountants regarding claim objections, discovery needs, motion for Ponzi scheme determination, Motti offer, etc, (1.2); further telephone conference with T. Caron regarding foregoing (.4); final review and editing of motion for determination (.4) | 795.00 | 2.20 | 1,749.00 |
| 02/03/2025 | NG | Review entered order on Rule 2004 motion of Truist Bank | 795.00 | 0.10 | 79.50 |
| | NG | Continued review and revisions to working draft of Ponzi scheme determination motion (.8); prepare correspondence to T. Caron regarding same (.3); review and respond to further correspondence from same (.1) | 795.00 | 1.20 | 954.00 |
| 02/04/2025 | NG | Review filed motion for Ponzi determination (.2); review and consider proposed form motion for rule 2004 exam and document production, the document production list, etc. (.6) correspondence and discussions with T. Caron regarding filed motion and prospective Rule 2004 motion form, document production list, examination issues, etc. (.8) | 795.00 | 1.60 | 1,272.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 02/05/2025 | NG | Review and consider updated motion for rule 2004 exam and document production definitions and list and outline further revisions to same (.7); correspondence from T. Caron regarding court hearing dates and scheduling of Rule 2004 exams and respond thereto (.4); phone conference with T. Caron regarding foregoing and the further revisions to the rule 2004 motion, definitions and production list (.3); correspondences from and to T. Caron regarding status conference to be held on March 6 and what it may involve, affect on the rule 2004 exams being scheduled, etc. (.4) | 795.00 | 1.80 | 1,431.00 |
| 02/06/2025 | NG | Review court notice of the status conference | 795.00 | 0.10 | 79.50 |
| | NG | Review correspondence of Mark Horoupian and trustee detailed responses | 795.00 | 0.20 | 159.00 |
| 02/07/2025 | NG | Correspondence with T. Caron regarding which depositions should first be taken | 795.00 | 0.40 | 318.00 |
| 02/11/2025 | NG | Correspondence with T. Caron regarding rule 2004 examinations, document productions, logistics, substantive issues, etc. (.6); review seven filed motions and proposed orders (.6); correspondence with T. Caron regarding same (.1) | 795.00 | 1.30 | 1,033.50 |
| 02/12/2025 | NG | Review nine more Rule 2004 filed motions and proposed orders (.6); correspondence with T. Caron regarding same and logistics (.2) | 795.00 | 0.80 | 636.00 |
| 02/14/2025 | NG | Review three more Rule 2004 filed motions and proposed orders (.2); review correspondence to and from M. Robl concerning conducting Rule 2004 of his client in Atlanta (.2); memo to P. Bicknell regarding depositions and document production procedures and to retain the court reporter (.2) | 795.00 | 0.60 | 477.00 |
| 02/18/2025 | NG | Review four more Rule 2004 motions and proposed orders that have been filed (.4); review and consider correspondence and scheduling log from T. Caron for the 2004 exams and comment thereon and make further suggestions (.7); review correspondence from T. Caron regarding Mazo creditor and analyze release in order to determine if he is a required creditor (.6); telephone call with T. Caron regarding same (.5) | 795.00 | 2.20 | 1,749.00 |
| 02/19/2025 | PB | Correspondence regarding request for a court reporter for deposition on August 1, and details concerning same | 285.00 | 0.40 | 114.00 |
| | PB | Correspondence to office services to reserve conference room for B.R. 2004 Examination of Frederick Halperin and set up for virtual | 285.00 | 0.30 | 85.50 |
| | NG | Correspondence with T. Caron regarding Mazo release issue and scheduling of conference call with forensic accountants to review updated report (.2); review and consider updated report (1.3) | 795.00 | 1.50 | 1,192.50 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Review numerous orders entered by the court for 2004 exams | 795.00 | 0.50 | 397.50 |
| 02/20/2025 | NG | Call from and discussion with F. Rabhan regarding issues with how investors are understating their recoveries from MLG (.3); telephone discussion with T. Caron regarding same and in preparation for conference call with forensic accountants (.4) | 795.00 | 0.70 | 556.50 |
| 02/21/2025 | NG | Continued review of preliminary analysis of forensic accountants (1.4); zoom meeting with T. Caron and forensic accountants to discuss same and whether to make demand on six investors who were fully redeemed by MLG, structure of the demand, amount of the demand, waiver of 502(h) claims, preparation for status conference, etc. (1.0); review further analysis chart from forensic accountants (.7); follow-up discussion with T. Caron (.2) | 795.00 | 3.30 | 2,623.50 |
| 02/24/2025 | NG | Review four entered orders on Rule 2004 exams and a hearing notice on J. Hirsch motion to depose forensic accountants (.3); correspondence with T. Caron regarding foregoing (.1); review confirmation the motion will be withdrawn (.1) | 795.00 | 0.50 | 397.50 |
| | NG | Telephone conference with M. Horoupian and T. Caron regarding upcoming Rule 2004's and document productions | 795.00 | 0.90 | 715.50 |
| 02/25/2025 | NG | Exchange correspondence with T. Caron regarding filing of leave of absences (.2); review withdrawal of the motion by J. Hirsch to depose our forensic accountants (.1) | 795.00 | 0.30 | 238.50 |
| 02/26/2025 | NG | Correspondence from T. Caron and document review of documents produced by Mike Barr (.6); draft response correspondence (.2) | 795.00 | 0.80 | 636.00 |
| 03/04/2025 | NG | Correspondence with T. Caron regarding teleconference with James Banter (.2); teleconference with T. Caron regarding preparation for hearing (.5); review notes, cases and pending motion (1.2) | 795.00 | 1.90 | 1,510.50 |
| 03/05/2025 | NG | Confer with T. Caron in preparation for the status conference (1.5); review file and cases in preparation for status conference (2.7) | 795.00 | 4.20 | 3,339.00 |
| 03/06/2025 | NG | Meet with T. Caron in preparation for the status conference (1.1); meet with James Banter prior to the hearing (.5); meet with Truist counsel prior to the status conference and thereafter (.3); represent the trustee at the status conference (1.3); confer with T. Caron thereafter (.4); return travel to Atlanta (did not bill for trip to Savannah) (4.5) | 795.00 | 8.10 | 6,439.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 03/07/2025 | NG | Conference call with T. Caron regarding documentation and evidence needed to pursue the six investors who were fully redeemed during the reach back period by payment from MLG itself, and whether Rule 2004 exams and document production should be utilized (.5); review and consider her updated analysis (.6); draft response (.2); review reply from T. Caron regarding her view of the analysis and draft further reply (.2); review additional correspondence and analysis from T. Caron and research the issues she has raised (.7); draft response to T. Caron that we can only pursue three out of the six investors earlier identified and why that is so (.5) | 795.00 | 2.70 | 2,146.50 |
| 03/13/2025 | NG | Work on edits to demand letters to non-released investors (.6); review court email notice of further status conference in late July (.1); discussions with T. Caron regarding foregoing and upcoming conference call with counsel to Locker (.9); review and consider data and analysis in preparation for conference call with Locker attorneys (.6); telephone conference with Locker attorneys from Thompson Hines (.5); telephone conference with T. Caron in follow-up to the conference call and additional Rule 2004 exams (.4) | 795.00 | 3.10 | 2,464.50 |
| 03/14/2025 | NG | Review and consider updated draft of template of the demand letter to investors who were not released but received redemptions from MLG and correspond with T. Caron regarding same (.4); review Rule 2004 of Mazo (.2); review correspondence from T. Caron regarding deposition date in Atlanta for Mazo (.1); memo to P. Bicknell regarding same (.1) | 795.00 | 0.80 | 636.00 |
| 03/17/2025 | PB | Correspondence to Court Reporter to reserve court reporting servicing for the B.R. 2004 Examination of Lewis Mazo and provide details concerning same; correspondence to Office services to reserve conference room | 285.00 | 0.60 | 171.00 |
| 03/18/2025 | NG | Review and consider settlement correspondence from Jonathan Hawkins of Thompson Hine, counsel to Lockers (.5); prepare correspondence to T. Caron regarding same and review her response (.2); telephone conference with T. Caron to discuss revisions (.4); review correspondence to and from J. Hawkins (.1) | 795.00 | 1.20 | 954.00 |
| | NG | Review motion and order on Lewis Mazo Rule 2004 and discuss with T. Caron; memo to P. Bicknell to make arrangements and order court reporter | 795.00 | 0.20 | 159.00 |
| | NG | Settlement discussion with Lewis Mazo in response to trustee's demand letter to him (.6); confer with T. Caron thereafter regarding settlement parameters (.3); review and consider correspondence from T. Caron regarding claim against Lewis Mazo and determine how to approach settlement (.4); calls to Lewis Mazo (.1) | 795.00 | 1.40 | 1,113.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Further telephone settlement conference with Lewis Mazo in response to demand letter (.7); follow up discussion with T. Caron regarding resolution of claim (.2); correspondence to Lewis Mazo (.3) | 795.00 | 1.20 | 954.00 |
| 03/19/2025 | NG | Review correspondence from Lewis Mazo regarding settlement conditioned on review by counsel | 795.00 | 0.10 | 79.50 |
| 03/20/2025 | NG | Exchange correspondences with T. Caron regarding additional claimants to pursue and depositions of same and others who have filed POCs (.5); correspondence with T. Caron regarding documents being produced to her by F. Halperin whose deposition I am to take in Atlanta (.2) | 795.00 | 0.70 | 556.50 |
| 03/21/2025 | NG | Review document production from Mike Robl, counsel to Fred Halperin, who is likely the largest net loser and begin analysis for his Rule 2004 exam (1.4); correspondence to forensic accountants to enlist their expert assistance (.2) | 795.00 | 1.60 | 1,272.00 |
| 03/24/2025 | NG | Review notice of status conference in Savannah on July 29th at 1PM | 795.00 | 0.10 | 79.50 |
| 03/26/2025 | NG | Review documents, bank records, proof of claim and documents attached thereto in preparation for Rule 2004 exam of the Fred Halperin IRA (1.7); correspondence and discussion with Kevin Mccoy, forensic accountant in preparation for same (.6); correspondence to Halperin attorney Mike Robl (.3); review and consider response (.1) | 795.00 | 2.70 | 2,146.50 |
| | NG | Review, consider and respond to counsel for Mazo and Patel, respectively | 795.00 | 0.30 | 238.50 |
| 03/27/2025 | NG | Review and consider revisions to Locker settlement documents (.4); memo to T. Caron regarding same (.1) | 795.00 | 0.50 | 397.50 |
| | NG | Further discussion with T. Caron | 795.00 | 0.20 | 159.00 |
| 03/28/2025 | NG | Multiple correspondences with T. Caron regarding settlement negotiations following demand letters, upcoming depositions, and revisions to proposed Locker settlement agreement (.5); telephone conference with T. Caron regarding foregoing, additional exhibits for the Halperin deposition, status of Mazo settlement, etc. (.6) | 795.00 | 1.10 | 874.50 |
| 03/29/2025 | NG | Review 15 more Rule 2004 motions being filed | 795.00 | 0.80 | 636.00 |
| 03/30/2025 | PB | Copy and mark exhibits and prepare files for Rule 2004 examination of Frederick Halperin and prepare List of Exhibits | 285.00 | 2.80 | 798.00 |
| 03/31/2025 | NG | Correspondences with T. Caron, L. Wolgast for Mazo, counsel for Patel, counsel for Halperin regarding depositions and documents | 795.00 | 0.60 | 477.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Review and consider further correspondence from Halperin counsel regarding documents and 2004 exam (.4); review and consider really aggressive and attack mode letter from Lisa Wolgast for Lewis Mazo (.4); telephone conference with T. Caron regarding foregoing issues raised and how to address, ongoing deposition and claims resolution issues with the challenge of being consistent through so many different fact patterns, and likely response to each possible scenario (1.3); draft correspondence to Halperin counsel (.2) | 795.00 | 2.30 | 1,828.50 |
| 04/01/2025 | NG | Continued review of documents, some just produced, and outline questions and exhibits for Rule 2004 examination of F. Halperin (1.8); meet with and conduct examination of F. Halperin and discuss case and claim thereafter with his counsel (1.9); travel to Savannah (2.1--one half of travel time); meet with T. Caron and K. McCoy regarding preparation for 11 depositions tomorrow (1.2); continued preparation (1.6) | 795.00 | 8.60 | 6,837.00 |
| | PB | Print, prepare, organize and mark additional exhibits for B.R. 2004 examination of Frederick Halperin (2.2) and attend and assist N. Gordon with examination (1.9) | 285.00 | 4.10 | 1,168.50 |
| 04/02/2025 | NG | Continued preparation for conducting eleven Rule 2004 exams (1.7); confer with T. Caron and Keven Mccoy in preparation for same (.5); travel to UST offices for examinations (.2); work with T. Caron to arrange and organize exhibits (.6); conduct eleven Rule 2004 examinations (8.5); confer with T. Caron and K. McCoy thereafter regarding results and strategy (.6) | 795.00 | 12.10 | 9,619.50 |
| 04/03/2025 | NG | Prepare for another nine Rule 2004 examinations (1.9); confer with T. Caron and K. McCoy regarding same (.5); work with T. Caron to select and organize exhibits (.6); conduct eight Rule 2004 exams (one deponent did not show) regarding multiple claims for some of them (5.7); return to Atlanta (2.1 --one-half of travel time); review and consider correspondence from T. Caron about how to respond to investors whose attorney has approached the trustee regarding a resolution of the anticipated claim objection (.4); draft response with suggested reply to opposing counsel (.1) | 795.00 | 11.30 | 8,983.50 |
| 04/07/2025 | NG | Correspondence with Locker attorneys regarding hearing for impending settlement (.3); review Mazo claim and recovery issues ahead of conference call with his counsel, Lisa Wolgast and discuss with T. Caron ahead of the call (.4); telephone conference call with Lisa Wolgast (.5); discuss with Tiffany thereafter regarding predicted outcome but how to address alternative scenarios (.3); note Henry Sewell's appearance for David Kahn (.1) | 795.00 | 1.60 | 1,272.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 04/08/2025 | NG | Review three amended Aronson claims (.5); memo to T. Caron regarding same (.1); review correspondence from Aronson counsel regarding amended claims (.1); correspondence with Henry Sewell for the Kahn claimants (.2); review additional Rule 2004 motions (.4); review eighteen additional Rule 2004 motions (.9); | 795.00 | 2.20 | 1,749.00 |
| 04/15/2025 | NG | Correspondence with T. Caron regarding Lewis Mazo matter and lack of response from his counsel (.2); calls to and discussion with L. Wolgast (.2); correspondence to T. Caron regarding same (.1); correspondence from Patel counsel requesting more time (.1); discussion with T. Caron regarding foregoing and need for deposition examinations of both Mazo and Patel (.2); review six orders on Rule 2004 exams (.2); review and consider correspondence to Patel counsel, Amy Lee Copeland with all the details of the claim against him (.2) | 795.00 | 1.20 | 954.00 |
