**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **MASTER LENDING GROUP, LLC,** | **CASE NO. 23-40569-EJC** |
| **Debtor.** | |

# ARONSON'S OBJECTION TO THE INTERIM FEE APPLICATIONS OF TIFFANY E. CARON, NEIL C. GORDON, AND KAPILAMUKAMAL, LLP

Barbara Aronson, Barbara Aronson IRA, and Aronson Family Residence Trust (collectively, "**Aronson**"), the holders of allowed claims in this case, object under 11 U.S.C. §§ 328 and 330 and F.R.B.P. 2014 and 2016 to portions of the interim fee applications of Tiffany E. Caron, as attorney for herself as Chapter 7 trustee ("**Attorney Caron**" and, in her capacity as trustee, "**Trustee Caron**") (Doc. 650); Neil C. Gordon, special counsel ("**Gordon**") (Doc. 651); and KapilaMukamal, LLP ("**KapilaMukamal**") (Doc. 652), and shows the Court as follows:

## SUMMARY OF OBJECTION

1. The three fee applications seek $1,972,096.85 in fees from a fund collected for the victims of a Ponzi scheme. Aronson does not dispute that the professionals performed work or that the estate recovered money. Instead, she raises four limited grounds, each drawn from the applicants' own filings and time records:

(a) **Enhancements ($330,000.00).** Each applicant asks for a percentage of the "$11 million gross recovery" on top of its hourly fees, although creditors are not assured of payment in full, and the recovery came largely from a scheduled insurance policy and even $2 million from investors' direct negotiations, in which negotiations applicants did not participate. The enhancement should be denied.

(b) **Undisclosed rates.** Gordon was employed on a sworn rate of $595.00 per hour but billed every hour at $795.00 from the first day; Attorney Caron swore to a starting rate of $375.00 but billed every hour at $465.00. Neither increase was disclosed until the applications were filed, 37 months into the case. The applications should be restated at the originally-sworn rates of $595 and $375, respectively.

(c) **Trustee duties billed as attorney time.** Trustee Caron is paid for her trustee duties by a commission estimated at $341,227.16. Attorney Caron billed all 860.35 of her hours at $465.00 and never separated that time from her legal services. Her own descriptions show 490.60 hours ($228,129.00) of trustee duties, clerical work, and attendance as client at hearings and examinations Gordon conducted, and another 150.40 hours ($69,936.00) that join such work with legal work in one undivided entry. Because she cannot carry her burden under § 328(b), the 641.00 hours ($298,065.00) should be disallowed; at a minimum, the 490.60 hours should be. Her expenses also include $1,530.00 for her own firm's malpractice insurance premium, which should be disallowed.

(d) **Unbilled travel.** Gordon asks to be paid $46,507.50 for 58.50 hours of travel that he did not bill for when he recorded his time, including trip legs that his own entries mark as not charged. The $46,507.50 should be disallowed.

2. Aronson asks the Court to disallow $877,966.00, as follows, and to require Gordon to disclose the assignment under which he seeks fees earned by his former firm:

| Applicant | Requested | Enhancement | Rate premium | Trustee Duties/Travel | Total Disallowed | Allowed |
|---|---|---|---|---|---|---|
| Attorney Caron | $526,562.75 | $126,500.00 | $19,741.50[1] | $298,065.00 | $444,306.50 | $82,256.25[3] |
| Gordon | $982,519.50 | $126,500.00 | $183,652.00[2] | $46,507.50 | $356,659.50 | $625,860.00 |
| KapilaMukamal | $463,014.60 | $77,000.00 | — | — | $77,000.00 | $386,014.60 |
| **Total** | **$1,972,096.85** | **$330,000.00** | **$203,393.50** | **$344,572.50** | **$877,966.00** | **$1,094,130.85** |

[1] Applied only to the 219.35 hours not otherwise disallowed, to avoid double counting.
[2] Excludes the 58.50 unbilled travel hours disallowed separately, to avoid double counting.
[3] In addition to Trustee Caron's commission.

## BACKGROUND

3. The Debtor filed its Chapter 7 petition on July 6, 2023. Its Schedule A/B listed an "Unvested, Equitable Interest in Prudential Life Insurance Policy (Judith Hirsch, Beneficiary)" valued at $5,000,000.00 and breach-of-note claims against Synergy Homes and J. Read Brennan. Doc. 1 at 10, 11. Tiffany E. Caron was appointed trustee.