| 04/16/2025 | NG | Review and respond to correspondence from Patel counsel, Amy Lee Copeland | 795.00 | 0.20 | 159.00 |
| | NG | Review docket entry regarding transcript from hearing on March 6 | 795.00 | 0.10 | 79.50 |
| 04/17/2025 | NG | Review chart of Patel investment and pay history (.2); discuss with T. Caron for upcoming settlement conference call with Patel counsel (.2); telephone conference call with Patel counsel and T. Caron (.3); follow up call with T. Caron following settlement conference with Patel counsel and further strategy with Mazo (.5); review correspondence from Patel counsel and discuss that with T. caron as well (.2); discuss with T. Caron the upcoming depositions (.2) | 795.00 | 1.60 | 1,272.00 |
| 04/22/2025 | NG | Discuss with T. Caron employment of Venable for the remaining litigation matter against Lewis Mazo whose attorney has shown no interest in resolving the dispute on teh terms previously agreed to before she was employed (.3); correspondence to Paul Battista at Venable regarding same (.1) | 795.00 | 0.40 | 318.00 |
| 04/24/2025 | NG | Telephone conference with P. Battista and T. Caron regarding Mazo dispute and imminent litigation (.9); discussion with T. Caron regarding same and tolling agreements on all three pending matters (.2); prepare memo to P. Bicknell regarding foregoing and to outline terms to include in form of tolling agreement to forward to T. Caron to have finalized and executed (.3) | 795.00 | 1.40 | 1,113.00 |
| 04/27/2025 | NG | Review settlement correspondence from Amy Lee Copeland; memo to T. Caron regarding same | 795.00 | 0.20 | 159.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 04/28/2025 | NG | Based on insistence of Mazo counsel that he be served with a subpoena for his Rule 2004 examination and document production, research the requirements for the subpoena by a court in a district different from where the deposition will be taken but near to the deponent (.5); review correspondence from T. Caron and, at her request, proposed Rule 9019 motion and order with Patel (.2); discuss same with T. Caron and the tolling agreement process, the situation with Mazo and the need for a subpoena, amended Rule 2004 motion etc., and the likelihood that a motion to quash subpoena and/or for protective order will be filed in an attempt to run out the clock on the statute of limitations (.5); draft memo to P. Bicknell regarding foregoing and the need for a process server, witness fee and mileage, etc. (.2); follow-up correspondence with T. Caron (.2); review correspondence to attorney Copeland (.1); review filing of new Rule 2004 motion against Mazo and correspondence to Mazo counsel (. 2) | 795.00 | 1.90 | 1,510.50 |
| 04/29/2025 | NG | Exchange correspondences with T. Caron regarding scheduling of depositions, need for formal motion or not with certain deponents, and service of subpoena on Mazo (.2); review entered order on Mazo amended rule 2004 (.1); review issued subpoena for Mazo(.2); correspondence with T. caron regarding tolling agreements (.2) | 795.00 | 0.70 | 556.50 |
| 04/30/2025 | NG | Correspondence from Amy Lee Copeland regarding settlement for Patel (.1); correspondence with T. Caron regarding tolling agreements (.1); review from T. Caron and comment on proposed Rule 9019 motion and order regarding settlement with Patel (.3); review and complete subpoena for Mazo (.2); correspondence with T. Caron regarding service of same and timing of filing settlement motions (.2); review requirements for the process server and the witness fee and mileage check (.4); correspondence to T. Caron regarding same and to have the lawsuit prepared just in case (.2) | 795.00 | 1.50 | 1,192.50 |
| | PB | Research and determine the amount of witness fee and mileage reimbursement and submit check request for same | 285.00 | 0.60 | 171.00 |
| 05/01/2025 | PB | Correspondence to process server regarding instructions for completing service of process upon Lewis Mazo for Rule 2004 examination and document production | 285.00 | 0.50 | 142.50 |
| 05/02/2025 | NG | Review and consider motion to quash subpoena filed by Mazo counsel as expected to run out the clock on the two year statute of limitations (.7); prepare memo to T. Caron and request legal research on certain issues such as discovery rule on extending reach-back on avoidable transfers (.3) | 795.00 | 1.00 | 795.00 |
| 05/04/2025 | NG | Begin review of case law on Mazo issues (1.6); discuss with T. Caron preliminary review of law and additional research that is needed, likely court hearing date(s) on the motion to quash (.5) | 795.00 | 2.10 | 1,669.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 05/05/2025 | NG | Travel to Savannah (4.3--no charge for return trip of 4.5); prepare for fourteen depositions (1.8) | 795.00 | 6.10 | 4,849.50 |
| 05/06/2025 | NG | Confer with T. Caron and K. McCoy regarding the fourteen upcoming upcoming examinations (.6); conduct those examinations under Rule 2004 (7.8); confer thereafter with T. Caron and K. McCoy (.5); prepare for examinations tomorrow to cover investors holding sixteen claims (1.5); review closing docket entry for Pruco adversary proceeding (.1) | 795.00 | 10.50 | 8,347.50 |
| 05/07/2025 | NG | Exchange correspondence with Lisa Wolgast regarding Mazo (.2); confer with T. Caron and K. McCoy ahead of the examinations (.5); take the Rule 2004 examinations covering holders of 16 investment claims (3.9); research issue raised by L. Wolgast as part of her effort to "run out the clock" (.8); memo to T. Caron regarding section 108(a) kills the Mazo argument and request that she perform additional legal research (.2); exchange correspondence with T. Caron regarding positions of the investors earlier deposed today that are moving in the direction of withdrawing and amending claims (.2) | 795.00 | 5.80 | 4,611.00 |
| 05/08/2025 | NG | Review and consider emergency motion to quash (.5); review hearing notice for May 13 (.1); telephone conference with T. Caron to discuss the motion and trustee's response, evidence needed, etc. (.7); begin review of documentation (.6) | 795.00 | 1.90 | 1,510.50 |
| 05/09/2025 | NG | For the emergency hearing, research on the issue raised by Mazo's counsel that the trustee cannot reach back more than four years, and confirm that she is wrong and the trustee is correct (4.4); correspondence to T. Caron regarding foregoing and summarizing cases (1.1); review response correspondence from T. Caron (.1) | 795.00 | 5.60 | 4,452.00 |
| 05/12/2025 | NG | Continued legal research on issues raised by motion to quash (4.2); meet with T. Caron to review the legal research and outline anticipated issues to prepare for with respect to the emergency hearing tomorrow (1.2) | 795.00 | 5.40 | 4,293.00 |
| 05/13/2025 | NG | Outline presentation and rebuttal points for anticipated presentation on the emergency motion to quash the subpoena (1.6); confer with T. Caron prior to the hearing and review some supplemental research (.5); to court to represent the bankruptcy estate in the lengthy hearing on emergency motion to quash (4.5); travel back to Atlanta (3.5 --travel time for trip to Savannah not billed) | 795.00 | 10.10 | 8,029.50 |
| 05/14/2025 | PB | Correspondence to Court Reporting Firm regarding scheduling court reporter for BR 2004 examination of Lewis Mazo (.30); correspondence to reception regarding details concerning reservation of conference room (.20) | 285.00 | 0.50 | 142.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Correspondence with L. Wolgast to set the deposition place and time (.2); correspondence from T. Caron requesting that I review and edit the proposed order denying the motion to quash the trustee's subpoena and review and consider same and provide my edits and comments (.5); review final version (.1) | 795.00 | 0.80 | 636.00 |
| 05/15/2025 | NG | Review and consider correspondence and completely different order (and ruling) set forth in version of proposed order just drafted by Lisa Wolgast and draft some revised language and send to and discuss with t. Caron (.5); review our revised version (x2) and advise T. Caron (x2) of my agreement to send the last version to I. Wolgast and the Court (.3); review T. Caron correspondence to Lisa Wolgast and to the Court (.1); review various correpondence from opposing counsel regarding the proposed order and their correspondence to the court as well (.1) | 795.00 | 1.00 | 795.00 |
| 05/16/2025 | NG | Review corresondence from the court regarding both sides having submitted orders; review docket entry for request for transcript of hearing by Leon Jones for J. Hirsch. | 795.00 | 0.20 | 159.00 |
| | NG | Review docket entry on transcript of 5/13/25 hearing being ordered by Leon Jones for J. HIrsch (.1); correspondence with T. Caron and calls to Leon Jones regarding same (.2) | 795.00 | 0.30 | 238.50 |
| 05/19/2025 | NG | Review and consider multi-point settlement offer from L. Mazo that is about 10% of the original agreed amount and based on a delusional view of the law, and draft correspondence to T. Caron with suggested several part response (.8); discuss further with T. Caron (.6); draft further response (several versions) for trustee to make to Mr. Mazo (1.0) | 795.00 | 2.40 | 1,908.00 |
| | NG | Review filed amended claims to resolve issues with clients of H. Sewell (.2); correspondence with T. Caron regarding additional Rule 2004 exams for July (.2); | 795.00 | 0.40 | 318.00 |
| | PB | Telephone call from attorney for Victor Belogorska regarding the release signed by him on April 2, 2025 (.20); review of follow up correspondence from Ms. Currie regarding same and memo to T. Caron regarding same (.20) | 285.00 | 0.40 | 114.00 |
| 05/20/2025 | NG | Review revised and finalized response correspondence to Mr. Mazo and comment thereon (.2); consider the drafting the complaint or an outline of it before the examination of Mazo to ensure we ask all the necessary questions, what to require if he advises that he will settle on the original terms and how to document same on an expedited basis, necessity of a tolling agreement, etc. (1.3); discussion with T. Caron regarding foregoing (.2); follow up correspondence to and from same concerning foregoing (.2) | 795.00 | 1.90 | 1,510.50 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Review additional motions for 2004 exams and document productions and address need for some to be virtual (.3); consider documents to be produced by Mazo and documents to be marked as exhibits and outline same (1.2) prepare memo to P. Bicknell regarding foregoing and to coordinate with Mazo counsel, Lisa Wolgast, the documents to be produced, the exhibits needed that we already have and that are still to be produced, the order of the exhibits etc. (1.3) | 795.00 | 2.80 | 2,226.00 |
| 05/21/2025 | PB | Correspondence to Lisa Wolgast, counsel for Mr. Mazo regarding the status of document production | 285.00 | 0.20 | 57.00 |
| | PB | Review and consider N. Gordon memos and begin preparation for document production and exhibits (1.5); discuss with N. Gordon (.2) | 285.00 | 1.70 | 484.50 |
| 05/22/2025 | PB | Print out and review Order Denying Motion to Quash Subpoena of Lewis Mazo | 285.00 | 0.40 | 114.00 |
| | PB | Review N. Gordon memo to pause same while a settlement with Mazo is finalized and documented and discuss with same | 285.00 | 0.20 | 57.00 |
| | NG | Review and consider entered 16 page order and entered judgment on motion to quash and consider how they might help or otherwise affect anticipated renewal of settlement negotiations (.7); discussions with T. Caron regarding same and upcoming settlement discussions (.6); telephone conference with L. Wolgast regarding settlement terms and follow-up with T. Caron regarding same (1.0); review and consider settlement term sheet from L. Wolgast and discuss same with T. Caron (.4); review T. Caron's agreed further response to L. Wolgast (.2); telephone conference with T. Caron regarding implementation and other issues such as impact on other settlements and claim objections to be filed, pending deposition, and explaining such impact (.5); draft memo to P. Bicknell regarding developments and to hold in abeyance the Mazo deposition and document production in view of agreed (in principal) settlement (.2) | 795.00 | 3.60 | 2,862.00 |
| 05/23/2025 | NG | Review addtional Rule 2004 motions for examinations and document productions filed with the court (.2); further clarifying memo to P. Bicknell regarding status of settlement with Mazo and and his 2004 (.2)review our proposed tolling agreement (.2); review correspondence from L. Wolgast with her redrafted tolling agreement (with numerous unnecessary revisions) and the proposed settlment agreeement, etc. (.8); correspondence to T. Caron with comments on these proposed agreements and problem provisions (.6); follow-up correspondence with T. Caron regarding foregoing (.3) | 795.00 | 2.30 | 1,828.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 05/27/2025 | NG | Review five orders entered on Rule 2004 motions and scheduled for July examinations and two more motions (.3); review amended claims to resolve objections that would be filed otherwise (.2); correspondence with T. Caron regarding whether Mazo has accepted the terms and we can cancel the court reporter (.2); memo to P. Bicknell regarding still monitoring and not to cancel yet (.1); review and consider proposed revision to tolling agreement raised by Mazo counsel and response (.2) | 795.00 | 1.00 | 795.00 |
| 05/28/2025 | NG | Review five orders on 2004 exams and note files accordingly (.2); review our final revisions to the settlement documents and pleadings with Mazo (.2); review Mazo counsel's further revisions to the motion, order, notice, etc. (.4); discussion with T. Caron regarding finalizing of motion and order, tolling agreement, etc. (.4); further discussion regarding upcoming examination of claim holders under Rule 2004 (.3); discussion with T.Caron regarding records preservation and storage (.2) | 795.00 | 1.70 | 1,351.50 |
| 05/29/2025 | NG | Review correspondence from T. Caron, and review filed settlement motions and hearing notices and docket entries for same (.2); correspondence from and to T. Caron regarding probate issues (.2); discussion with T. Caron regarding foregoing and trying to get $1 MM claim resolved (.50) | 795.00 | 0.90 | 715.50 |
| 06/02/2025 | NG | Review scheduled hearings for July 29 (.2); review memos from T. Caron with status of numerous depositions set for July 17-18 that I am to conduct (.2) | 795.00 | 0.40 | 318.00 |
| 06/03/2025 | NG | Correspondence with James Banter and T. Caron regarding probate estate claim filed by trustee in probate case and by probate estate in MLG case | 795.00 | 0.20 | 159.00 |
| 06/04/2025 | NG | Review withdrawal of claims and amendments to claims and impact on whether exams go forward (.2); correspondence with T. Caron regarding probate claim (.1) | 795.00 | 0.30 | 238.50 |
| 06/09/2025 | NG | Review withdrawal of Marcia Hirsch claim (No. 101) and whether she still needs to be deposed | 795.00 | 0.20 | 159.00 |
| | NG | Review and consider correspondence from the SEC regarding results and conclusions with respect to its investigation, and prepare correspondence to T. Caron regarding same | 795.00 | 0.40 | 318.00 |
| 06/11/2025 | NG | Review amended and withdrawn proof of claim and consider impact on Rule 2004s | 795.00 | 0.30 | 238.50 |
| 06/15/2025 | NG | Review claim amendments just filed and determine impact on discovery and claim objections | 795.00 | 0.20 | 159.00 |