4. Trustee Caron's original application to employ herself as counsel, filed July 10, 2023, stated no rate. Doc 10. Her amended application attached her Rule 2014 affidavit, sworn July 10, 2023, stating under the heading "Professional Compensation" that she "will keep track of time and charges and will bill at the starting rate of $375 per hour." Doc. 36 at 7, ¶15. The Court

approved her employment. Doc. 42. However, her first time entry–dated the same day–is billed at $465.00, and so is every one of her 556 entries. Doc. 650, Ex. A.

5. Trustee Caron's three applications to employ Gordon, filed July 13, 17, and 26, 2023, each disclosed his rate as $595.00 per hour, with $495.00 for John K. Rezac, $425.00 for Natalie Rowland, and $260.00 for paralegals. Docs. 17, 30, 44. Gordon swore twice that he "will not expect or receive any compensation" except "based on the hourly rates set forth in the subject Application for Appointment as Special Counsel, which may be increased from time to time in the normal course of business." Doc. 17, Ex. A, ¶3; Doc. 44, Ex. A, ¶3. Three creditors — Alan Lipsitz, Louise M. Howard, and Barbara Aronson — objected that the cost of the employment "will have a disproportionate impact on the assets expected to be recovered." Doc. 93 at 2 (quoting Doc. 49 ¶4); Docs. 49, 69, 80. One objection also asked for counsel whose rates matched this Court's lodestar, which the objector understood to be $425.00, and for "limitations on hourly rates for travel time." Doc. 49 at 2–3. After an August 10, 2023 hearing, the Court overruled the objections because it would review the fees for reasonableness when they were requested. Doc. 93 at 3. The order does not address travel.

6. Every one of Gordon's entries, beginning July 11, 2023—two days before the first application was filed—is billed at $795.00. Each of the other timekeepers named in the applications, except Daniel Wiegel, also billed above the disclosed schedule, and two timekeepers not named in any of the applications were added. Doc. 651, Ex. A1. Neither Gordon nor Trustee Caron disclosed the $795.00 rate at the August 10, 2023 hearing on the creditors' objection that $595.00 was too high.

7. Neither Attorney Caron nor Gordon filed an interim application until August 20, 2026, although 11 U.S.C. § 331 permitted one every 120 days. Gordon's time from July 11, 2023,

through March 3, 2026 ($781,763.00) appears on a single statement dated March 6, 2026. The applications were the first notice to the Court or creditors of either rate.

8. The estate has collected $10,599,238.76: $5,267,706.84 (49.7%) of life insurance proceeds and interest, which the insurer deposited into the Court's registry through its own interpleader (Doc. 280 at 5; Doc. 626, Ex. C); $3,732,293.16 in cash from Mrs. Hirsch; $815,744.97 from Synergy and Brennan (before they defaulted on a $3,500,000.00 unsecured settlement); and $783,493.79 from all other sources. Doc. 626 at 2 & Ex. C.

9. Trustee Caron's July 1, 2024 motion proposed a $7,000,000.00 settlement with Mrs. Hirsch that included the insurance proceeds already on deposit. Doc. 269. Estate counsel told the Court that $7,000,000.00 was Mrs. Hirsch's "absolute worst-case scenario," and the Court found that it fell "at or near the maximum for which Mrs. Hirsch potentially would be liable to the estate." Doc. 280 at 8, 10. However, the Investor Group[1] refused to release Mrs. Hirsch for that sum and, through their counsel—with Aronson's counsel leading the negotiation—negotiated directly with Mrs. Hirsch.

10. This negotiation led to a Compromise Agreement, to which Trustee Caron is not a party, for a further $2,000,000.00. Each application concedes the point: "The mediation resulted in a $7 million settlement with an expectation of investors demanding more to sign releases that