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

Tiffany E. Caron, Chapter 7 Trustee

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 06/26/2025 | NG | Correspondence with trustee and James Banter (.1); review claims withdrawn or amended to zero (.1); telephone conference with T. Caron and James Banter regarding probate estate issue (.5); follow-up phone conference with T. Caron regarding foregoing and upcoming depositions and court hearing (.3) | 795.00 | 1.00 | 795.00 |
| 06/30/2025 | NG | Review claims that have been amended or withdrawn and impact on examinations or resolutions (.3); correspondence with T. Caron regarding same and upcoming examinations (.2) | 795.00 | 0.50 | 397.50 |
| 07/03/2025 | NG | Review withdrawn and amended claims (.2); review T. Caron correspondence to F. Halpern counsel (.1); correspondence with T. Caron regarding foregoing (.2) | 795.00 | 0.50 | 397.50 |
| 07/10/2025 | NG | Discuss with T. Caron the upcoming examinations and document productions in Savannah, revised schedule of examinations, exhibits needed, etc. | 795.00 | 0.40 | 318.00 |
| 07/16/2025 | NG | To Savannah for two days of depositions/Rule 2004 exams (3.8: did not bill much longer return trip); confer with T. Caron and K. McCoy regarding examinations and document productions as well as outstanding matters for upcoming court hearing (.9); prepare for taking the examinations of the holders of 23 claims (1.9) | 795.00 | 6.60 | 5,247.00 |
| 07/17/2025 | NG | Confer with T. Caron and K. Mccoy in preparation for examinations of holders of 23 claims (1.4); continued preparation for same (1.8); take depositions under Rule 2004 of holders of 23 claims (3.5); confer with trustee and K. Mccoy thereafter regarding results of same and further strategy (.7); at trustee's request, draft lengthy correspondence to Slatus' counsel Howard Ehrenberg explaining and outlining in bullet point fashion why it was a Ponzi scheme from the outset (1.0); review reply from Ehrenberg (.1); review response from T. Caron (.1); preparation for Rule 2004 exams for the next day of the holders of 13 claims (1.5) | 795.00 | 10.10 | 8,029.50 |
| 07/18/2025 | NG | Continued preparation for today's Rule 2004 exams (2.1); meet with T. Caron and K. McCoy to discuss and plan for same (.8); Conduct examinations (4.1); further correspondence regarding Ponzi scheme from the start (.5); confer with T. Caron thereafter (.6); review several claims amended or withdrawn as a result of the examination (.2); confer with T. Caron regarding upcoming hearings and preparation for same (.2) | 795.00 | 8.50 | 6,757.50 |
| 07/20/2025 | NG | Review several withdrawn and amended claims in response to the examinations taken of the claimants | 795.00 | 0.30 | 238.50 |
| 07/21/2025 | NG | Review several more amended and withdrawn claims in response to Rule 2004 exams | 795.00 | 0.20 | 159.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 07/22/2025 | NG | Review and consider correspondence from T. Caron regarding further claims being amended or withdrawn, and follow up on the two investor hold outs and timing as well as the probate claim, and draft response | 795.00 | 0.30 | 238.50 |
| | NG | Discussion with Greg Hays regarding fee application hearing (.2) and discuss with T. Caron handling of hearing with him being absent due to his recent appointment as SEC receiver in the First Liberty Building and Loan Ponzi scheme case with $140 Million of investors and that her responsibilities as trustee require her to review and report to the court any issues (.2) | 795.00 | 0.40 | 318.00 |
| 07/23/2025 | NG | Review additional amended and withdrawn claims (.2); correspondence with T. Caron regarding probate claim continuing issues (.2); correspondence with T. Caron regarding Belogorska claim and correspondence directly with his counsel (.2) | 795.00 | 0.60 | 477.00 |
| 07/24/2025 | NG | Correspondence with T. Caron regarding probate claim and upcoming conference call with James Banter | 795.00 | 0.20 | 159.00 |
| | NG | Confer with D. Bury, counsel to Ms. Aronson, regarding developments, status, hallmarks of the Ponzi scheme from day one, etc. (.4); correspondence to T. Caron regarding same (.1); review correspondence with Howard Ehrenberg (.1); review numerous newly withdrawn or amended claims (.2) | 795.00 | 0.80 | 636.00 |
| 07/25/2025 | NG | Review additional withdrawn and amended claims (.3); correspondence with T. Caron regarding upcoming phone call phone call with probate counsel James Banter (.2); later phone call with T. Caron to discuss Aronson and the few remaining claim holders who have delayed claim resolution and not committed to any course of action our and strategy with respect to same (.4); phone conference call with T. Caron and James Banter, Hirsch probate court counsel, regarding status of bankruptcy and probate estates, respectively, and resolving the claim for $1 MM filed in the bankruptcy case and getting that withdrawn, authorization to announce a resolution at the upcoming hearing, etc. (.7); follow-up telephone conference call with T. Caron regarding foregoing (.4); review further withdrawn and amended claims (.2) | 795.00 | 2.20 | 1,749.00 |
| 07/28/2025 | NG | Travel to Savannah (3.8 --return trip not billed): prepare for hearing on three settlement motions, status of case in general and Ponzi scheme presumption in particular as well as have input into the Hays compensation application (2.4) | 795.00 | 6.20 | 4,929.00 |
| 07/29/2025 | NG | Correspondence with T. Caron regarding morning conference before the hearing and status conference | 795.00 | 0.20 | 159.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Review five amended or withdrawn claims and factor in for the hearing and note appearance of counsel for probate estate (.3); confer with T. Caron in preparation for the status conference and hearings (1.2); further prepare for status conference and hearings (1.1); to court for hearing and status conference and confer with attorney for probate estate and investors who are present (.5); attend hearing and status conference and advocate for the Estate eview additional (1.4); review amended and withdrawn claims (.2); confer with T. Caron regarding upcoming conference calls with remaining disputed claims and further hearings (.5); preparation for conference call with Aronson counsel tomorrow (.6) | 795.00 | 5.80 | 4,611.00 |
| 07/30/2025 | NG | Prepare for phone call with representatives of Barbara Aronson (1.0); review and consider correspondence with T. Caron and Louise Howard counsel, Maggie Puccini regarding net loss methodology and amending claim to the amount we are showing (.2); conference call with T. Caron, K. Mccoy, Mike Skinner, T. Norton, D. Bury and others regarding overview of case, Ponzi scheme hallmarks, the Aronson claims specifically, methodology being employed their contra position, etc. (1.0); review follow-up correspondence with Estate's analysis of the Aronson claims (.5) | 795.00 | 2.70 | 2,146.50 |
| 07/31/2025 | NG | Prepare for conference call on the Belagorska claim (.7); review more amended and withdrawn claims (.2); confer with T. Caron ahead of phone call (.3); conference call with counsel for Belagorska , Harshila Leva, and T. Caron (.4) | 795.00 | 1.60 | 1,272.00 |
| 08/01/2025 | NG | Review and consider proposed Rule 9019 motion with probate estate and discuss with T. Caron (.3); review and correpsondence and data from forensic team concerning the Aronson claims (.7); discussion with T. Caron regarding same and how to resolve (.4); review amended claims and correspond with T. Caron regarding same (.2); review correspondence to Aronson counsel with our demand for the claims to be amended to the amounts set forth and explained in the correspondence, and his reply (.3) | 795.00 | 1.90 | 1,510.50 |
| 08/04/2025 | NG | Review orders entered on all three settlements; correspondence with T. Caron regarding same (.2); review Eva Locker amended claim consistent wit term of settlement (.1); correspondence with T. Caron regarding scheduling of hearings on outstanding matters (.2) | 795.00 | 0.50 | 397.50 |
| 08/05/2025 | NG | Review docket entries on rescheduled hearings for open matters and calendar same | 795.00 | 0.20 | 159.00 |
| 08/07/2025 | NG | Review and consider correspondence from Mark Horoupian for the Jacobowitz clan (.6); memo to K. McCoy regarding same (.1) | 795.00 | 0.70 | 556.50 |
| 08/08/2025 | NG | Monitor correspondence with Lisa Wolgast and revise order being proposed, and with mark Horoupian and Keven Mccoy | 795.00 | 0.30 | 238.50 |
| | NG | Correspondence with T. Caron regarding scheduling settlement conferences with remaining holdouts | 795.00 | 0.20 | 159.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 08/11/2025 | NG | Correspondence with opposing counsel to schedule settlement conferences | 795.00 | 0.20 | 159.00 |
| 08/12/2025 | NG | Prepare for settlement conference regarding the Halperin claims (.7); discuss with T. Caron regarding same in preparation for conference call (.3); settlement conference call with T. Caron, F. Halperin and his counsel Max Bowen (.3); follow up correspondence with forensic accountant Kevin McCoy regarding foregoing (.2); review correspondence from James Banter regarding probate estate's comments and edits to Rule 9019 motion (.2) | 795.00 | 1.70 | 1,351.50 |
| 08/13/2025 | NG | Review and consider our forensic accounting analysis and correspondence with resolution of claim proposal to Halperin counsel and consider same and likely response (.3); correspondence to T. Caron regarding foregoing (.1); review correspondence (x3) from Halperin counsel, Max Bowen, regarding their initial analysis and response (.2) | 795.00 | 0.60 | 477.00 |
| 08/14/2025 | NG | Review updated claim analysis of net losses for F. Halperin and correspondence with counsel for same (.4); review correspondence from counsel for Belagorska (.1) | 795.00 | 0.50 | 397.50 |
| 08/18/2025 | NG | Review and consider lengthy and detailed report and response of forensic accountants regarding issues raised by Adam Jacobowitz through counsel Mark Horoupian (.6); correspondence to D. Bury for Aronson, and review and consider his response that our proposed resolution will likely be accepted (.2) | 795.00 | 1.80 | 1,431.00 |
| 08/19/2025 | NG | Review amended claim for Fred Halperin and correspondence from his counsel, and respond thereto; correspondence to T. Caron regarding same | 795.00 | 0.30 | 238.50 |
| 08/20/2025 | NG | Correspondence from and to D. Bury regarding accepting our proposed resolution of the Aronson claims and prepare correspondence to T. Caron regarding same (.2); correspondence from Mark Horoupian for the Jacobowitz group of claims regarding accepting our proposed resolution and amending the claims accordingly (.2); monitor response from T. Caron (.1); correspondence to T. Caron regarding foregoing and few remaining claims still to be resolved (.2) | 795.00 | 0.70 | 556.50 |
| 08/21/2025 | NG | Review and consider correspondence with work list from T. Caron | 795.00 | 0.30 | 238.50 |
| 08/22/2025 | NG | Review filed amended claims and correspond with T. Caron regarding same | 795.00 | 0.20 | 159.00 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 08/26/2025 | NG | Review and consider correspondence from James Banter with his proposed revisions to Rule 9019 motion and proposed consent order (.6); draft correspondence to T. Caron setting forth my concerns (.3); exchange correspondence with T. Caron regarding same (.2); exchange correspondence with James Banter (.1) | 795.00 | 1.20 | 954.00 |
| 08/27/2025 | NG | Correspondence with James Banter and Tiffany Caron regarding probate claim resolution (.2); discuss with T. Caron regarding same and in preparation for conference call tomorrow with probate counsel and also discuss likely claim objections as to those claims not already amended or withdrawn (.5) | 795.00 | 0.70 | 556.50 |
| 08/28/2025 | NG | Monitor correspondence with D. Bury about whether Aronson claims are being amended or an objection must be filed | 795.00 | 0.20 | 159.00 |
| | NG | Review three amended Aronson claims and confirm filed in accordance with our methodology (.3); correspond with T. Caron regarding foregoing (.1); conference call with T. Caron, James Banter and Senator Kennedy regarding probate estate issues in the bankruptcy case and bankruptcy estate issues in the probate case (.6); review, consider and comment on red-line of proposed motion and order and comment thereon (.3) | 795.00 | 1.30 | 1,033.50 |
| 09/03/2025 | NG | Review amended claim and correspond with T. Caron regarding same and remaining 14 claims not yet acted on | 795.00 | 0.20 | 159.00 |
| 09/04/2025 | NG | Review just amended claim and correspond with T. Caron regarding same and remaining claims still to be amended or withdrawn (down to just 13 now) and deadline before an objection is filed | 795.00 | 0.20 | 159.00 |
| | NG | Review six more claim withdrawals and amendments and confirm done in accordance with our methodology (.5); correspondence with T. Caron regarding same and confirm now down to just 7 claims for 3 groups of claimants still to be amended, withdrawn or objected to (.2) | 795.00 | 0.70 | 556.50 |
| 09/05/2025 | NG | Correspondence with probate counsel James Banter | 795.00 | 0.20 | 159.00 |
| 09/08/2025 | NG | Review further amended claims and docket entries regarding same and correspond with T. Caron regarding foregoing and remaining claims that will need objections (.3); review correspondence from Aronson counsel Tom Norton and response (.2) | 795.00 | 0.50 | 397.50 |
| 09/09/2025 | NG | Correspondence with T. Caron regarding outstanding claims still to be resolved; correspondence to James Banter regarding status of motion and release to resolve the probate claim | 795.00 | 0.20 | 159.00 |
| 09/10/2025 | NG | Review withdrawal of five claims and correspond with T. Caron regarding no claim objections will be needed unless probate counsel reneges | 795.00 | 0.20 | 159.00 |