[1] "Investor Group" refers to the following investors, who negotiated directly with Mrs. Hirsch for an additional $2,000,000.00 payment to the estate: Adam Jacobowitz; Alan Lipsitz; The Albert Jacobowitz Irrevocable Trust; Alter Yeshaya Slatus; the Aronson Family Residence Trust; Avigail Slatus; Baila Simcha; Barbara Aronson; the Barbara Aronson IRA; BB Jacob R.D.F.; Catherine Royal; the Colonial Shoe Co. Profit Sharing Plan; Danny Kaminsky; Elizabeth M. Jones; the Estate of Dr. Leon Aronson; the Frederick M. Halperin IRA; Harriet Simowitz; the I.L. Aronson P.C. Employee Pension Plan; the I.L. Aronson Pension Plan; James E. Jones; JEJ, Inc.; Jeremy Slatus; JGJ, Inc.; Jones on 17th, LLC; Joseph Slatus; Katherine Royal; Lisa Gay; Lisa Kaminsky; Louise Howard; Marshall Jacobowitz; Matel Simcha; Matti Slatus; Michelle Jacobowitz; Mordecai Simcha; Moshe Simcha; the Philip Rosenbaum Trust; Rabbi Avigdor Slatus; Renie Halperin; Rita Slatus; Sarah Simcha; Shlomo Slatus; Terry Jones; Tzvi Slatus; Vanessa Jones; Yaakov Slatus; and Yehudis Simcha.

would bring the total to between $9 million and $12 million." Doc. 650 at 4; Doc. 651 at 20; Doc. 652 at 12. KapilaMukamal goes further, describing the mediation as one "that resulted in a $9 million dollar settlement." Doc. 652 at 4. It did not: the mediation produced $7,000,000.00, and the investors obtained the rest.

11. Investors originally filed claims of approximately $43 million. Doc. 651 at 10. After the claims process, allowed general unsecured claims total $10,234,002.51. Doc. 626 at 3 & Ex. B. The Court has allowed Trustee Caron an interim commission of $193,357.74, Doc. 644; the full commission is estimated at $341,227.16. Doc. 626 at 3. The estate's first forensic accountants were allowed $207,060.00. Doc. 570.

12. Attorney Caron seeks $400,062.75 for 860.35 hours at $465.00 plus a $126,500.00 enhancement (1.15% of the "$11 million gross recovery"), $526,562.75 in all. Gordon seeks $856,019.50, including $46,507.50 for 58.50 hours of unbilled travel, plus a $126,500.00 enhancement, $982,519.50 in all. KapilaMukamal seeks $386,014.60 plus a $77,000.00 enhancement (0.7%), $463,014.60 in all. Docs. 650, 651, and 652.

## ARGUMENT

### A. The $330,000.00 in Enhancements Should Be Denied.

13. The lodestar is strongly presumed to be reasonable compensation. Novelty, complexity, skill, and quality of performance are reflected in the hours, and the rate cannot support an enhancement; the applicant must prove with specific evidence that the case is rare and exceptional. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552–54 (2010); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988); *see also In re Home Depot Inc.*, 931 F.3d 1065, 1082–84 (11th Cir. 2019).

14. In another case, this Court has denied an enhancement to highly regarded professionals in a case in which creditors were paid in full, because the essential elements of the outcome were visible when the case was filed. *In re First Am. Health Care of Ga., Inc.*, 212 B.R. 408, 412, 416–18 (Bankr. S.D. Ga. 1997).

15. Nor does § 328(a), on which each application relies, help the applicants. It permits compensation different from the terms of employment only if those terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a).

16. The developments that the applicants cite were anticipated: the insurance policy and the Synergy notes were scheduled on the petition date, and the applications themselves say that the $7,000,000.00 settlement came "with an expectation of investors demanding more." Doc. 650 at 3–4; Doc. 651 at 9, 15, 20; Doc. 652 at 10–12.

17. The bar is higher still when creditors are not paid in full. In *In re Bank of New England Corp.*, 484 B.R. 252 (Bankr. D. Mass. 2012), the court disallowed an enhancement sought by counsel to a Chapter 7 trustee, holding that an enhancement where creditors are not paid in full would be "the rarest of the rare," because otherwise the trustee "seeks to pay its counsel an amount not contemplated by the terms of the retention agreement from the creditor's pocket." *Id.* at 281–82. *Compare In re ASARCO, L.L.C.*, 751 F.3d 291, 295–96 (5th Cir. 2014) (affirming an enhancement for a "once in a lifetime result" that funded a 100% recovery for all creditors).

18. The applications' projected distribution of "78% to 100%" is measured against claims reduced from approximately $43 million as filed to $10,234,002.51 as allowed. Even against the allowed claims, the fees now sought (including the first accountants' $207,060.00 and the full trustee commission) total $2,520,384.01, or 23.8% of everything collected, leaving about

$8,078,854.75, before expenses, for $10,234,002.51 of allowed claims—a shortfall of roughly $2,155,000.00 even on net principal. Every dollar of the proposed enhancements comes out of the victims' distribution. The unpaid balance of the Synergy settlement, approximately $2,684,255.03, is in default and is being pursued by separate collection counsel at further cost to the estate; its recovery is uncertain. And even payment of the allowed claims in full would not make the investors whole: those claims are net principal only, reduced by the investors themselves from approximately $43 million as filed, with the overwhelming majority of the reduction coming from the disallowance of interest on account of the Trustee insisting that such disallowance is appropriate in a Ponzi case like this one.