Statement Date: 03/06/2026
Statement No. 937563
Tiffany E. Caron, Chapter 7 Trustee
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 09/11/2025 | NG | Review corrected docket entries to show withdrawals of claims (.1); review T. Caron correspondence and updated red-line of proposed motion with probate estate and note and correspond back with correction (.3); correspondence with T. Caron regarding probate estate attorney now being out on paternity leave until 9/26/25 and our options (.2) | 795.00 | 0.60 | 477.00 |
| 09/17/2025 | NG | Correspondence and phone discussions with T, Caron regarding hold-up on resolution with probate estate and how to proceed initially (.4); telephone conference with Erin Woodside (one of the probate counsel) regarding issues outstanding and the timing (.2); followup discussion with T. Caron (.1) | 795.00 | 0.70 | 556.50 |
| 09/29/2025 | NG | Correspondence with T. Caron and from her to probate counsel (x2) regarding delay in responding and suggest in further correspondence to T. Caron that we prepare the documents that were to have been by them prepared a month ago | 795.00 | 0.40 | 318.00 |
| 09/30/2025 | NG | Correspondence with T. Caron regarding probate court settlement issues and documents (.2); review, consider and make revisions to proposed motion and release agreement (.7); discussion with T. Caron regarding same (.6); review final drafts of foregoing and corresondence to probate counsel (.2) | 795.00 | 1.70 | 1,351.50 |
| 10/03/2025 | NG | Review and consider correspondence and red-lined versions of proposed Rule 9019 motion and settlement/release agreement (.8); correspondence to T. caron regarding the same (.1) | 795.00 | 0.90 | 715.50 |
| 10/06/2025 | NG | Review and discuss the redline version of the settlement and release (and draft 9019 motion) with T. Caron and agree on inserted provisions that are offensive and a step backwards (.8); draft letter to James Banter regarding the same and why we are ending further efforts to resolve this such as the redline representing regression instead of progression, the many months of wasted time, and the lack of responsiveness by probate counsel for weeks at a time --only to make no progress despite being told months earlier that they would consent to withdrawal of their claim (.6); review and consider response of James Banter and draft my further reply concerning the dispute (.7) | 795.00 | 2.10 | 1,669.50 |
| 10/07/2025 | NG | Review correpondence from T. Caron and exchange correspondence with same and James Banter (x5) (.3); review and comment on the proposed objection to claim #99 and proposed order and advise to make corrections and file them (.4); prepare for telephone settlement conference with James Bates (.7); represent the bankruptcy estate in the settlement conference (.8) | 795.00 | 2.20 | 1,749.00 |
| 10/08/2025 | NG | Review and consider new redline version of settlement and release agreement (.5); correspondence to T. Caron regarding possible additional issues (.2) | 795.00 | 0.70 | 556.50 |

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| | NG | Discuss proposed additional redline with T. Caron (.4); review correspondence to James Banter with new redline of motion and settlement/release agreement (.4) | 795.00 | 0.80 | 636.00 |
| 10/14/2025 | NG | Correspondence with T. Caron and to James Banter regarding status of his review of the settlement/release agreement for the probate estate | 795.00 | 0.20 | 159.00 |
| 10/17/2025 | NG | Review and consider correspondence and redline from James Banter of settlement and release agreeement, motion and proposed order, and response of T. Caron (.6); call T. Caron and draft text to her and correspondence to all regarding a further revision needed to the proposed order (.2) | 795.00 | 0.80 | 636.00 |
| 10/20/2025 | NG | Review and consider final version for execution from James Banter; draft response and draft correspondence to T. Caron | 795.00 | 0.30 | 238.50 |
| 10/21/2025 | NG | Correspondence with T. Caron regarding completion of settlement agreement, motion and order and filing of same (.2); review docket entries related thereto and correspondence from T. Caron regarding hearing date for the objection to claim and Rule 9011 motion (.2) | 795.00 | 0.40 | 318.00 |
| 10/23/2025 | NG | Review Synergy status with John Christy | 795.00 | 0.20 | 159.00 |
| 11/03/2025 | NG | Correspondence with T. Caron regarding upcoming hearings and what impact the shutdown and furloughs would have on proceeding with the scheduled matters | 795.00 | 0.20 | 159.00 |
| 12/03/2025 | NG | Discussion with John Christy concerning remaining payments and balance due by his client Synergy/R. Brennan (.2); telephone conference with T. Caron regarding upcoming hearings and case strategy thereafter (.5) | 795.00 | 0.70 | 556.50 |
| 12/08/2025 | NG | Review and preparation for hearings (.7); correspondence (x5) with James Banter and Tiffany Caron (.5); meet with T. Caron to review hearing preparation and presentation depending on how much detail the court might want to hear and the Estate's plans for distributions (.8) | 795.00 | 2.00 | 1,590.00 |
| 12/09/2025 | NG | Meet with T. Caron to further review the level of detail and disclosure if the court also wants to treat the hearings as an overall status conference (.7); to court for court clalendar and hearings and confer with attorneys, T. Caron, and investors present before and after (2.7); to airport and return trip to Atlanta office (did not bill the trip to Savannah) (5.4) | 795.00 | 8.80 | 6,996.00 |
| 12/10/2025 | NG | Discussion with John Christy regarding payment due from his client and whether any interest in a discounted, accelerated payment schedule | 795.00 | 0.20 | 159.00 |

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

Tiffany E. Caron, Chapter 7 Trustee

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 12/11/2025 | NG | Review filed withdrawal of motion to determine Ponzi scheme (.1); correspondence from and to Howard Ehrenberg regarding same (.2) | 795.00 | 0.30 | 238.50 |
| 12/12/2025 | NG | Review, consider and respond to correspondence from Dave Bury's firm regarding withdrawal of Ponzi scheme determination motion and their unhappiness about it | 795.00 | 0.60 | 477.00 |
| 12/24/2025 | NG | Review and consider correspondence from John Christy, counsel to R. Brennan/Synergy, requesting extension of deadline to make the next installment payment of $750,000 and possible accelerated payment of the balance (.4); telephone conference call with T. Caron regarding foregoing and advise on response for her to make and dictate the response (.6); review further reply from John Christy regarding same and discuss the reply with T. Caron (.2) | 795.00 | 1.20 | 954.00 |
| 01/02/2026 | NG | Review docket entries just posted for results of hearing held last month | 795.00 | 0.10 | 79.50 |
| 01/06/2026 | NG | Review docket entries on disallowance of probate claim 99 and approval of settlement | 795.00 | 0.10 | 79.50 |
| | NG | Review docket entries related to fee application of debtor counsel that had been contested by the trustee | 795.00 | 0.10 | 79.50 |
| 01/08/2026 | NG | Review docket entry on amended probate estate claim to zero | 795.00 | 0.10 | 79.50 |
| 01/13/2026 | NG | Correspondence with T. Caron regarding developments and whether interim distributions should be made or defer to a final distribution and explain varying scenarios with my recommendation | 795.00 | 0.60 | 477.00 |
| 01/20/2026 | NG | Review trustee's interim report | 795.00 | 0.10 | 79.50 |
| 01/30/2026 | NG | Correspondence from John Christy counsel to Synergy and correspond and discuss with T. Caron (.4); phone conference with John Christy and T. Caron (.2); monitor correspondence between T. Caron and J. Christy (.2) | 795.00 | 0.80 | 636.00 |
| 02/09/2026 | NG | Discussions with T. Caron regarding her presentation to the court or answers to anticipated questions concerning status and distributions | 795.00 | 0.30 | 238.50 |
| 02/11/2026 | NG | Correspondence with T. Caron regarding outcome of hearing and options if payment is not made by Synergy | 795.00 | 0.20 | 159.00 |
| 02/17/2026 | NG | Review and consider correspondence from Aronson counsel, Thomas Norton | 795.00 | 0.20 | 159.00 |
| 02/20/2026 | NG | Correspondence with trustee regarding abandonment being filed | 795.00 | 0.20 | 159.00 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | | Rate | Hours | |
|---|---|---|---|---|---|
| 02/25/2026 | NG | Monitor correspondence between T. Caron and J. Christy (.1); call from and discussion with Fred Halperin (.2) | 795.00 | 0.30 | 238.50 |
| 02/27/2026 | NG | Monitor corresponence (x8) between T. Caron and J. Christy, counsel to Synergy, regarding missed payment deadlines and new arrangements and respond thereto and be ready to engage futher | 795.00 | 0.60 | 477.00 |
| 03/03/2026 | NG | Monitor correspondence with T. Caron and J, Christy regarding Synergy situation | 795.00 | 0.20 | 159.00 |
| | | FOR PROFESSIONAL SERVICES RENDERED | | 1092.60 | 781,763.00 |