19. The applications say that nearly all investor claims were amended or withdrawn "without a single objection having to be filed," which "obviated the need for filing up to 100 claim objections." Doc. 651 at 11, 20. Reducing investor claims to net principal is a routine step in any Ponzi case, and Aronson does not suggest otherwise. The point is cost.

20. After the Hirsch settlement, the three applicants billed $425,378.15 on claims work, including Rule 2004 examinations of "nearly every investor" (Doc. 651 at 10), and "net winner" demand letters; the investor examinations of 2025 alone cost $264,848.70.

21. Yet, the Hirsch settlement was presented to creditors as the way to avoid that expense: without it, the Trustee asserted that "[e]very single investor would be sued eventually after substantial discovery under Rule 2004." Doc. 269 at 8. A routine claims process carried out at that cost is not a basis for a bonus.

22. Half of the money collected is the proceeds of an insurance policy scheduled on the petition date and deposited into the registry by the insurer itself. The Synergy claims were also scheduled; they were compromised on an unsecured basis and are in default after paying about

23% of the settlement. The transfer of the Tybee Island beach house to Mrs. Hirsch was identified in the first week of the case and was never pled. And the last $2,000,000.00 of the Hirsch recovery was obtained by the Investor Group after the Trustee and her professionals had settled for $7,000,000.00 (*supra* ¶10). Because the enhancements are computed on the gross recovery, they would pay the applicants a 3% premium, $60,000.00, on money that the Investor Group obtained themselves for the creditor body as a whole, at their own cost and expense.

23. Trustee Caron's reward for the size of the recovery is her § 326(a) commission, which is already a percentage of the same dollars. Congress allows a trustee to serve as her own counsel "to reduce costs. It is not included to provide the trustee with a bonus by permitting her to receive two fees for the same services or to avoid the maxima fixed in section 326." H.R. Rep. No. 95-595, at 328–29 (1977). A second percentage, paid through her hourly time as her own attorney, should be denied.

24. Gordon's skill and experience are reflected in his rate. He took this engagement at $595.00 per hour and told the Court in November 2023 that his firm was "committed to representing the Trustee for as long as needed regardless of the ultimate outcome." Doc. 309 at 87. He then billed $795.00 per hour, an undisclosed 33.6% increase (see below), and now asks for a further $126,500.00 on top of it.

25. Aronson does not object to KapilaMukamal's lodestar of $386,014.60. But KapilaMukamal was employed on March 18, 2024—after the Synergy settlement was signed and after the Court granted the insurer's interpleader. Doc. 247. Its work was forensic and claims work, including $37,084.80 reviewing bank reconstructions that its predecessor had completed, at an average rate of $480.24 per hour against its predecessor's $333.44. Nothing about that work is rare or exceptional, even if it was competent and useful. Its request repeats Gordon's nearly word for

word, down to the statements that "Special Counsel has rarely sought an enhancement but never been denied one" and that the applicants are charging "their very lowest rate for a corporate bankruptcy case." Doc. 652 at 12; Doc. 651 at 20–21. Attorney Caron's request uses the same text, including the statement about Special Counsel's record. Doc. 650 at 3–5. A request copied from another applicant is not the specific evidence that *Perdue* requires. The enhancement should be denied.

**B. Gordon Should Be Paid at the Rates on Which He Was Employed.**

26. An application to employ must state "any proposed arrangement for compensation," F.R.B.P. 2014(a), so that the Court and creditors can evaluate the cost before employment is approved. Gordon's arrangement was a disclosed schedule of rates, sworn to twice, defended against three creditor objections, and approved on that basis (*supra* ¶¶5–6).

27. The $795.00 rate was not an increase during the engagement. The applications said that rates "may be increased during the term of the proposed employment or if so awarded by the Court." Doc. 44 at ¶3.

28. No increase was ever noticed or awarded; $795.00 was charged from the first entry, before the first application was filed, and never changed. Gordon's verifications, which allowed for increases "from time to time in the normal course of business," do not help him: an increase in the normal course presupposes that the disclosed rate was the starting point. And although the Court noted that the disclosed rates were "subject to change," it approved the employment on the schedule disclosed. Doc. 93 at 1–2.