| | | |
|---|---|---|
| 08/17/2023 | Federal Express - Invoice #8-230-94950 | 17.70 |
| 08/17/2023 | Federal Express - Invoice #8-230-94950 | 17.70 |
| 12/27/2023 | Travel Expenses Dated 11/29-11/30/23 reimbursement paid to Neil Gordon - Savannah, Georgia - Airfare, Hotel, Uber, Airport Parking - Court Hearings | 1,288.70 |
| 12/27/2023 | Travel Expenses Dated 11/07-11/09/23 reimbursement paid to Neil Gordon - Savannah, Georgia - Airfare, Hotel, Uber, Airport Parking - Court Hearings | 1,301.01 |
| 12/27/2023 | Travel Expenses Dated 08/9-08/10/23 reimbursement paid to Neil Gordon - Savannah, Georgia - Hotel - Court Hearings | 313.36 |
| 12/27/2023 | R/T Mileage (539 miles) Dated 08/09-08/10/23 reimbursement paid to Neil Gordon - Savannah, Georgia - Court Hearings | 353.04 |
| 03/06/2024 | Travel Expenses reimbursement paid to Neil Gordon - Savannah, Georgia - Court Hearings | 502.34 |
| 04/01/2024 | Travel Expenses reimbursement paid to Neil Gordon - Depos & Trustee Prep - Savannah, Georgia - Airfare, Hotel, Uber, Meals, Airport Parking | 1,724.61 |
| 05/15/2024 | Mediation Meal paid to Jimmy John's w/Neil Gordon | 106.14 |
| 07/09/2024 | Travel Expenses reimbursement paid to Neil gordon - Savannah, Georgia - Meet w/Ponzi Scheme Creditors - Airfare, Taxi, Airport Parking | 633.04 |
| 07/29/2024 | Travel Expenses to Savannah, Georgia paid to Neil Gordon - Court Hearing - Airfare, Hotel, Airport Parking - 07/29-07/30/24 | 809.42 |
| 07/29/2024 | Fee paid to AMEX Centurion ATL - Private Phone Conference Call w/Dave Berry, T.Caron - Hearing | 50.00 |
| 01/15/2025 | Travel Expense reimbursement paid to Neil Gordon - Savannah, Georgia - Meeting w/Client & Hearing - Airfare, Hotel, Rideshare, Meals, Airport Parking - 01/15-01/16/25 | 1,217.63 |
| 03/05/2025 | Travel Expense reimbursement paid to Neil Gordon - Savannah, Georgia for Hearing - Airfare, Hotel, Rideshare, Meals w/Client, Airport Parking - 03/05-03/06/25 | 1,139.09 |
| 04/01/2025 | Travel Expenses reimbursement paid to Neil Gordon - Savannah, Georgia - Depos w/client, expert accountant - Airfare, Hotel, Rideshare, Meals, Airport Parking - 04/01-04/03/25 | 1,695.41 |
| 04/10/2025 | Court Reporting paid to D'Amico & Associates, Inc - invoice #DM25-794 - Deposition of Frederick Halperin (4.01.25) | 592.64 |
| 04/30/2025 | Witness Fee paid to Lewis Mazo - ck#35596 | 56.56 |
| 05/02/2025 | Expedited Service of Process fee paid to Randall George - invoice #425156 - Served: LEWIS MAZO | 125.00 |
| 05/05/2025 | Travel Expenses reimbursement paid to Neil Gordon - Savannah, Georgia - Depositions - Airfare, Hotel, Meals w/Client & Expert Witness, Taxi, Airport Parking | 2,136.95 |
| 05/12/2025 | Travel Expenses reimbursement paid to Neil Gordon - emergency Hearing on Motion - Savannah, Georgia - Airfare, Hotel, Rideshare, Meal w/client, Airport Parking - 05/12-05/13/25 | 1,385.45 |

Tiffany E. Caron, Chapter 7 Trustee

Statement Date: 03/06/2026
Statement No. 937563
Account No. 85279.0000

| | | |
|---|---|---|
| 07/16/2025 | Travel Expenses reimbursement paid to Neil Gordon - Savannah, Georgia - Meeting w/Trustee & Depos - Airfare, Hotel, Rideshare, Meals, Airport parking - 07/16-07/18/25 | 1,773.39 |
| 07/28/2025 | Travel Expenses reimbursement paid to Neil gordon - Court Hearing - Savannah, Georgia - Airfare, Hotel, Rideshare, Airport Parking | 999.22 |
| 12/09/2025 | Travel Expenses paid to Neil Gordon for trip to Savannah to meet trustee and attend court (Meals, Hotel, Taxi, Parking, & Flight) | 1,146.67 |
| | TOTAL EXPENSES/COSTS ADVANCED | 19,385.07 |

| DATE | TIMEKEEPER | UNBILLED TRAVEL TIME* | RATE | HOURS | TOTAL |
|---|---|---|---|---|---|
| 8/9/2023 | NG | Travel to Savannah | $ 795.00 | 3.8 | $ 3,021.00 |
| 11/7/2023 | NG | Travel to Savannah | $ 795.00 | 3.2 | $ 2,544.00 |
| 11/29/2023 | NG | Travel to Savannah | $ 795.00 | 3.2 | $ 2,544.00 |
| 3/6/2024 | NG | Return Travel to Atlanta | $ 795.00 | 3.6 | $ 2,862.00 |
| 4/1/2024 | NG | Return Travel to Atlanta | $ 795.00 | 3.9 | $ 3,100.50 |
| 7/9/2024 | NG | Travel to Savannah | $ 795.00 | 4.9 | $ 3,895.50 |
| 7/29/2024 | NG | Return Travel to Atlanta | $ 795.00 | 3.2 | $ 2,544.00 |
| 1/15/2025 | NG | Return Travel to Atlanta | $ 795.00 | 4.5 | $ 3,577.50 |
| 3/5/2025 | NG | Travel to Savannah | $ 795.00 | 4.5 | $ 3,577.50 |
| 4/1/2025 | NG | Return Travel to Atlanta | $ 795.00 | 3.2 | $ 2,544.00 |
| 5/5/2025 | NG | Return Travel to Atlanta | $ 795.00 | 4.5 | $ 3,577.50 |
| 5/12/2025 | NG | Travel to Savannah | $ 795.00 | 3.5 | $ 2,782.50 |
| 7/16/2025 | NG | Return Travel to Atlanta | $ 795.00 | 3.8 | $ 3,021.00 |
| 7/28/2025 | NG | Return Travel to Atlanta | $ 795.00 | 3.8 | $ 3,021.00 |
| 12/9/2025 | NG | Travel to Savannah | $ 795.00 | 4.9 | $ 3,895.50 |
| | | | | 58.5 | $ 46,507.50 |

**Attorney and Paralegal Summary**

| Name | | Rate | Hours | Total Amount |
|---|---|---|---|---|
| Bicknell, Pamela E. | PB | $ 285.00 | 32.8 | $ 9,348.00 |
| Ford, Angela G. | AF | $ 285.00 | 1.3 | $ 370.50 |
| Gordon, Neil C.* | NG | $ 795.00 | 893.6 | $ 710,412.00 |
| Rezac, John K. | JKR | $ 575.00 | 73.6 | $ 42,320.00 |
| Rezac, John K. | JKR | $ - | 0.5 | $ - |
| Rowland, Natalie R. | NRR | $ 450.00 | 136.7 | $ 61,515.00 |
| Walker, Tempestt | TW | $ 225.00 | 0.2 | $ 45.00 |
| Wiegel, Daniel | DW | $ 350.00 | 11.2 | $ 3,920.00 |
| Wolgast, Lindsey M. | LMW | $ 200.00 | 1.7 | $ 340.00 |
| | | **TOTAL** | 1151.6 | $ 828,270.50 |

taylor | duma

**Taylor Duma LLP**
1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 | Fax: 770.434.7376 | www.taylorduma.com

Tiffany E. Caron, Chapter 7 Trustee
P. O. Box 711
West Palm Beach, FL 33402

| | |
|---|---|
| Statement Date: | March 24, 2026 |
| Statement No. | 939370 |
| Account No. | 85279.0000 |
| Federal ID No. | 201310229 |

Attn: Tiffany E. Caron, Chapt

Re: Master Lending Group, LLC (Case No. 23-40

**PREVIOUS BALANCE BROUGHT FORWARD** $801,148.07

| Date | | Description | Rate | Hours | |
|---|---|---|---|---|---|
| 03/09/2026 | NG | Continue monitoring correspondence with Synergy counsel John Christy and extended deadlines for payment having lapsed | 795.00 | 0.20 | 159.00 |
| 03/10/2026 | NG | Phone conference with T. Caron regarding default by Synergy and Read Brennan and potential remedies and strategies (.7); telephone conference call with T, Caron and John Christy regarding foregoing (.2); follow-up communications with both (.2) | 795.00 | 1.10 | 874.50 |
| 03/11/2026 | NG | Correspondence with T. Caron regarding continuing default by Read Brennan and Synergy and review prospective loan documents and personal guaranties (.8); telephone conference with T. Caron regarding foregoing (.4) | 795.00 | 1.20 | 954.00 |
| 03/23/2026 | NG | Telephone conference with T. Caron and Francesca Macchiaverna regarding background, information available, known assets, collection strategies etc., with respect to Read Brennan and Synergy | 795.00 | 1.20 | 954.00 |
| 03/24/2026 | NG | Further correspondence with T. Caron and J. Christy | 795.00 | 0.30 | 238.50 |
| | | FOR PROFESSIONAL SERVICES RENDERED | | 4.00 | 3,180.00 |
| | | TOTAL CURRENT FEES AND COSTS | | | 3,180.00 |
| | | **Balance Due**................................ | | | $804,328.07 |

EXHIBIT
tabbies
"A2"

Statement Date: 03/24/2026
Statement No. 939370
Account No. 85279.0000

Tiffany E. Caron, Chapter 7 Trustee

**Attorney and Paralegal Summary**

| Name | | Rate | Hours | Total Amount |
|---|---|---|---|---|
| Gordon, Neil C. | NG | $ 795.00 | 4 | $3,180.00 |
| | | **TOTAL** | 4 | $3,180.00 |

**Attorney-Client Privileged Communication**

**Please send payment within 15 days of receiving this invoice**

**Please access our secure online payment portal at https://taylordumabilling.com **if experiencing an error code on the portal; please clear your cache by pressing ctrl+shift+r while on the website.****

**Payment questions: 678-336-7258 - Kim Zaring**
**Billing questions: kzaring@taylorduma.com**

# Gordon & Pettie LLC

1600 Parkwood Circle, Suite 500
Atlanta, GA 30339

# INVOICE

INVOICE # 8
Date: 07/21/2026
Due On: 08/20/2026

**Tiffany E. Caron, Chapter 7 Trustee**
215 Pilgrim Road
West Palm Beach, FL
33405

## 85279.0000

### MASTER LENDING GROUP, LLC (23-40569-EJC)

## Services

| Date | Attorney Name | Description | Quantity | Rate (USD) | Total (USD) |
|---|---|---|---|---|---|
| 03/23/2026 | Neil Gordon | Review assets of Read Brennan from probate/will of his late father or as offered as a source of recovery from him or his LLC interests (.8); telephone conference with T. Caron and attorney Francesca Macchiaverna re background and legal strategies for having her employed as special collections counsel (1.2) | 2.00 | $795.00 | $1,590.00 |
| 03/25/2026 | Neil Gordon | Discussion with T. Caron status of default by Read Brennan and possible employment of special counsel for collection of Savannah obligor and recommend F. Macchiaverna | 0.40 | $795.00 | $318.00 |
| 04/12/2026 | Neil Gordon | Review entered order on application to employ special counsel | 0.20 | $795.00 | $159.00 |
| 04/17/2026 | Neil Gordon | Review and consider from T. Caron negotiation history with Read Brennan and Synergy and more recently with special collection counsel (.5); discuss with T. Caron trustee's demand, opposing counsel's response and counter proposal and suggest a mid-point interim resolution (.5) | 1.00 | $795.00 | $795.00 |