29. The $595.00 rate was Gordon's actual rate at the time: in the same month he filed the identical schedule in *In re Rainbow House, Inc.* (Bankr. N.D. Ga.), Doc. 27 (July 17, 2023), and *In re Stucke* (Bankr. N.D. Ga.), Doc. 31 (July 24, 2023), and in April 2025 he billed his own

2023 time at $595.00 in *In re Lavish Remodels LLC*, No. 22-60251-JWC (Bankr. N.D. Ga.), Doc. 89-2.

30. The April 2026 motion to substitute his new firm as special counsel stated no rate at all.

31. Nor is $795.00 a permissible "current rate." Gordon argues that because he went unpaid for three years, *Norman* allows him to recover "at their current and not historical rates." Doc. 651 at 15. But Gordon did not bill historical rates and later update them for delay; he billed $795.00 from his first entry, before there was any delay.

32. Any delay was also his own choice: § 331 permitted an application every 120 days, and the estate held $3,732,293.16 of Hirsch cash from December 2024. Under *Norman*, the rate is the prevailing market rate, proved by more than the applicant's own word. 836 F.2d at 1299. Gordon's own filings in July 2023 put his rate at $595.00 (*supra* ¶¶5–6).

33. Held to the disclosed schedule, the firm's premium on the time billed is as follows:

| Timekeeper | Hours | Disclosed rate | Billed rate | Difference | Premium |
|---|---|---|---|---|---|
| Neil C. Gordon | 865.70 | $595.00 | $795.00 | $200.00 | $173,140.00 |
| John K. Rezac | 73.60 | $495.00 | $575.00 | $80.00 | $5,888.00 |
| Natalie Rowland | 136.70 | $425.00 | $450.00 | $25.00 | $3,417.50 |
| Pamela Bicknell | 32.80 | $260.00 | $285.00 | $25.00 | $820.00 |
| Angela Ford | 13.10 | $260.00 | $285–$290 | $25–$30 | $386.50 |
| Wiegel, Walker and Wolgast | 13.10 | $350 (Wiegel); none | $200–$350 | — | — |
| **Total** | **1,135.00** | | | | **$183,652.00** |

Hours and rates are from the summaries in Doc. 651, Ex. A1 at 74, Ex. A2 at 3 and Ex. A3 at 3. Gordon's hours exclude the 58.50 unbilled travel hours addressed in Part D. Daniel Wiegel, listed in the original application at $350.00 (Doc. 17 at ¶3), billed at that rate. Walker and Wolgast, not named in any application, billed 1.90 hours ($385.00) at $225.00 and $200.00. No premium is computed for any of them.

34. Aronson does not challenge the hours of substantive legal work recorded by Gordon's firm. The Court should disallow the $183,652.00 premium and allow the firm's lodestar at the disclosed rates, $625,860.00.

**C. Attorney Caron's Fees Should Be Reduced.**

**1. The undisclosed rate ($19,741.50).**

35. Attorney Caron swore to a starting rate of $375.00 and never billed it (*supra* ¶4). Her application does not state her rate, explain the increase, or mention her affidavit; it says only that her compensation "lies with[in] the range of hourly rates charged by attorneys in the Southern District of Georgia." Doc. 650 at 2.

36. In the same months she billed $350.00 for trustee-side legal work in *In re 7 Sandy Creek Road, LLC*, No. 23-41100-EJC, Doc. 53, and $350.00 as Subchapter V trustee in *In re RRG, Inc.*, No. 24-10075-SDB, Docs. 481, 684, where she used the same two sentences she uses here to support $465.00.

37. The hours allowed should be paid at no more than the $375.00 she swore to. On the 219.35 hours not requested below to be disallowed, that is a reduction of $19,741.50 (or $33,277.50 on 369.75 hours if only Group 1 below is disallowed).

**2. Trustee duties billed as attorney time ($298,065.00).**

38. A trustee who serves as her own attorney may be compensated as attorney "only to the extent that the trustee performed services as attorney . . . for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney." 11 U.S.C. § 328(b).