EXHIBIT
"A3"

| Date | Attorney Name | Description | Quantity | Rate (USD) | Total (USD) |
|---|---|---|---|---|---|
| 04/17/2026 | Neil Gordon | Review with T. Caron substitution of counsel and comment on proposed motion and order. | 0.20 | $795.00 | $159.00 |
| 04/24/2026 | Neil Gordon | Review order of substitution and docketing of same and related entries | 0.30 | $795.00 | $238.50 |
| 05/14/2026 | Neil Gordon | Review complaint to recover from Synergy and Brennan almost $2.7 million. | 0.30 | $795.00 | $238.50 |
| 05/14/2026 | Neil Gordon | Correspondence with trustee re upcoming hearing | 0.10 | $795.00 | $79.50 |
| 05/20/2026 | Neil Gordon | Review entered orders and attachments on interim distributions to investors and trustee | 0.20 | $795.00 | $159.00 |
| 06/14/2026 | Neil Gordon | Correspondence with T. Caron and Soneet Kapila re interim fee applications for counsel and accountants | 0.30 | $795.00 | $238.50 |
| 06/15/2026 | Neil Gordon | Discussions with T. Caron re Read Brennen/Synergy forbearance proposal and how to structure, risks, gaps in the discussion thus far that need to be addressed, risk or a bankruptcy filing, etc. | 0.50 | $795.00 | $397.50 |
| 06/16/2026 | Neil Gordon | Begin reviewing the voluminous case file for preparation of an interim fee application and begin outlining events to include in the application's narrative | 5.40 | $795.00 | $4,293.00 |
| 06/16/2026 | Angela Ford | Commence preparation of attorney interim fee application | 4.60 | $290.00 | $1,334.00 |
| 07/01/2026 | Neil Gordon | Strategy conference with T. Caron re remaining issues in the case and applicable 11th Circuit case law | 1.10 | $795.00 | $874.50 |
| 07/16/2026 | Angela Ford | Continue work on attorney interim fee application | 5.70 | $290.00 | $1,653.00 |
| 07/17/2026 | Neil Gordon | Review file and work on preparation of lengthy interim fee application | 7.20 | $795.00 | $5,724.00 |

| Date | Attorney Name | Description | Quantity | Rate (USD) | Total (USD) |
|---|---|---|---|---|---|
| 07/20/2026 | Neil Gordon | Continued work on interim fee application | 3.20 | $795.00 | $2,544.00 |
| 07/21/2026 | Angela Ford | Continue work on interim fee application | 1.50 | $290.00 | $435.00 |
| 07/21/2026 | Neil Gordon | Continued work on interim fee application | 4.20 | $795.00 | $3,339.00 |
| | | | | **Services Subtotal** | **$24,569.00 USD** |

## Attorney Summary

| Time Keeper | Position | Quantity | Rate (USD) | Total (USD) |
|---|---|---|---|---|
| Neil Gordon | Attorney | 26.60 | $795.00 | $21,147.00 |
| Angela Ford | Non-Attorney | 11.80 | $290.00 | $3,422.00 |
| | | | **Services Subtotal** | **$24,569.00 USD** |

| | |
|---|---|
| **Quantity Total** | 38.40 |
| **Total** | **$24,569.00 USD** |

Please make all amounts payable to: Gordon & Pettie LLC

Thank you for your business!

**NEIL C. GORDON** — Admitted to Georgia Bar in 1979. Education: University of Florida (B.S.B.A. cum laude, 1976); University of Georgia (J.D. 1979). Law Clerk to Hon. Robert L. Vining, Jr., Judge, U.S. District Court, Northern District of Georgia, 1979-81; **Publications:** Co-Author, "*Law v. Siegel* Dicta Leads Lower Courts Astray," American Bankruptcy Institute Journal, Vol. XXXIV, No. 2 (February 2015); Co-Author, "When Can the Statute of Limitations for Avoidance Actions Be Extended?" American Bankruptcy Institute Journal, Vol. XXXII, No. 5 (June 2013); Co-Author, "*Schwab v. Reilly* Two Years Later: Appellate Opinions on Appreciation and 100 Percent of FMV," American Bankruptcy Institute Journal, Vol. XXXI, No. 9 (October 2012); Author, "Section 362(h) Does Not Deprive a Trustee of Standing to Void a Lien," American Bankruptcy Institute Journal, Vol. XXIX, No. 10 (December 2010/January 2011); Author, "An Overview of Mortgage and Finance Fraud for Trustees," in *Mortgage and Finance Fraud Litigation Strategies* (Thomson Reuters/Aspatore Books 2010); Author, "The Art of the Carve-Out," NABTalk, Vol. 25, No. 1 (Spring 2009); Co-Author, "New Tax Laws Affecting Home Sales Give Chapter 7 Trustees Long Overdue Relief" , Bankruptcy Court Decisions, Vol. 32, No. 20 (July 28, 1998); Co-Author, "Maximizing Returns for Estate Creditors by Minimizing Taxes: Exclusion of Gain from the Sale of the Debtor's Principal Residence", NABTalk, Vol. 16, No. 3 (Fall, 2000); Co-Author, "Recent Cases," Journal of the American Bankruptcy Trustee, Quarterly Publication of National Association of Bankruptcy Trustees (NABT 2003-2022). **Member:** Atlanta Bar Association, Bankruptcy Law Section (Chair 1992-1993, Board Member 1988-1994); State Bar of Georgia; American Bankruptcy Institute (Legislation Committee Co-Chair 2013-2015); National Association of Bankruptcy Trustees (Board Director 2000-2014; Executive Committee 2006-2014; Secretary 2006-2007; Treasurer 2007-2008; Vice-President 2008-2011; President 2011-2012; Immediate Past President 2012-2013; Past President Director 2013-2014); Panel, United States Trustees; Fellow, American College of Bankruptcy, 2008-present; Master of the Bench, W. Homer Drake Georgia Bankruptcy American Inn of Court; Full Member, National Association of Federal Equity Receivers; Chapter 7 Subcommittee of the ABI Commission on Reform of Consumer Bankruptcy Law, 2017-2018; Advisory Board

**EXHIBIT "B"**

member (one of eleven) to Professor Lois R. Lupica on her study commission by NCBJ and ABI entitled Consumer Bankruptcy Fee Study addressing the "Costs of BAPCPA," (December 2011). Also: 2021-2025 Lawdragon 500 Leading Bankruptcy & Restructuring Lawyers; 2023 Georgia Trend's Legal Elite.

**Seminar Presentations:** "Tales from the Crypto: A Guide and Discussion," ABI SE Workshop, Amelia Island, Florida (July 20-23, 2023); "Recent Court Rulings of Interest," Chapter 7 Panel Trustee Training – Northern District of Georgia, Atlanta, Georgia (August 11, 2022); "Case Law Update," Region 16 Webinar (February 11, 2022); "Post-Filing Issue Spotting: Consumer Practice Extravaganza (CPEX), ABI Conference, Indianapolis, Indiana (November 12, 2021); "Abandonment," The W. Homer Drake, Jr. Georgia Bankruptcy Inn of Court, Atlanta, Georgia (February 11, 2021); "Case Law Update," NABT Virtual Annual Conference (August 27, 2020); "Hot Trustee Topics in Consumer Cases," NCBJ Annual Conference, Washington, D.C. (November 1, 2019); "Suing Universities to Recover Tuition Paid for Adult Children," 22nd Annual Bankruptcy Seminar, Macon, Georgia (September 20, 2019); "Unscheduled Product Liability (and Other) Claims in Reopened Cases," 22nd Annual Bankruptcy Seminar, Macon, Georgia (September 20, 2019); "Case Law Update," NABT Annual Conference, Denver, Colorado (August 23, 2019); "Annual Panel Trustee Seminar: A Training Day in LA," Region 16 Chapter 7 Panel Trustee Training, Los Angeles, California (June 27, 2019); "Current Development/Recent Case Law Panel," Region 21 Chapter 7 Panel Trustee Training, Orlando, Florida (June 6-7, 2019); "Key Takeaways from the American Bankruptcy Institute's Commission on Consumer Bankruptcy Report," The Bench and Bar Committee, Atlanta, Georgia (May 6, 2019); "Tuition Clawback by Bankruptcy Trustees: The Focus Points for this Growing Litigation," Emory Bankruptcy Developments Journal Symposium, Atlanta, Georgia (February 21, 2019); "Case Law Update," Law Education Institute, Snowmass, Colorado (January 2-6, 2019); "Oh, Let Me Count the Days: Calculating Deadlines and Reach-back Periods in Avoidance and Other Actions," Cobb County Bar Association, Marietta, Georgia (November 30, 2018); "Avoiding and Recovery Payments Made for Adult Children," Cobb County Bar Association, Marietta, Georgia (November 30, 2018); "Suing Universities (and Others) to Recover the Tuition Payments Made for Adult Children," The

W. Homer Drake, Jr. Georgia Bankruptcy Inn of Court, Atlanta, Georgia (October 25, 2018); "Treatment of Product Liability and Similar Claims in Bankruptcy in a Reopened Case: (a) Are the Claims Property of the Estate, (b) If So, What Exemption Can Be Claimed, and (c) the Role of Judicial Estoppel," The W. Homer Drake, Jr. Georgia Bankruptcy Inn of Court, Atlanta, Georgia (October 25, 2018); "Recent Developments/Case Law Updates," Chapter 7 Panel Trustee Training – Northern District of Georgia, Atlanta, Georgia (September 14, 2018); "Case Law Update," NABT Convention, Amelia Island, Florida (August 16, 2018); "Trustee Litigation – A Powerful Tool," Region 21 Trustee Training Webinar (March 28, 2018); "The Powerball Jackpot (Case Law Update)," NABT Spring Seminar, Las Vegas, Nevada (February 23, 2018); "Exemptions," "Consumer Case Law Update," and "Business Case Law Update," National CLE Conference in conjunction with the Colorado Bar Association and the Law Education Institute, Vail, Colorado (January 3-7, 2018); "Oh, Let Me Count the Days: Calculating Deadlines and Reachback Periods in Avoidance and Other Actions, Consumer and Business Bankruptcy Institute, Reynolds Plantation, Georgia (December 14, 2017);"Bankruptcy Avoidance Actions," National Association of Attorney Generals, Savannah, Georgia (November 15, 2017); "Case Law Update," NABT Convention, New Orleans, Louisiana (September 15. 2017); "Shark Tank: The Case for Increasing Chapter 7 Trustee Compensation," American Bankruptcy Institute 22nd Annual Southeast Bankruptcy Workshop, Hilton Head Island, South Carolina (July 30, 2017); "Case Law Update," NABT Spring Seminar, Rio Grande, Puerto Rico (March 3, 2017); "Case Law Update," Law Education Institute (LEI) Conference, Snowmass, Colorado (January 4-8, 2017); "Exemptions," American Bankruptcy Institute Winter Leadership Conference, Rancho Palos Verdes, California (December 1-3, 2016); "Obligations of Trustees in Fulfilling Their Fiduciary Duties," American Inns of Court (November 17, 2016); "Simply the Best: Case Law Update," NABT Annual Convention, San Diego, California (September 9, 2016); "Exemption Issues in Chapter 13," NACTT 51st Annual Conference, Philadelphia, Pennsylvania (July 23, 2016); "Dismissal and Conversion Issues," NACTT 51st Annual Conference, Philadelphia, Pennsylvania (July 22, 2016); "Recent Cases: Case Law Update," NABT Spring Seminar, Atlanta, Georgia (April 8, 2016); "Avoidance and Recovery Actions Across the Chapters: Roles & Perspectives of Trustees," American

Inns of Court Winter Program, Atlanta, Georgia (January 26, 2016); "Exemption Law – Immunity to Treat Creditors with Impunity or the Privilege of Fresh Start" and "Case Law Update: Commercial/Business," Law Education Institute (LEI) Conference, Vail, Colorado (January 6-10, 2016); "So You Thought You Understood Exemptions!" Cobb County Bar Association, Marietta, Georgia (October 10, 2015); "Does *Law v. Siegal* Really Stand for That?," National Conference of Bankruptcy Judges 89th Annual Meeting, Miami, Florida (September 27-30, 2015); "Exemptions" and "Case Law Update," NABT Annual Convention, Chicago, Illinois (August 27-29, 2015); "Case Law Update," United States Trustee Region 21-Northern District of Georgia Trustee Training (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Atlanta, Georgia (August 21, 2015); "Case Law Update," NABT Spring Seminar, Charleston, South Carolina (February 27, 2015); "How to Approach Banks about Short Sales and Carve-Outs," American Bankruptcy Institute Conference, Tulane University, New Orleans, Louisiana (January 19, 2015); "Case Law Update," Law Education Institute (LEI) Conference, Vail, Colorado (January 7-11, 2015); "Zip Lining through the Tough issues in Avoiding a Preference or Set-Off," Institute of Continuing Legal Education in Georgia, Greensboro, Georgia (October 23, 2014); "Current Consumer Trends & Practices," American College of Bankruptcy, National Conference of Bankruptcy Judges 88th Annual Meeting, Chicago, Illinois (October 8, 2014); "The Nuts & Bolts of Chapter 11," American Bankruptcy Institute Workshop, Salt Lake City, Utah (September 12, 2014); "Case Law Update," NABT Annual Convention, Salt Lake City, Utah (September 12, 2014); "Case Law Update," United States Trustee Region 3 Trustee Training (includes Delaware, New Jersey, and Pennsylvania Trustees), Harrisburg, Pennsylvania (June 6, 2014); "Case Law Update," United States Trustee Region 21-Northern District of Georgia Trustee Training (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Atlanta, Georgia (May 9, 2014); "The Nuts & Bolts of Chapter 11," American Bankruptcy Institute Southeast Seminar, Coral Gables, Florida (April 5, 2014); "Case Law Update," NABT Spring Seminar, Coral Gables, Florida (April 5, 2014); "Chapter 7 and 11 Case Law Update," Law Education Institute (LEI) Conference, Vail, Colorado (January 5-9, 2014); "Real Estate Short Sales and Carve-Outs," American Bankruptcy Institute 25th Annual Winter Leadership Conference, Rancho Palos Verdes, California (December 6, 2013); "Chapter