39. "The purpose of the attorney for the trustee is not to provide assistance to the trustee in the performance of the trustee's statutory duties, but to provide assistance with those services

the trustee is unable to perform due to the lack of a license to practice law." *Gordon v. McConnell (In re McConnell)*, 641 B.R. 261, 272 (N.D. Ga. 2022) (quotation omitted). The burden of showing that a service was a legal service, and not a trustee duty, is the trustee-attorney's burden. *Id.*

40. In *McConnell*, the leading Georgia decision on the point, the bankruptcy court sorted a trustee-attorney's entries by what they described, tested each against § 704(a), and disallowed the time that was trustee work; the district court affirmed those classifications. *Id., aff'g in relevant part In re McConnell*, No. 19-67128-PWB, Doc. 88 (Bankr. N.D. Ga. Jan. 4, 2021).

41. Non-legal work "may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).

42. Exhibit A lists all 556 of Attorney Caron's entries under the eight categories that she used and codes each one by what its description shows. Group 1 is 322 entries (490.60 hours) that describe only trustee duties, clerical work, conferences with her own special counsel and accountants, or attendance as client at hearings, examinations, and the mediation that special counsel conducted. Group 2 is 84 entries (150.40 hours) in which she joined such work with legal work in one undivided figure. The remaining 150 entries (219.35 hours) describe legal services, and Aronson objects to them only as to rate (for the reasons stated above):

| **Attorney Caron's Category** | **Hours** | **Billed at $465.00** | **Group 1** | **Group 2** |
|---|---|---|---|---|
| Asset Recovery Litigation | 327.50 | $152,287.50 | $76,376.25 | $26,900.25 |
| Claim Resolution | 28.80 | $13,392.00 | $9,811.50 | $1,906.50 |
| Court Hearing | 133.45 | $62,054.25 | $51,057.00 | $5,812.50 |
| Deposition | 170.90 | $79,468.50 | $63,984.00 | $11,904.00 |
| Legal Research | 67.00 | $31,155.00 | $837.00 | $6,789.00 |
| Mediation | 76.25 | $35,456.25 | $14,298.75 | $6,975.00 |
| Professionals | 48.45 | $22,529.25 | $8,044.50 | $9,648.75 |
| Travel | 8.00 | $3,720.00 | $3,720.00 | — |

| **Attorney Caron's Category** | **Hours** | **Billed at $465.00** | **Group 1** | **Group 2** |
|---|---|---|---|---|
| **Total** | **860.35** | **$400,062.75** | **$228,129.00** | **$69,936.00** |

43. When special counsel conducts a hearing or examination, the trustee attends as the client. A trustee-attorney's attendance is compensable only "when unique difficulties arise" and "only to the extent of matters requiring legal expertise." *In re Garcia*, 335 B.R. 717, 725 (B.A.P. 9th Cir. 2005) (quotation omitted). Gordon's own entries show that he conducted every hearing and examination they attended together: he went to court "to advocate in favor of granting the motion" (July 30, 2024), to "represent the trustee at the status conference" (March 6, 2025), and to "represent the bankruptcy estate" on a motion to quash (May 13, 2025), and he "conduct[ed] eight Rule 2004 exams" (April 3, 2025). Doc. 651, Ex. A1. Attorney Caron's application nonetheless says that she represented the Trustee "in all court hearings" and "in depositions and mediation." Doc. 650 at 2. Exhibit A cites Gordon's entry beside each of the 58 entries in which Attorney Caron prepared for or attended those events. Where Gordon did not attend, Exhibit A treats her appearance as legal work.

44. For illustration, Attorney Caron billed $14,973.00 on 24 separate days to confer with Gordon while Gordon's firm billed $25,914.50 for the same conversations – $40,887.50 in all. *See* Ex. C. As another example, on July 31, 2023, she billed 1.90 hours for the call on which Gordon billed 2.30 hours to "provide tutorial" to her on the law governing the estate's claims (a tutorial which should not have been billed by Gordon either). Doc. 650 at 43; Doc. 651 at 35. Receiving advice from her own special counsel is what a trustee does as client.

45. Attorney Caron's application includes no paralegal or staff time; filing, service, copying, and mailing were billed at $465.00 per hour — for example, "Personal Service of Subpoena to Truist Bank," November 17, 2023, 1.50 hours, $697.50. Doc. 650 at 11.

46. Further, *McConnell* held that negotiating the realization of estate assets is trustee work absent a showing that legal services were required. 641 B.R. at 274. The district court noted that using counsel for negotiations may fall within the trustee's business judgment where the Court expressly authorized counsel for that purpose, but Attorney Caron's application to employ herself did not mention negotiations or settlements. Doc. 36 at 1, 5–6. Examining claims and furnishing information to creditors are statutory trustee duties, 11 U.S.C. § 704(a)(5), (7), and a trustee's application for her own commission is trustee work by definition.