7 & Hot Topics," National Conference of Bankruptcy Judges 2013 Annual Conference, Atlanta, Georgia (November 1, 2013); "Case Law Update" NABT 2013 Annual Meeting, White Sulphur Springs, West Virginia (August 8, 2013); "Plenary Session: Consumer Update 2013," American Bankruptcy Institute Southeast Seminar, Amelia Island, Florida (July 18-21, 2013); "Mortgage Avoidance Issues in Bankruptcy (A Trustee's Perspective)," 35th Annual Real Property law Institute, Amelia Island, Florida (May 9, 2013); "The Good, the Bad, and the Ugly – Case Law Update," NABT 2013 Spring Seminar, Scottsdale, Arizona (February 22-23, 2013); "Case Law Developments," "What Is the Trustee Up to Now?" "Mortgage Issues: Pervasive Issues and Abuses," and Fraudulent Conveyances," Law Education Institute (LEI) Conference, Snowmass, Colorado (January 2-5, 2013); "Case Law Update I," NABT 2012 Annual Meeting, Colorado Springs, Colorado (September 8, 2012); Case Law Update II," NABT 2012 Annual Meeting, Colorado Springs, Colorado (September 6, 2012) "Bankruptcy Issues for Auctioneers," National Auctioneers Association's 63rd International Auctioneers Conference, Spokane, Washington (July 18, 2012); "The Presidents' Panel: Current Issues in Consumer Bankruptcy," NACTT 47th Annual Seminar, New Orleans, Louisiana (July 13, 2012); "Waiter! Check Please! Paying the Tab in Consumer Bankruptcy: The Real Costs of Accessing the System," NACTT 47th Annual Seminar, New Orleans, Louisiana (July 12, 2012); "An Empirical Study of the Costs of BAPCPA," NABT 2012 Spring Seminar, Las Vegas, Nevada (March 31, 2012); "Sold! Short Sales/724(b) Sales: The New Normal," NABT 2012 Spring Seminar, Las Vegas, Nevada (March 30, 2012); "Ethics and Professionalism Potpourri," 36th Annual Judge Alexander L. Paskay Seminar on Bankruptcy Law and Practice, Tampa, Florida (March 17, 2012); "Latest Developments – Case Law Update," "Ethic Standards Re-Examined," and "Who Gets the Money? Claims Objections Issues," Law Education Institute's 29th Annual national CLE Conference, Snowmass, Colorado (January 4 – 8, 2012); "Hot Topics in Chapter 7," ABI/NCBJ Roundtable, National Conference of Bankruptcy Judges, Tampa, Florida (October 12-15, 2011); "Case Conversion Issues," NABT 2011 Annual Meeting, Amelia Island, Florida (September 21-24, 2011); "Today's Chapter 7," Panel, Annual Southeast Bankruptcy Workshop, Kiawah Island, South Carolina (July 27-30, 2011); "Select Claim Objection Issues," NABT Spring Seminar, Santa Monica, California (March 26, 2011);

"Looking Ahead: What's in Store for Consumer Practitioners in 2011," 35th Annual Judge Alexander L. Paskay Seminar on Bankruptcy Law and Practice, Tampa, Florida (March 10-12, 2011); "Chapters 7 and 11 Case Law Update," State Bar of Georgia Bankruptcy Law Section, Greensboro, Georgia (October 28, 2010); "Recovering Unauthorized Post-Petition Transfers," NABT Convention, San Francisco, California (October 1, 2010); "Chapter 7 Law Update," Middle District of Georgia Bankruptcy Institute, Macon, Georgia (September 17, 2010); " Individual Business Bankruptcy Cases," Metro Atlanta Consumer Bankruptcy Attorneys Group, Atlanta, Georgia (May 21, 2010), "Professionalism Issues," Atlanta Bar Association, Bankruptcy Law Section Seminar, Atlanta, Georgia (May 6, 2010); "Recurring Issues among Consumer Lawyers and Trustees and How to Avoid Them," American Bankruptcy Institute, Washington, D.C. (May 1, 2010); "The Nouveau Pauvre, or Who Used to Be a Millionaire (Finding Assets in Those Mid and Large Size Cases in Which the Debtors Used to Be "High-End" Debtors)," NABT Spring Seminar, Savannah, Georgia (April 9, 2010); "Trends and Threads in Business Cases: Case Law Update from the Front," National CLE Conference, Vail, Colorado (January 6, 2010); "Prebankruptcy Asset Protection and Planning: How Far Can the Line Be Pushed before the Trustee Reacts," National CLE Conference, Vail, Colorado (January 7, 2010), and "Making Sense of the Tide in Consumer Case/Issue Development: Caselaw Review of Recent Consumer Bankruptcy Decisions," National CLE Conference, Vail, Colorado (January 8, 2010); "Hot Topics in Chapter 7," ICLE Bankruptcy Seminar, Braselton, Georgia (November 12, 2009); "The Art of the Carve-Out," NABT Annual Convention, Boston, Massachusetts (August 29, 2009); "Hot Consumer Topics in Chapter 7," American Bankruptcy Institute 14th Annual Southeast Bankruptcy Workshop, Hilton Head, South Carolina (July 30, 2009 – August 1, 2009); "Negotiation/Out-of-Courtroom Skills and Techniques," American Bankruptcy Institute's Skills Training Program, Atlanta, Georgia (June 4, 2009); "Select Trustee Issues," 11th Circuit Fellows Luncheon, American College of Bankruptcy, Washington, D.C. (March 27, 2009); "Case Law Update: The Good, The Bad, and The Ugly," National CLE Conference (LEI), Vail, Colorado, January 4-5, 2009; "Case Law Update," United States Trustee Region 21 Seminar (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Atlanta, Georgia (October 21, 2008); "The Art of the Carve-Out," NABT Spring Seminar, Santa

Fe, New Mexico (April 26, 2008); "Bankruptcy Claim Quandaries, Administrative Claims, Claims Evidentiary Issues, Superpriority Claims Upon Conversion to Chapter 7, Rejection Claims, and Estimation Claims," National CLE Conference (LEI), Vail, Colorado, January 4-6, 2008; "Select Exemption Issues," National Conference Bankruptcy Judges, Orlando, Florida (October 10, 2007); "Case Law Update," United States Trustee Region 21 Seminar (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees) Atlanta, Georgia (September 27, 2007), "Administering Exempted Assets," NABT Spring Seminar, Atlanta, Georgia (March 16, 2007); "Pro Se Debtor Cases and Issues," American Bankruptcy Institute's 11th Annual Southeast Bankruptcy Workshop (July 26-29, 2006); "Case Law Update," United States Trustee Region 21 Seminar (includes Florida, Georgia, Puerto Rico, and U.S. Virgin Islands Trustees), Miami, Florida, Georgia (June 22-23, 2006); "Bankruptcy Reform Act - Hot Issues," NABT Spring Seminar, Phoenix, Arizona (March 4, 2006); "Tax Issues in the Era of the New Bankruptcy Reform Act," Georgia Society of CPAs, Atlanta, Georgia (June 21, 2005); "The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: How will it affect your business?" AGG Seminar, Atlanta, Georgia (June 3, 2005); "Bankruptcy Issues for the Commercial Realtor," Atlanta Board of Realtors, Atlanta, Georgia (June 2, 2005); "Proving Deepening Insolvency," Emory Bankruptcy Developments Journal Symposium, Atlanta, Georgia (March 24, 2005); "Case Conversion Issues," United States Trustee Region 21 Seminar (includes Florida and Georgia Trustees), Savannah, Georgia (January 20-21, 2005); "New Developments: A Trustee's Perspective," NABT Convention, San Diego, California (September 11, 2004); "Holding onto Assets," NABT Spring Seminar, Las Vegas, Nevada (March 12-13, 2004); "Case Law Update," United States Trustee Region 21 Seminar, Atlanta, Georgia (January 8, 2004); "Recovering Assets through Litigation in Bankruptcy," National Bankruptcy Training Institute, Columbia, South Carolina (November 18, 2003); Faculty Member, National Bankruptcy Training Institute, Columbia, South Carolina (2003); "Claims Review, Objections, and Resolutions," NABT Annual Convention, Washington, D.C. (September 9, 2003); "Perfection of Collateral" and "Guaranty Agreements," SouthTrust Bank Live Video Broadcast Seminar, Atlanta, Georgia (August 22, 2003); "Establishing Corporate Insider Liability: From Deepening Insolvency to Avoidance Issues," NABT Spring Seminar, Coral Gables, Florida (March 29, 2003);

Training Seminar for New Trustees, Office of the United States Trustee (September 12, 2002); "Case Law Update," United States Trustee Region 21 Seminar (Florida and Georgia Trustees) (May 3, 2002); "Bankruptcy and Foreclosures," Georgia ICLE (April 17, 2002); "Loan Documentation Issues," (August 22, 2003); "How to Protect the Interest of Secured Creditors in Georgia," National Business Institute (NBI); "How New Bankruptcy Legislation Will Impact Your Practice," Consumer Bankruptcy Attorneys Association; "Advanced Real Estate Seminar: Bankruptcy Issues," NBI; "Ethics in Bankruptcy," State Bar of Georgia, Bankruptcy Law Section; "Chapter 11 Single Asset Real Estate Cases," Atlanta Bar Association, Bankruptcy Law Section; "Bankruptcy: An Overview," Georgia Department of Banking and Finance; "Bankruptcy: An Overview," Mortgage Bankers Association of Georgia; "Liens and Credit Issues in Bankruptcy," NBI.

EXHIBIT C

ENTERED ON DOCKET
3/12/04

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 02-80284 |
| MICHAEL A. MANDATO, | : | CHAPTER 7 |
| Debtor. | : | JUDGE MASSEY |

## ORDER GRANTING APPLICATION FOR FINAL COMPENSATION BY ATTORNEYS FOR TRUSTEE

Arnold Golden Gregory, LLP as the Trustee's attorneys in this Chapter 7 case seeks compensation in the amount of $31,245.00. The requested compensation has two components, one seeking $26,037.50 based on hourly billing and the other seeking an enhancement of $5,207.50 based on achievement of exceptional results and the risk of non-payment of fees. Compensation of professionals in bankruptcy cases is governed by section 330 of the Bankruptcy Code, which provides in part that a court may award "reasonable compensation for actual, necessary services rendered."

The Court held a hearing on the application on January 13, 2004 on notice to the Trustee, its counsel, the United States Trustee and all creditors. The only entity objecting to the requested compensation is the office of the United States Trustee (the "Government"), and that objection is only to the payment of the enhancement.

EXHIBIT
"D"

At the hearing, Neil Gordon of Arnall Golden described the activities in the case and the services performed by his firm on behalf of the Trustee. At the conclusion of the hearing, the Government's attorney, Guy Gebhardt, agreed that Mr. Gordon's statement of the facts was accurate. The Court therefore adopts Mr. Gordon's statement of the facts as the findings of fact by the Court. In addition to those facts, the Court further finds that eight creditors (counting two American Express entities as one creditor and two MBNA America entities as one creditor) filed thirteen proofs of claims totaling $1,461,955.87. All of these creditors, except one, are large institutions.

Corporate Visions, Inc. ("CVI"), the Debtor's former employer, filed a proof of claim for $1,194,547.00, which comprised approximately 80% of total claims prior to its reduction, as explained below. Based on Mr. Gordon's presentation of facts, the Court finds that CVI supports the application.