47. Under § 328(b) and *McConnell*, Attorney Caron must show that each service was a legal service and not a trustee duty. Her records cannot make that showing; in 554 of her 556 entries, she states one undivided figure for the day, often joining several tasks, and she never separated trustee time from attorney time. Exhibit A sorts her entries by her own descriptions of the work. Her application nonetheless represents that her fees are "separate and distinct from statutory compensation for the Trustee for her time spent performing the trustee's statutory duties, time which is not included in this Application or the time entries listed in Exhibit A." Doc. 650 at 3. Her own descriptions show otherwise.

48. Because Attorney Caron has not shown that any of the 641.00 hours in Groups 1 and 2 were for legal services, the $298,065.00 should be disallowed. At a minimum, the 490.60 hours in Group 1 ($228,129.00), which on her own descriptions involve no legal service at all, should be disallowed.

49. In the alternative, if the Court is not prepared to disallow that time on this record, none of it should be allowed until Attorney Caron files records separating her trustee duties, legal services, and clerical work, and Aronson should be permitted to supplement this objection when she does.

50. If the 641.00 hours are disallowed, the 219.35 remaining hours of research, briefing, and motion practice, at the sworn $375.00 rate, yield an allowed fee of $82,256.25, in addition to the commission. If only Group 1 is disallowed, the 369.75 remaining hours at $375.00 yield $138,656.25. Aronson does not object to either figure.

**3. Her expenses: malpractice insurance ($1,530.00) and mailing.**

51. Attorney Caron also asks the estate to reimburse $1,530.00 for "Hanover Group Professional Liability Insurance," all but $27.95 of the $1,557.95 in expenses she requests. Doc. 650 at 1, 77. The invoice she attaches is the renewal premium on the lawyers' professional liability policy of Tiffany E. Caron, LLC, of West Palm Beach, Florida, for the policy year September 15, 2026 to September 15, 2027, which begins after the period covered by the application. *Id.* at 78. Malpractice insurance protects her practice, not this estate; it is overhead, not an "actual, necessary expense[]" of the estate. 11 U.S.C. § 330(a)(1)(B). The $1,530.00 should be disallowed.

52. She also asks the Court to approve now an unstated amount, estimated at "up to $10,000.00," for copying and mailing the three applications, "almost 300 pages per mailing," to be updated at the hearing. Doc. 650 at 1 n.1, 6. No itemization has been filed. Rule 2002(c)(2) requires only that the notice of the hearing identify each applicant and the amount requested; it does not require mailing the applications themselves. No such expense should be allowed unless it is itemized and shown to have been necessary.

**D. Gordon's Unbilled Travel Should Not Be Added Now ($46,507.50).**

53. Gordon billed 56.50 hours of travel between Atlanta and Savannah. Aronson does not object to those hours beyond the rate issue raised above. But the application also asks the Court to add 58.50 hours, $46,507.50 at $795.00, that Gordon did not bill when he recorded his time.

54. In eleven entries, totaling $34,503.00 of that request, Gordon recorded at the time that a leg of the trip was not being charged: "no charge for return travel" (March 6, 2024), "note return travel not charged" (April 1, 2024), "did not bill much longer return trip" (July 16, 2025), "return trip not billed" (July 28, 2025), and seven more. All 58.50 hours are listed on a separate schedule of "unbilled travel time." Doc. 651, Ex. A1 at 74.

55. Travel cost was a central concern of the creditors who objected to this employment, and the Court left it to review under § 330 (*supra* ¶5). Gordon now says the half-travel limit "was imposed at the request of an investor" whose counsel did not disclose that investor's insider status, and that § 328(a) releases him from it. Doc. 651 at 15. That is an admission that the limit was a term of his engagement, not merely his own billing judgment.

56. Section 328(a) permits a departure only for "developments not capable of being anticipated"; who asked for the limit has nothing to do with the cost of travel between Atlanta and Savannah, which was known from the first day. Gordon's own records apply the limit as late as April 1, 2025 ("one half of travel time"). Doc. 651, Ex. A1.

57. Combining the billed and unbilled time also produces days such as July 9, 2024, when the request would total 17.7 hours. The $46,507.50 should be disallowed.