Applicant asserts that it did extraordinary work in settling complicated claims in a manner favorable to the estate, thereby justifying the added compensation requested. As described by Mr. Gordon at the hearing, the settlement involved the Debtor, his allegedly estranged wife, CVI and the Trustee. The settlement, approved by the Court in an order entered on June 26, 2003, settled litigation pending between the Debtor and CVI in the Georgia state court and in the United States District Court for the District of Nevada. In those cases, the Debtor sought to recover $183,000 in unpaid commissions, and CVI sought damages of well in excess of $1,000,000 for alleged breaches of his employment contract and related torts. Based on Mr. Gordon's recitation of facts, the Court finds that the claim of CVI had substantial merit; instead of an asset, the litigation with CVI was a liability.

The settlement also disposed of a dischargeability action brought by CVI in this Court. The Debtor agreed that a debt of $5,000.00 would be nondischargeable. CVI agreed that the $5,000 would be paid to the bankruptcy estate. The Debtor and his allegedly estranged wife agreed to pay an additional $75,000 to the Trustee in settlement of a claim related to a business ostensibly owned by the Debtor's wife but operated by the Debtor. Applicant was able to assert the claim against Mrs. Mondato based on facts uncovered by Applicant in taking discovery. Mrs. Mondato may have had a claim to a portion of a substantial tax refund due to her and the Debtor, but she waived that and any other claim she might have had in the bankruptcy case or to the settlement proceeds. The Trustee agreed to abandon any interest of the estate in the stock of the Debtor's company, Presentations Live, Inc., which the Debtor scheduled as worthless.

Mr. Gordon discovered that an insurance policy scheduled by the Debtor as having no value in fact had a cash surrender value of almost $22,000, which the estate recovered. This was the kind of work one would expect from an experienced lawyer representing a Chapter 13 trustee. He also discovered the existence of the tax refund of approximately $8,400 through careful examination of the Debtor, who had not scheduled that asset and had carried the check from the IRS in his pocket for approximately two months.

The Government raises three objections to payment of the enhancement of $5,207. First, it contends that the application of the Chapter 7 Trustee to employ Arnall Golden Gregory, LLP strongly implied that compensation would be based solely on rates and hours. From that conclusion, it reasons that the Chapter 7 Trustee and Arnold Golden agreed to those payment terms and that no consideration supports a claim to the additional compensation sought. It concludes that

payment of the requested enhancement would be a gift of $5,207, involuntarily made by creditors to Arnold Golden.

This objection is the easiest one to decide. The Court disagrees that the Chapter 7 Trustee's application for appointment of an attorney precluded the award of an enhancement. That application, like many applications to employ professionals, stated current billing rates of the professionals expected to be involved in the case. The application does not state that rates and hours expended were to be the sole method of determining compensation, and the mere mention of hourly rates does not alone create an inference that the parties agreed to such a contract. Rather, the Chapter 7 Trustee "propose[d] that said firm be compensated for its service in accordance with future orders of the Court based upon the criteria for professional compensation required by bankruptcy law." Trustee's Application for Appointment of Attorney, ¶ 9. As the Government conceded, one possible basis for compensation under bankruptcy law may be enhanced compensation for extraordinary work.

Second, the Government contends that Applicant is not entitled to an enhanced fee because it did not show either that there was a risk of non-recovery or that enhancement was necessary to insure the availability of counsel. *See Grant v. George Schuman Tire & Battery Co.*, 908 F.2d 874, 880 (11th Cir. 1990).

The Court agrees with the Government that the firm failed to prove a risk of non-recovery. Arnall Golden's argument that it was at risk is based on the assertion that the Chapter 7 Trustee may have had to continue litigation with CVI, and if that had occurred, it might not have been paid. Had the estate engaged in litigation with CVI, however, that litigation would had to have been extremely limited, because Mr. Gordon had determined that the CVI litigation was a net liability.

For Arnold Golden to have been at risk of nonpayment, it had to have been obligated to render whatever legal services the Trustee demanded. But Applicant failed to offer any evidence to prove such an agreement. At the time Arnold Golden rendered services, the estate always had sufficient assets on hand to pay it in full. The Court also agrees that Arnold Golden presented no evidence to show that the prospect of enhancement was necessary to persuade the firm to take the case.

The third and final argument of the Government is that by definition, the lodestar figure obtained by multiplying rates by hours adequately compensates an attorney so that enhancement compensation is appropriate only in the rare and exceptional case. It contends that while the work done by Mr. Gordon and his firm was very good, it was not so rare and exceptional as to entitle the firm to an enhancement. Mr. Gordon argued that the real reason that the Government is objecting to the proposed enhancement is a policy to oppose all requests for enhancements unless the creditors are paid in full. If so (and the Government did not refer to such a policy), it would not be one based on the law in this circuit.

The Court agrees with the parties that the so-called lodestar amount, computed by multiplying rates by hours expended, may be enhanced for "excellent or exceptional results." *Grant*, 908 F.2d at 880.

> Exceptional results are results that are out of the ordinary, unusual or rare. Ordinarily, results are not exceptional merely because of the nature of the right vindicated or the amount recovered. The law is usually faithful to its teachings, and so an outcome that is not unexpected in the context of extant substantive law will not ordinarily be exceptional.
>
> Even if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed. [citing *Blum v. Stenson*, 465 U.S. 886, 899, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984)). This is

> because the reasonable hourly rate already should reflect the skill demonstrated by the advocate. Id.; *Pennsylvania v. Delaware Valley Citizens' Council I*, 478 U.S. 546, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

*Norman v. Housing Authority of City of Montgomery* 836 F.2d 1292,1302 (11th Cir. 1988).

The two elements that a professional seeking an enhanced fee must show are that the results obtained were excellent or exceptional and that "the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." To know what is exceptional, one must know what is ordinary. What would have been ordinary in the handling of this case by a trustee's lawyer?

Having read and ruled on hundreds of fee applications, the Court is familiar with ordinary, as well as excellent legal work. The facts relating to the disputes with the Debtor and with CVI suggest several reasonable, but quite different, possible outcomes. It would have been an ordinary result if the Trustee had followed legal advice to agree to a deal in which every element was the same as the one described above except that the amount of CVI's claim was not challenged. It would have been an ordinary result if the Trustee had negotiated a reduction in CVI's claim by $200,000 or $300,000, instead of $794,547, without litigating with CVI. It would have an ordinary result if the Trustee had delayed the deal he finally obtained by litigating CVI's claim, perhaps long enough to run up another $5,200 in fees. It would have been a better than an ordinary result if the deal negotiated by Applicant had been the same, except that the Debtor paid to CVI $5,000 to settle the adversary proceeding and paid the estate $75,000.

The amount of cash on hand is presently $90,624.74, net of fees and expenses as to which there was no objection. Hence, if the Court awards the additional $5,207.50 sought, the balance for distribution would be $85,417.24. If CVI's claim had remained at $1,194,547, the other creditors

would have received out of $90,624.74, the aggregate sum of $16,576.31. After CVI's agreement to reduce its claim to $400,000, the remaining creditors would receive $36,310.33 if there were no enhancement paid, or an increase of $19,734.02. With the enhancement taken out, they would receive the aggregate sum of $34,226.86, which would be an increase of $17,650.55.

Having reduced its claim to $400,000, CVI holds 59.93% of the total claims, and the remaining seven creditors hold the balance of 40.07% of the total claims. Thus, the cost of an enhancement of $5,207.50 to creditors other than CVI would be $2,086.47. Because CVI supports Arnold Golden's fee application, the Government's aim apparently is to protect that $2,086.47 for the other seven unsecured creditors, six of which are institutions, including the Debtor's litigation counsel, and none of which object to paying the enhanced fee. But for the settlement that produced the $80,000, there is no evidentiary basis for thinking that unsecured creditors would have received any significant distribution, if they received anything.

If Mr. Gordon had objected to the claim of CVI and had been successful in reducing it to $400,000 and if the Trustee had sued the Debtor's wife and recovered $80,000, 41% of the fees would have been borne by the remaining creditors. Suppose that Mr. Gordon had successfully achieved those results by spending an additional 17.7 hours at $295 per hour giving rise to additional fees of $5,221.50, approximately the amount of the requested enhancement. Such results with the expenditure of so few hours would alone have been astounding.

The majority of attorneys working in cases in this Court probably would not have had the presence of mind to negotiate such a large reduction of a claim that had considerable merit. The legal work done in this case was quite different from that done in *Grant*, to use that case as an example. In *Grant*, the Trustee's counsel was successful in obtaining and collecting judgments in

routine litigation, which was enough to make the estate solvent after the debtor had voluntarily paid many of his debts postpetition. Here, there is no evidence to show that litigation with CVI, even in the form of an objection to its claim, or litigation with the Debtor's spouse was likely to succeed. Instead of engaging in ordinary litigation, Applicant put together a fairly complex puzzle, which settled rather than litigated several diverse claims for relief.

CVI and the Debtor were at each other's throats, and CVI finally held the upper hand. More than money was involved, as is shown by the fact that CVI demanded an admission from the Debtor that his conduct gave rise to nondischargeable debt. To give CVI its pound of flesh, Mr. Gordon had to persuade the Debtor to admit culpability in the adversary proceeding and to put up some money. To persuade the Mandatos to part with $80,000, he had to persuade them that the claim against Mrs. Mandato had merit, which he was able to do through careful discovery. Then, to protect the fund, he remembered to get Mrs. Mandato to agree to waive any claim in the case. The coup was obtaining CVI's agreement to reduce its claim by over 58 percent. Nothing in the facts stated by Mr. Gordon suggests that CVI inflated its claim, which would have been a crime. Nothing in the record shows that the Trustee had any real basis for objecting to CVI's claim.

Finally, Applicant further persuaded CVI to agree that the $5,000 paid to settle its adversary proceeding against the Debtor would go to the estate, instead of to CVI. This aspect of the settlement is unique. The fact that CVI contributed to the estate the $5,000 paid by the Debtor to satisfy CVI's nondischargeable claim means that CVI effectively made a gift to the other seven creditors of approximately their share of the payment of the enhancement. That is the only gift involved in this case.

The Court concludes from this analysis that the work done by Applicant related to the settlement was exceptional, and the balance of the work, especially uncovering unscheduled or misrepresented assets, was excellent.

The remaining issue requires a comparison of the quality of the work performed with the quality of work one would expect based on the rates charged. Most of the work in the case was done by Mr. Gordon at a blended hourly rate of $311.80 for 75.4 hours. Mr. Gordon argued at the hearing that although his rate is at the upper limit of what can reasonably be charged in the typical Chapter 7 case, it is below the rate he now charges to other clients. He also stated, and the Court agrees, that his blended rate is below that charged by attorneys in other firms in Atlanta in bankruptcy cases involving issues as complex as those presented in analyzing the dispute between CVI and the Debtor. In making this point, he was noting that the work done in this case spans the period between November 2002 and August 2003, so that he is being paid well in arrears of the services performed.

For $311 an hour, one would expect high quality legal work but not necessarily the degree of creativity displayed by Mr. Gordon in negotiating the settlement among his client, CVI and the Mandatos. Mr. Gordon solved a puzzle having multiple, reasonable solutions. Each piece of the puzzle was a dispute or potential dispute. CVI and the Debtor had not been bashful about spending legal fees that dwarf the requested enhancement in furthering their respective aims. What makes this work worth more than $311 per hour is that the Mr. Gordon found the non-obvious solution that was most favorable to the creditors other than CVI.

Based on the Court's own observation of the quality of legal work on behalf of trustees in Chapter 7 cases and the superior solution to resolving the disputes discussed above, the Court finds

that the requested enhancement is reasonable when considered in light of the blended rate charged by Mr. Gordon. This conclusion is reinforced by the fact that the amount at stake for the creditors other than CVI is quite small relative to the distribution they will receive, the very existence of which is a testament to the results obtained.

For these reasons, it is

ORDERED that the fee application of Arnall Golden Gregory LLP is GRANTED, and Arnold Golden Gregory LLP is awarded $31,245.00 in compensation plus $189.60 for reimbursement of expenses, which the Trustee is authorized and directed to pay.

This 10th day of March 2004.

James E. Massey

JAMES E. MASSEY
U.S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 23-40569-EJC |
| | ) | |
| MASTER LENDING GROUP, LLC, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

I do hereby certify that I have served the foregoing *First Application for Interim Compensation by Attorneys for Trustee and Request for Authorization to Pay Compensation* by electronic service or by depositing in the United States mail a copy of same in a properly addressed envelope with adequate postage affixed thereon to assure delivery to:

Office of the U.S. Trustee
33 Bull Street, Suite 400
Savannah, GA 31401

Master Lending Group, LLC
308 Megan Court
Savannah, GA 31405

And all other creditors and parties in interest receiving notice through CM/ECF.

This 20th day of August, 2026.

By: */s/ Tiffany E. Caron*
Tiffany E. Caron,
Attorney for Chapter 7 Trustee

Tiffany E. Caron, Esq.
GA Bar No. 745089
215 Pilgrim Rd.
West Palm Beach, FL 33405
404-647-4917
Tiffany.caron@hotmail.com