**E. Gordon Should Disclose the Assignment from His Former Firm.**

58. The Court employed Taylor English Duma LLP. Gordon now asks that the fees for every hour billed while that firm was employed be paid to "Neil C. Gordon, as assignee of Taylor Duma f/k/a Taylor English Duma LLP." Doc. 651 at 22.

59. The application does not attach the assignment or say what Taylor English is to receive. Compensation may not be shared except among members or regular associates of the same

firm, 11 U.S.C. § 504, and an applicant must disclose any agreement to share compensation, Fed. R. Bankr. P. 2016(a).

60. Before any award, Gordon should file the assignment and disclose what Taylor English is to be paid, and at what hourly rates.

**F. Gordon and Attorney Caron Were Asked About These Issues Before Filing and Did Not Explain Them.**

61. On October 28, 2026, before filing this objection, Aronson's counsel wrote to Gordon and Attorney Caron. The email stated that Aronson would object to the enhancements and set out the other concerns raised here: Attorney Caron's billing at $465.00 after swearing to $375.00; her hourly billing of standard trustee duties in addition to her commission, much of it duplicating Gordon's work; Gordon's billing at $795.00 after his employment application disclosed $595.00; and Gordon's travel. It asked both applicants to explain the rate increases.

62. Neither has explained either rate or addressed any of the items. Attorney Caron replied only that "the estate professionals are entitled to be compensated for their time, efforts and success in this case, consistent with applicable legal standards, as sought in the applications," and that "[w]e will review any objections you file and address them at the hearing." The applicants have had notice of these issues and an opportunity to explain them before the hearing.

**G. Reservation of Rights.**

63. No application for Trustee Caron's final commission is pending. Aronson reserves its objections to the commission, including to the $60,000.00 commission on the $2,000,000.00 obtained by the investors, and to any final fee application, and its right to supplement this objection.

64. Time spent defending these applications should not be charged to the estate. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121 (2015).

**RELIEF REQUESTED**

WHEREFORE, Aronson respectfully requests that the Court enter an order:

(a) denying the enhancements requested by Attorney Caron ($126,500.00), Gordon ($126,500.00) and KapilaMukamal ($77,000.00), and allowing KapilaMukamal's interim fees at its lodestar of $386,014.60;

(b) disallowing $298,065.00 of Attorney Caron's fees for the 641.00 hours in Groups 1 and 2 of Exhibit A, for which she has not carried her burden under 11 U.S.C. § 328(b), or, in the alternative, disallowing at least the $228,129.00 for the 490.60 hours in Group 1, or, in the further alternative, allowing none of that time until she files records separating trustee duties, legal services and clerical work and Aronson has had the opportunity to respond; and allowing her remaining hours at $375.00 per hour (219.35 hours, $82,256.25, if Groups 1 and 2 are disallowed); disallowing $1,530.00 of her expenses for her firm's professional liability insurance premium; and allowing no expense for mailing the applications unless it is itemized and shown to have been necessary;

(c) disallowing $183,652.00 of Gordon's fees as the premium over the rates disclosed in his employment applications, and $46,507.50 for unbilled travel;

(d) requiring Gordon to file the assignment from Taylor English Duma LLP and to disclose any agreement for payment to that firm, including the hourly rates on which it is computed;

(e) disallowing any compensation for time spent defending these applications; and

(f) granting such other and further relief as is just and proper.

Respectfully submitted this 2nd day of November, 2026.

**STONE & BAXTER, LLP**
By:

*/s/ David L. Bury, Jr.*
David L. Bury, Jr.
Georgia Bar No. 133066
Thomas B. Norton
Georgia Bar No. 997178

Counsel for Barbara Aronson, Barbara Aronson IRA, and Aronson Family Residence Trust

577 Third Street
Macon, GA 31201
(478) 750-9898; (478) 750-9899 (fax)
dbury@stoneandbaxter.com
tnorton@stoneandbaxter.com

## INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Attorney Caron's time entries (Doc. 650, Ex. A), each coded: Group 1, 322 entries (490.60 hours, $228,129.00); Group 2, 84 entries (150.40 hours, $69,936.00); legal services, 150 entries (219.35 hours) |
| B | Gordon's travel recorded as unbilled and now sought, 58.50 hours, $46,507.50, with the eleven "not charged" entries marked |
| C | The same conversation billed by Attorney Caron and by Gordon's firm, 24 days, $40,887.50 |

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was served this day using the CM/ECF filing system.

This 2nd day of November, 2026.

*/s/ David L. Bury, Jr.*
David L. Bury, Jr.